**MARTIN D. SINGER (BAR NO. 78166)**
**ALLISON S. HART (BAR NO. 190409)**
**SINGER WEINSTEN WOLF & JONELIS LLP**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:   (310) 556-3615
Email:  mdsinger@singerlaw.com
         ahart@singerlaw.com

**JONATHAN P. STEINSAPIR (SBN 226281)**
**KATHERINE T. KLEINDIENST (SBN 274423)**
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone: (310) 566-9834
Facsimile: (310) 556-3615
Email:  jsteinsapir@khiks.com
         kkleindienst@khiks.com

Attorneys for Defendants THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>                Plaintiffs,<br><br>        v.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON. Co-Trustee of | CASE NO. 2:26-cv-02129-HDV-AGR<br><br>Hon. Hernan D. Vera<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION**<br><br>Date:        June 4, 2026<br>Time:        10:00 a.m.<br>Courtroom:  5B<br><br>Complaint filed:  February 27, 2026 |

10386-00420/940275.2

1

NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION

the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,

Defendants.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that on June 4, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5B of the above-entitled Court, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendants The Michael Jackson Company, LLC, John Branca, individually and as Co-Administrator of The Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, John McClain, individually and as Co-Administrator of The Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, MJJ Productions, LLC and MJJ Ventures, LLC (collectively, the "MJC Parties"), will and hereby do move the Court for an Order staying this action and compelling arbitration of the claims asserted against all of the Defendants by Plaintiffs Edward Joseph Cascio, Dominic Savini Cascio, Marie-Nicole Porte and Aldo Cascio (collectively "Plaintiffs") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-4 (the "Motion").

This Motion is made on the following grounds, among others: Plaintiffs entered into an agreement with Defendant The Michael Jackson Company, LLC ("MJC"), of which each of the Defendants herein is either a specifically named or intended third-party beneficiary, that contains a binding arbitration provision providing for

arbitration of arbitrability. Because arbitration is required under the FAA and the MJC Parties request an order compelling arbitration of all claims in the operative complaint along with a stay of the action pending arbitration.

This Motion is made, in accordance with Local Rule 7-3, following e-mail correspondence on April 7, 2026, and a telephonic conference of counsel, which occurred on April 10, 2026. This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the supporting Declarations of Martin D. Singer and Allison S. Hart, the pleadings, papers and other records on file in this action, and on such additional evidence, argument, or other matters that the Court may deem necessary or proper.

DATE: April 17, 2026

SINGER WEINSTEN WOLF & JONELIS LLP

By: _____

MARTIN D. SINGER
Attorneys for Defendants THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

10386-00420/940275.2

3

MOTION TO FOR AN ORDER STAYING ACTION AND COMPELLING ARBITRATION

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................ 9

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................... 12

    A.    The Cascio Parties Steadfastly Defend Michael Jackson For Decades. ...................................................................................... 12

    B.    The Cascios' 2019 Extortion Of Michael's Estate. ......................... 12

    C.    The Parties Entered Into a Binding Agreement Requiring Arbitration of All Disputes. ............................................................ 13

    D.    Plaintiffs Negotiated for More Money and Accepted the Benefits of the Agreement. ................................................................ 15

    E.    The Pending Arbitration Before Signature Resolution.................... 16

    F.    The LA Superior Court Order Compelling Arbitration................... 16

    G.    Plaintiffs Filed This Lawsuit in an Attempt to Circumvent Arbitration. ...................................................................................... 17

    H.    This Dispute Falls Squarely Within the Scope of the Arbitration Agreement. ..................................................................... 17

    I.    Plaintiffs' Improper Forum Shopping Provides an Independent Basis to Enforce the Arbitration Agreement................................... 18

III.  LEGAL ARGUMENT ..................................................................................... 19

    A.    The Federal Arbitration Act Requires Enforcement of the Parties' Agreement. ........................................................................ 19

    B.    A Valid and Binding Agreement to Arbitrate Exists Between the Parties. ....................................................................................... 21

    C.    The Delegation Clause Requires the Arbitrator—Not This Court—to Decide Arbitrability. ..................................................... 22

    D.    Plaintiffs Do Not Attack the Validity or Enforceability of the Arbitration Provision Itself, But Attack the Validity of the

"Contract as a Whole"; Such Attacks are for the Arbitrator. .......... 22

E.   The Cascio Parties' Alleged Tort Claims Are Subject to Arbitration. .................................................................................... 25

F.   Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC Can Enforce the Arbitration Agreement. .............................. 27

1.   Branca and the MJC Parties' Attorneys Can Compel Arbitration as Agents Of MJC. .............................................. 27

2.   Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC Can Compel Arbitration as Third-Party Beneficiaries. ............................................................... 28

3.   The Non-MJC Parties Can Also Compel Arbitration Under Equitable Estoppel. ...................................................... 29

G.   Plaintiffs' Forum Shopping and Parallel Litigation Cannot Defeat Arbitration ............................................................................ 30

H.   The Court Should Stay This Action Pending Arbitration ................ 30

IV.   CONCLUSION ......................................................................................... 31

MOTION FOR AN ORDER COMPELLING ARBITRATION

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) ................................................................................. 6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ........................................................................................... 19, 20

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ............................................................................................... 26

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................................... 24

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010) ................................................................................. 23

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ..................................................................................... 22, 24, 25

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ............................................................................... 19

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ............................................................................................... 20

*Drews Distrib., Inc. v. Silicon Gaming, Inc.*,
245 F.3d 347 (9th Cir. 2001) ................................................................................. 26

*Dryer v. Los Angeles Rams*,
40 Cal. 3d 406 (1985) ............................................................................................ 27

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*,
35 Cal.3d 312 (1983) ............................................................................................. 26

*Flynn v. Higham*,
149 Cal.App.3d 677 (1984) .................................................................................... 13

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024), *cert. denied __ U.S. __ (2025)* .......................... 23

MOTION FOR AN ORDER COMPELLING ARBITRATION

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019)..............................................................................................20, 22, 24

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*,
863 F.2d 315 (4th Cir. 1988).................................................................................27

*Letizia v. Prudential Bache Sec., Inc.*,
802 F.2d 1185 (9th Cir. 1986)...............................................................................27

*Macaulay v. Norlander*,
12 Cal.App.4th 1 (1992).........................................................................................28

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
109 Cal.App.4th 1705 (2003).........................................................................28, 29

*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*,
22 Cal.App.5th 1096 (2018)...................................................................................25

*Reddam v. KPMG LLP*,
No. 04-CV-1227, 2004 WL 3761875.....................................................................29

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ...........................................................................................21, 24

*Rodriguez v. Oto*,
212 Cal.App.4th 1020 (2013).................................................................................20

*Ronay Family Ltd. P'ship v. Tweed*,
216 Cal.App.4th 830 (2013)...................................................................................28

*Rosenthal v. Great Western Fin. Securities Corp.*,
14 Cal.4th 394 (1996).............................................................................................21

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999).............................................................................21, 26

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
42 F.3d 1292 (9th Cir. 1994)..................................................................................21

10386-00420/940275.2

7

MOTION FOR AN ORDER COMPELLING ARBITRATION

**Statutes**

9 U.S.C. § 2.............................................................................................................20

9 U.S.C. § 3.......................................................................................................20, 30

9 U.S.C. § 4.............................................................................................................20

Cal. Civ. Code § 1559..............................................................................................28

California Arbitration Act.........................................................................................20

Federal Arbitration Act.....................................................................................*passim*

**Other Authorities**

*"My Friend Michael: An Ordinary Friendship with an Extraordinary Man"* .......12

# I.

# INTRODUCTION

The lawsuit brought on behalf of Plaintiffs Edward Joseph Cascio, Dominic Savini Cascio, Marie-Nicole Porte and Aldo Cascio (collectively "Plaintiffs") is not a legitimate attempt to adjudicate new claims—it is a transparent effort to evade a binding arbitration agreement they freely negotiated, accepted, and from which they received substantial benefits. On or about January 10, 2020, in exchange for multi-millions of dollars in financial consideration[1] and sweeping releases, Plaintiffs, together with their brother Frank Cascio ("Frank")[2] and other members of the Cascio family entered into a comprehensive Acquisition and Consulting Agreement with Defendant The Michael Jackson Company, LLC[3] (the "Agreement")[4] requiring that **"any dispute, claim or controversy arising out of or relating to" the Agreement— including disputes over arbitrability itself—must be resolved exclusively in arbitration.**

The Agreement is enforceable. It is broad. And it squarely governs every claim Plaintiffs now assert and Plaintiffs know it.

To be clear, this lawsuit is part of an extortion scheme orchestrated by the Cascio Parties. In 2024, shortly before receiving the final payments due under the Agreement, the Cascio Parties, led by Frank, demanded payment of **$213 million**

---

[1]    Plaintiffs allege that they each received money equivalent to five (5) payments of $690,000 each, or $3,450,000 each.  Dkt. No. 1, ¶ 60.

[2]    Plaintiffs and their brother Frank Cascio shall hereinafter be collectively referred to as the "Cascio Parties."

[3]    Defendants The Michael Jackson Company, LLC ("MJC"), John Branca, individually and as Co-Executor of the Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust ("Branca"), John McClain, individually and as Co-Executor of the Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust ("McClain"), MJJ Productions, LLC and MJJ Ventures, LLC shall hereinafter be collectively referred to as the "MJC Parties."

[4]    A copy of the Agreement is attached as Exhibit 1 to the accompanying Declaration of Martin D. Singer ("Singer Decl.").

MOTION FOR AN ORDER COMPELLING ARBITRATION

(later reduced to $44 million), stating unless they were paid that amount they would file a public lawsuit against certain of the MJC Parties asserting alleged tort claims that were previously released under the Agreement. Singer Decl., ¶ 13. As a result of the Cascio Parties' threats, MJC filed a Demand for Arbitration against Frank (which is currently pending before the Hon. Terry A. Green (Ret.) at Signature Resolution) asserting claims for: (1) declaratory relief regarding the validity of the Agreement; (2) anticipatory breach of the Agreement; and (3) civil extortion. Singer Decl., ¶¶ 14-16.

Although counsel for the Cascio Parties acknowledged in January 2025 that the Cascio Parties' alleged tort claims belonged in arbitration (Singer Decl., ¶ 18, Ex. 3), the Cascio Parties, still led by Frank, continued to threaten to file a public lawsuit asserting their specious, previously released tort claims against the MJC Parties. Accordingly, on July 9, 2025, MJC filed a Petition to Compel Arbitration in the Los Angeles Superior Court against Frank and Does 1 through 10 (meant to include the other Cascio Parties without publicly revealing their identities), seeking an order compelling Frank and the other Cascio Parties to arbitrate their alleged tort claims against the MJC Parties. Singer Decl., 25.

After the Los Angeles Superior Court announced its tentative ruling to grant MJC's Petition to Compel Arbitration, but before the ruling became final (Singer Decl., ¶¶ 26-27, Ex. 5), Plaintiffs filed this action in a brazen display of forum shopping in order to circumvent the Superior Court's ruling that the Cascio Parties' claims belong in arbitration. Singer Decl., ¶ 18.

In a transparent bid to avoid their obligation to arbitrate this dispute, Plaintiffs have resorted to a familiar but impermissible tactic: attempting to repackage arbitrable claims as inflammatory tort allegations in federal court in an attempt to avoid the arbitral forum they agreed to. But the Federal Arbitration Act does not permit such gamesmanship. To the contrary, it requires courts to **rigorously enforce arbitration agreements according to their terms**—especially where, as here, the Agreement

delegates threshold questions of arbitrability to the arbitrator and covers "any allegations" relating to the parties' relationship.

This case presents a straightforward application of those principles. Plaintiffs' claims arise directly from—and cannot be understood without reference to—the parties' Agreement, the rights and obligations it created, and the disputes it was designed to resolve. Indeed, Plaintiffs' own allegations confirm that their claims are rooted in the very relationship governed by the Agreement. Dkt. No. 1, ¶¶ 54-61, 66. Having accepted the benefits of that bargain, Plaintiffs cannot now disavow one of its central requirements: arbitration.

Nor can Plaintiffs avoid arbitration by attacking the Agreement as a whole. It is black-letter law that such challenges are for the arbitrator—not this Court—to decide. And Plaintiffs' effort to litigate here, while simultaneously seeking to halt the already-pending Arbitration,[5] only underscores the strategic nature of this filing. The Court should not permit it.

This is precisely the scenario the FAA was enacted to prevent: a party attempting to sidestep a valid arbitration agreement through artful pleading and forum manipulation. The law is clear, and the equities are even clearer. Plaintiffs agreed to arbitrate. Plaintiffs' alleged claims fall within the scope of the Agreement. And any challenges to the validity and scope of the Agreement must themselves be resolved in arbitration.

Accordingly, the Court should **stay this action in its entirety and compel Plaintiffs to proceed in arbitration**, where this dispute belongs.

---

[5]    Indeed, MJC sought leave in the Arbitration to file a Second Supplemental Demand for Arbitration asserting additional claims against Plaintiffs arising from their breach of the confidentiality provisions in the Agreement, and the Cascio Parties have not opposed MJC's Motion. Singer Decl., ¶ 30.

10386-00420/940275.2

11

MOTION FOR AN ORDER COMPELLING ARBITRATION

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Cascio Parties Steadfastly Defend Michael Jackson For Decades.

For more than three decades, the Cascio Parties proudly described themselves as Michael Jackson's "second family," and were among Michael's staunchest defenders when he faced false allegations of abuse. Notably, after Michael's death, Frank, Edward Cascio, Marie-Nicole Porte and their parents were interviewed by Oprah Winfrey in 2010, reminiscing about how much they missed Michael. When asked by Ms. Winfrey "were there ever any improprieties with you and Michael Jackson," Frank, Edward and Marie-Nicole resoundingly responded in unison, "**Never,**" and Edward explained that "**Michael was a target. And, unfortunately, he was targeted.**" Singer Decl., ¶ 20.

Indeed, Frank has made a cottage industry out of **defending** Michael against sexual abuse allegations. That included the book Frank authored, "*My Friend Michael: An Ordinary Friendship with an Extraordinary Man*" (the "Book"), released in 2011 by a major publishing house. Frank dedicated the Book "**To Michael, my teacher—thank you for being a father, a brother, a mentor, and a friend, and for the greatest adventure I could ever have imagined. I love you, and I miss you every day. With all my love, Frank.**" Singer Decl., ¶¶ 21-24, Ex. 4.[6]

### B.    The Cascios' 2019 Extortion Of Michael's Estate.

Phase one of the Cascio Parties' extortion plot began in 2019, at or around the time that two multinational media companies, HBO and the U.K.'s Channel 4,

---

[6]    Dozens of times in his Book, Frank declared that Michael had never done anything to harm him, his family, or any child. Frank stated unequivocally, "**I want to be precise and clear, on the record, so that everyone can read and understand: Michael's love for children was innocent, and it was profoundly misunderstood.**" Frank also wrote that Michael "**was being attacked by liars**" and that "**[t]he allegations were all bullshit. There was nothing ambiguous about the whole thing. These people were after Michael's money. But he was innocent . . . .**" *Id.*

10386-00420/940275.2

MOTION FOR AN ORDER COMPELLING ARBITRATION

released *Leaving Neverland*, a one-sided film that made highly incendiary and false accusations of sexual abuse against Michael. After years of repeatedly debunking scandalous abuse accusations that had been made against Michael, the Cascio Parties decided it was their turn to profit off of Michael's Estate.

In late-2019, the Cascio Parties threatened to go public with their own purported sexual abuse allegations unless they were each paid significant amounts of money. Singer Decl., ¶ 4. Notably, the Cascio Parties **never** made their accusations while Michael was alive and could defend himself or sue for defamation, or even in the first years after his passing when they were still profiting from their friendship with Michael. Nor did the Cascio Parties at any time file a lawsuit against Michael, the Estate or MJC alleging any of their supposed tort claims. Singer Decl., ¶ 5. It was only after Michael had been dead for more than a decade when their ability to profit off their friendship waned, and there was no longer any exposure to a defamation claim, that the Cascio Parties first made abuse allegations against Michael.[7] While the Estate was reluctant to pay the Cascio Parties anything, they feared what a public filing with false allegations would do to Michael's legacy and his family in the wake of *Leaving Neverland*. The Executors, who have a fiduciary obligation to protect and preserve Michael's legacy and other valuable assets of the Estate in order to generate money for the beneficiaries' benefit, believed that a settlement of the false claims was the best option. Singer Decl., ¶ 4.

## C. **The Parties Entered Into a Binding Agreement Requiring Arbitration of All Disputes.**

On or about January 10, 2020, MJC and the Cascio Parties entered into the Agreement. Singer Decl., ¶ 2, Ex. 1. A broad arbitration provision in Paragraph 20 of

---

[7] There is no civil cause of action for defamation of a deceased person or for related torts like invasion of privacy or intentional infliction of emotional distress by family members based on maliciously false statements about a decedent. *See Flynn v. Higham*, 149 Cal.App.3d 677, 680-81 (1984).

10386-00420/940275.2
13
MOTION FOR AN ORDER COMPELLING ARBITRATION

the Agreement provides:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including any allegations that either Party has violated any state or federal statutory or common law right, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, **shall be determined in binding arbitration** in Los Angeles County, California, before a retired judge or justice of a California or federal court. Without limiting the foregoing, **the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court**. (*Id.*, Ex. "A," ¶ 20) (Emphasis added.)

The Agreement also includes strong confidentiality provisions and broad, comprehensive mutual releases of any and all past claims. *Id.*, Ex. "A." ¶¶ 4-6. No lawsuit was ever filed by the Cascio Parties against Michael, the Estate or MJC asserting any of the alleged claims released under the Agreement. Singer Decl., ¶ 2, Ex. 1, ¶¶ 4.

The Agreement was comprehensive. It resolved potential disputes between the parties, included broad mutual releases, and provided for substantial financial consideration to be paid to the Cascio Parties over a multi-year period. *Id.* at Agreement ¶¶ 3-6. In exchange, the Cascio Parties agreed to strict confidentiality obligations, non-disparagement provisions, and—critically—a sweeping arbitration clause. *Id.* at Agreement ¶ 20.

That arbitration provision is unequivocal. The provision further reflects the parties' express intent to remove such disputes from the judicial forum and submit them to arbitration in Los Angeles under established arbitral rules. *Id.* The Agreement also expressly extends its protections—including the arbitration provision—to MJC's officers, agents, and related parties, including each of the MJC Parties named as Defendants herein. *Id.* at Agreement, ¶ 4(a). Thus, there can be no dispute that the each of the MJC Parties are entitled to enforce the arbitration provision in the Agreement (directly, as intended and named third party beneficiaries, and/or under the doctrine of equitable estoppel).

10386-00420/940275.2

14

MOTION FOR AN ORDER COMPELLING ARBITRATION

### D.    Plaintiffs Negotiated for More Money and Accepted the Benefits of the Agreement.

The Cascio Parties did not merely sign the Agreement—after it was initially signed, they negotiated to receive more money up front and they freely accepted the benefits under the Agreement.  Contrary to the allegations in the Complaint in which the Cascios claim they were somehow forced to sign the Agreement, the Cascios have intentionally concealed from the Court the fact that within a few weeks after the Agreement, the Cascios negotiated an amendment to the Agreement providing for substantially more money to the Cascios and in which they re-affirmed their agreement to arbitrate disputes.  Singer Decl., ¶ 3, Ex. 2.  Although the Agreement provided that the Cascio Parties would receive five payments of $690,000 each, after the Agreement was signed, the Cascio Parties negotiated a Letter of Direction modifying the terms of the Agreement to provide that the Cascio Parties would receive an initial payment of $800,000 instead of $690,000, followed by annual payments of $530,000 each.[8]  *Id*.  Therefore, any suggestion by the Cascios that the arbitration provision or the Agreement is unconscionable because they were somehow forced to agree to its terms should be soundly rejected by the Court.

In addition, Defendant Herman Weisberg, who is not represented by counsel for the MJC Parties and has not yet appeared in this action, is also a signatory to the Letter of Direction and expressly agreed to the arbitration provisions in Agreement. *Id*.

Plaintiffs did not repudiate the Agreement or Letter of Direction or seek to rescind it. To the contrary, they accepted its benefits while remaining bound by its obligations, including the obligation to arbitrate any disputes.  Having obtained the benefits of that bargain, Plaintiffs cannot now disavow its central terms. Both

---

[8]    In addition, Defendant Howard Weisberg (who is not represented by counsel for the MJC Parties) is a signatory to the Letter of Direction and expressly agreed to arbitration.  Singer Decl., Ex. 2.

California and Federal law do not permit a party to both accept the benefits of a contract and simultaneously evade its arbitration provision.

**E.    The Pending Arbitration Before Signature Resolution.**

Faced with unrelenting extortionist demands, and uninterested in paying the Cascio Parties any additional monies, the MJC Parties filed the Arbitration against Frank on September 17, 2024. Singer Decl., ¶ 14. After the Arbitration was initiated against Frank, the Cascio Parties reacted by threatening to assert a contrived defamation claim against Branca, an Officer of MJC and Co-Executor of the Estate. Singer Decl., ¶ 15. It was an obvious attempt to evade the Agreement's mandatory arbitration provision.

On or about September 24, 2024, MJC and Branca acting as an officer of MJC and a Co-Executor of the Estate filed a Supplemental Demand for Arbitration against Frank, asserting claims for civil extortion, anticipatory breach of the Agreement, and declaratory relief regarding the validity and enforceability of the Agreement, and declaratory relief claim regarding Frank's bogus defamation claim. Singer Decl., ¶ 16.

After appointment of the Arbitrator, on January 3, 2025, Plaintiffs' counsel effectively conceded that the Cascio Parties' alleged tort claims should be resolved in arbitration, by identifying the Cascio Parties as cross-complainants who would be asserting tort claims **in the Arbitration** against several of the same Defendants named in this action. Singer Decl., ¶ 18, Ex. 3. This was an acknowledgement from counsel that if the Cascio Parties were to assert tort claims against the MJC Parties, they would be adjudicated in the Arbitration and not in court.

**F.    The LA Superior Court Order Compelling Arbitration.**

Based on threats by the Cascio Parties, led by Frank, to imminently file a public lawsuit asserting tort claims against one or more of the MJC Parties in breach of the obligation under the Agreement to arbitrate disputes, MJC filed a Petition to Compel Arbitration in the Los Angeles Superior Court against Frank Cascio and Does 1-10 (meant to include the other Cascio Parties) on July 9, 2025, in a

proceeding entitled *The Michael Jackson Company, LLC vs. Frank Cascio, et al.*, LASC Case No. 25SMCP00385. Singer Decl., ¶ 25.  The hearing on MJC's Petition to Compel Arbitration took place on January 14, 2026, at which time the Los Angeles Superior Court announced its tentative ruling in favor of granting MJC's Petition to Compel Arbitration.  Singer Decl., ¶ 26, Ex. 5.

### G.   Plaintiffs Filed This Lawsuit in an Attempt to Circumvent Arbitration.

On February 27, 2026, after the Los Angeles Superior Court announced its intention to order Frank to arbitrate the Cascio Parties' alleged tort claims against the MJC Parties, but before the order became final, Plaintiffs filed this action asserting a series of tort and statutory claims arising from their historical relationship with Defendants and the Agreement. Singer Decl., ¶¶ 27-29, Ex. 6.  These claims— including allegations of negligence, fraud, and emotional distress—are all grounded in the same underlying relationship and subject matter governed by the Agreement.

Despite the breadth of the arbitration clause in the Agreement, Plaintiffs chose to file in federal court rather than submit their claims to arbitration. This was not inadvertent—it was a strategic attempt to evade the Los Angeles Superior Court's ruling ordering arbitration of this dispute.

By recasting their claims as federal causes of action and framing them in inflammatory terms, Plaintiffs seek to avoid the arbitral forum and the contractual limitations to which they agreed. But the label attached to a claim does not determine arbitrability. What matters is whether the claims arise out of or relate to the Agreement or the parties' relationship. Here, they plainly do.

### H.   This Dispute Falls Squarely Within the Scope of the Arbitration Agreement.

There can be no serious dispute that Plaintiffs' claims fall within the scope of the arbitration provision. The clause is broad, covering "any dispute" arising out of or relating to the Agreement *and/or* the parties' relationship. Singer Decl., Ex. 1, ¶ 20.

Plaintiffs' claims are inextricably intertwined with that relationship. They depend on the parties' interactions, the Agreement governing those interactions, and the rights and obligations established therein. Indeed, Plaintiffs' own allegations confirm that their claims are rooted in the very relationship addressed by the Agreement. Dkt. No. 1, ¶¶ 51-61.  Under well-settled federal law, such claims must be arbitrated.

### I.      Plaintiffs' Improper Forum Shopping Provides an Independent Basis to Enforce the Arbitration Agreement.

Plaintiffs' filing of this action in federal court—while arbitration is pending and required and a mere days before the Los Angeles Superior Court's ruling ordering arbitration became final—is not coincidental. It is a deliberate attempt to evade their contractual obligations and obtain a forum that they perceive as more favorable. Courts routinely reject such forum shopping, particularly where, as here, the parties have agreed to arbitrate their disputes.

The record makes Plaintiffs' strategy clear. After entering into a binding Agreement requiring arbitration of all disputes, accepting substantial financial benefits under that Agreement, and facing arbitration proceedings initiated in accordance with its terms, Plaintiffs chose not to honor their contractual commitments. Instead, they filed this lawsuit asserting repackaged versions of the same underlying grievances released under the Agreement—now framed as federal and state law tort claims—in an effort to sidestep arbitration.

This is precisely the type of forum manipulation the Federal Arbitration Act prohibits. A party cannot avoid arbitration simply by recharacterizing arbitrable claims or by selecting a judicial forum that it perceives to be more advantageous. Nor can a party initiate parallel litigation to delay or undermine an arbitration proceeding it is contractually obligated to participate in.

Plaintiffs' conduct confirms that their objective is not to resolve a legitimate dispute in the proper forum, but to escape the forum they agreed to. As set forth in the Singer Declaration, Plaintiffs previously attempted to extract additional payments

10386-00420/940275.2

18

MOTION FOR AN ORDER COMPELLING ARBITRATION

through threats that they would disregard the Agreement's confidentiality and arbitration provisions if their demands were not met. Singer Decl., ¶¶ 13 and 25. This lawsuit is a continuation of that same strategy—substituting litigation pressure for the arbitration process they are bound to follow.

Courts consistently reject such tactics. When a party files suit in contravention of a valid arbitration agreement, an order compelling arbitration of the action along with a stay pending arbitration is required under a long and unbroken line of Supreme Court cases decided over the last one-hundred years. Allowing Plaintiffs to proceed in this Court would reward forum shopping, undermine the parties' contractual expectations, and frustrate the FAA's core purpose of enforcing arbitration agreements according to their terms.

The Court should not permit Plaintiffs to have it both ways—accepting the benefits of their Agreement while repudiating its arbitration requirement when it becomes inconvenient. Their attempt to circumvent arbitration through strategic forum selection provides an additional and independent basis to compel arbitration and stay this action.

**III.**

**LEGAL ARGUMENT**

**A.      The Federal Arbitration Act Requires Enforcement of the Parties' Agreement.**

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration agreements" and requires courts to enforce such agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Under the FAA, courts must compel arbitration where (1) a valid agreement to arbitrate exists, and (2) the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Both requirements are plainly satisfied here.

The purpose of the FAA "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Where a party to an arbitration agreement has petitioned the Court for an order compelling arbitration, the FAA provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court **shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). A court compels arbitration if the claim is within the scope of a valid, enforceable agreement to arbitrate. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (the FAA "leaves no place for the exercise of discretion by a [trial] court, but instead mandates that [trial] courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

Under both the FAA and California Arbitration Act, a party seeking to compel arbitration need only establish the existence of a valid arbitration agreement and that the dispute falls within its scope. 9 U.S.C. § 2; CCP § 1281.2. The Cascio Parties do not, and cannot, dispute the fact that they signed the Agreement. Singer Decl., Ex. 1. To the contrary, Plaintiffs freely admit that they signed the Agreement to arbitrate. Dkt. No. 1, ¶ 68.  The Cascio Parties' signatures on the Agreement and acceptance of payment thereunder is an objective manifestation of their assent to its terms, including without limitation their agreement to arbitrate disputes with the MJC Parties. *Rodriguez v. Oto*, 212 Cal.App.4th 1020, 1027 (2013). Where, as here, the parties have agreed to delegate questions of arbitrability to the arbitrator, courts must enforce that delegation and refrain from resolving threshold issues, even if the district court would conclude otherwise if it were reviewing the issue of arbitrability de novo. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.

10386-00420/940275.2

20

Ct. 524, 529 (2019) (rejecting line of Fifth Circuit cases that permitted district courts to refuse to enforce a delegation clause where the court found the basis for arbitration "wholly groundless"); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Plaintiffs' claims fall squarely within the scope of the arbitration provision in the Agreement. The clause applies to **any dispute "arising out of or relating to" the agreement**, language the Ninth Circuit consistently construes as "broad and far reaching." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Under this standard, arbitration must be compelled if the factual allegations underlying the claims "touch matters" covered by the Agreement. *Id.*

Here, Plaintiffs' claims are inseparable from the parties' contractual relationship. They arise directly from the historical interactions between the parties, the Agreement governing those interactions, and the obligations and rights created by that Agreement. Plaintiffs cannot avoid arbitration simply by labeling their claims as tort or statutory causes of action. The Ninth Circuit has repeatedly held that such claims are arbitrable where they are rooted in the parties' contractual relationship. *See id.; see also Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994).

Because both elements required under the FAA are met, arbitration must be compelled.

**B.** **A Valid and Binding Agreement to Arbitrate Exists Between the Parties.**

Having established the existence of the Agreement to arbitrate between the MJC Parties and the Cascio Parties, the burden shifts to Plaintiffs to prove that the Agreement is invalid or inapplicable. *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 413 (1996).  This is a burden Plaintiffs cannot meet.  There is no admissible evidence in the record that would support a finding that the arbitration clause in the Agreement is in invalid or unenforceable.

**C.**    <u>**The Delegation Clause Requires the Arbitrator—Not This Court—to Decide Arbitrability.**</u>

As a preliminary matter, Plaintiffs should be compelled to arbitration to determine whether their purported tort claims against the MJC Parties are arbitrable. As the United Supreme Court recently made clear: "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "In those circumstances, a court **possesses no power to decide the arbitrability issue**." *Ibid.* (emphasis added). As the Supreme Court explained, "[t]hat is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Ibid.* The delegation clause itself is enough to resolve this motion as the Court must compel arbitration and allow the arbitrator to determine arbitrability. *Ibid.*

**D.**    <u>**Plaintiffs Do Not Attack the Validity or Enforceability of the Arbitration Provision Itself, But Attack the Validity of the "Contract as a Whole"; Such Attacks are for the Arbitrator.**</u>

Even separate from the delegation clause, the Supreme Court has long held that when a party attacks the validity of the "contract as a whole," instead of attacking the arbitration provision alone, a determination of the validity of the contract as a whole is for the arbitrator and not a court. Here, the Cascios do not attack the arbitration provision itself—they do not contend, for example, that Signature Resolution's arbitration procedures are themselves unconscionable. Rather, they attack the validity "contract as a whole."  As such, their argument is for an arbitrator under clear Supreme Court precedent.

In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court summarized and reaffirmed its jurisprudence on the question of whether attacks on the validity of an agreement containing an arbitration clause may be the basis for denying a motion to compel arbitration under the FAA in a short and

10386-00420/940275.2

exceptionally well-explained decision. The Court explained that "[c]hallenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Id.* at 444. <u>First</u>, there are "challenges specifically [to] the validity of the agreement to arbitrate." *Ibid.* Second, there are "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Ibid.*  The former challenges—specifically to the arbitration clause—are for courts.[9] The latter challenges—to the contract more generally—are for arbitrators. The Supreme Court helpfully summarized the law as follows:

> First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. "Applying the[se principles] to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."  *Id.* at 445-46.  *See also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010) ("[W]hen a [party's] legal challenge is that a contract as a

_____

[9]     Examples of challenges to the arbitration provision itself—as distinct from an attack on the validity of the "contract as a whole"—can be found in cases where courts hold that the arbitration procedures is one-sided and unfair. *See, e.g., Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680–89 (9th Cir. 2024), *cert. denied __ U.S. __* (2025) (Live Nation's arbitration clause was unconscionable where it required "mass arbitrations" before a newly-formed arbitration service that marketed itself as a "critical prophylactic measure for client's mass arbitration risk" and where "Defendants' attorneys, Latham & Watkins LLP, have shown a 'remarkable degree of coordination' in devising a set of procedures to be followed"; there was no right to discovery; there was effectively a one-sided right to appeal in Live Nation's favor; and where litigants would be bound by prior "precedent" from the service in other matters that those litigants were not involved in along with various other comically one-sided provisions). No such attack could possibly be made on the arbitration procedures of Signature Resolution.

MOTION FOR AN ORDER COMPELLING ARBITRATION

whole is unenforceable, *the arbitrator decides* the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause).").

Here, there is no question that there is an arbitration Agreement between the Plaintiffs and MJC, which Agreement was signed by Branca as an officer of MJC. Singer Decl., ¶ 2, Ex. 1, ¶ 20. The broad arbitration provision contained in the Agreement requires Plaintiffs to arbitrate "[a]ny dispute, claim or controversy arising out of or relating to this Agreement . . .  including any allegations that either Party has violated any state or federal statutory or common law right . . . ." Singer Decl., ¶ 2, Ex. 1 ¶ 20. The Agreement also expressly provides that "**the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court.**" (*Ibid.*) Thus, pursuant to the parties' express agreement, and the Supreme Court's decision in *Henry Schein*, the Court may go no further and must compel the Cascio Parties to arbitrate (at the very least) the question of whether any alleged tort claims against the MJC Parties are arbitrable.[10]

To the extent Plaintiffs repeat the arguments previously rejected by the Los Angeles Superior Court that the arbitration provision in the Agreement is allegedly unconscionable, such unconscionability arguments should be resolved by the arbitrator.  In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006), the Court identified "two types" of challenges to arbitration provisions: "One type

---

[10]    Even if Plaintiffs attempt to challenge the enforceability or scope of the arbitration agreement, those arguments must be decided by the arbitrator—not this Court.  As noted above, the parties' agreement expressly delegates to the arbitrator the authority to decide "gateway" issues, including questions of arbitrability and enforceability. (Singer Decl. ¶ 2, Ex. 1 – Agreement, ¶ 20.) Such delegation provisions are enforceable under controlling Supreme Court and Ninth Circuit authority. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Where, as here, an agreement clearly and unmistakably delegates arbitrability issues, a court's role is strictly limited: it must enforce the delegation clause and allow the arbitrator to decide any challenges to the agreement, unless the delegation provision itself is specifically challenged. *Rent-A-Center*, 561 U.S. at 72.

challenges specifically the validity of the agreement to arbitrate. The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 444 (internal citation omitted).

In the context of the second "type" of challenge—that either the "entire agreement" or one of its non-arbitration provisions is invalid—the Court reaffirmed three principles: "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, *unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance*. Third, this arbitration law applies in state as well as federal courts." *Id.* at 445–46. *See also id.* at 449 ("Regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

California courts have—as they must—followed the approach articulated in *Buckeye Check Cashing*. *See, e.g.*, *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.*, 22 Cal.App.5th 1096, 1107–08 (2018) ("[I]t has long been settled that when parties have agreed to arbitration, challenges to the validity of the underlying contract, including contract defenses such as fraud in the inducement or illegality, are for the arbitrator to decide. This is because the arbitration clause is viewed as separate from the underlying contract. Thus, allegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause.").

That should be the end of the matter: *Buckeye Check Cashing* squarely applies here and requires the Court to compel Plaintiffs to arbitrate.

**E.    The Cascio Parties' Alleged Tort Claims Are Subject to Arbitration.**

Even if the Court were to decide the issue of arbitrability here (which it may **not** under Supreme Court precedent), it is clear that Plaintiffs' alleged tort claims

10386-00420/940275.2

25

against the MJC Parties are subject to arbitration. A party seeking to compel arbitration bears the burden of proving "the existence of a valid, written agreement to arbitrate," and the burden thereafter shifts to the party opposing arbitration. *Ashbey v. Archstone Prop. Mgmt., Inc.,* 785 F.3d 1320, 1323 (9th Cir. 2015).

When construing an arbitration provision, courts must look to the language of the agreement. *See Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal.3d 312, 323 (1983). Because of the strong public policy favoring arbitration, any "doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration." *Ibid.* It is well-settled that "where the contract contains an arbitration clause, . . .'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). A "court should not deny a request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349-50 (9th Cir. 2001) (citations omitted).

Moreover, when an arbitration clause is broad, as is the case here, the presumption in favor of arbitrability is "**particularly applicable**." *AT&T Techs.*, 475 U.S. at 650. For example, in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th Cir. 1986), the Ninth Circuit held that a plaintiff's "factual allegations need only '**touch matters**' covered by the contract containing the arbitration clause" to be subject to arbitration where the arbitration provision in question covered "[a]ll disputes arising in connection with th[e] Agreement." *Ibid.* The Ninth Circuit also discussed with approval numerous other Circuit Court decisions that had compelled arbitration of tort claims that were factually related to an underlying agreement with a broad arbitration provision. *Ibid.*

10386-00420/940275.2

26

MOTION FOR AN ORDER COMPELLING ARBITRATION

One of the cases that the Ninth Circuit discussed with approval was *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988). In *J.J. Ryan*, the Fourth Circuit compelled arbitration of various tort claims that concerned an underlying agreement to be the exclusive importer of certain products. *Id.* at 316-17. The underlying distribution agreement contained an arbitration provision which required the parties to arbitrate "[a]ll disputes arising in connection with the present contract." *Id.* at 318. The Fourth Circuit considered this provision broad enough to require the arbitration of the plaintiff's claims for trade liable and defamation, which concerned false notices that the defendant had allegedly sent regarding the defendants' default under related security agreements. *Id.* at 320. Because these torts were factually related to the parties' distribution agreement, the Fourth Circuit affirmed the district court's order to compel arbitration of the tort claims. *Ibid.*

Here, the Agreement provides that that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof . . . shall be determined by binding arbitration." Singer Decl., ¶ 2. Ex. 1, ¶ 20. The claims alleged by Plaintiffs against the MJC Parties clearly arises from or relate to the Agreement. Dkt. No. 1, ¶¶ 51-64.

**F.** **Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC Can Enforce the Arbitration Agreement.**

**1.** **Branca and the MJC Parties' Attorneys Can Compel Arbitration as Agents Of MJC.**

Numerous federal and California courts have acknowledged the fundamental principle that an agent of a corporate defendant may compel arbitration pursuant to his or her principal's agreement. *See Letizia v. Prudential Bache Sec., Inc.,* 802 F.2d 1185, 1187 (9th Cir. 1986) ("nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles"); *Dryer v. Los Angeles Rams,* 40 Cal. 3d 406, 418 (1985) (holding that agents were entitled to enforce a contract's arbitration provision where the plaintiff sued them in their

capacities as agents for the signatory). As the Ninth Circuit explained in *Letizia*, in "virtually every case" courts have found that an agent may compel arbitration pursuant to his principal's arbitration agreement where his conduct in connection the agreement is at issue. *Id.* at 1188.

Here, there can be no dispute that Branca and McClain, who are each officers of MJC, Co-Executors of the Estate of Michael Jackson, are agents of MJC and the Estate.  Furthermore, Branca signed the Agreement on behalf of MJC. The Agreement expressly releases the MJC Parties' "attorneys" from all claims so they are intended third party beneficiaries of the Agreement and are also entitled to enforce the Agreement's arbitration clause. *Macaulay v. Norlander*, 12 Cal.App.4th 1, 7 (1992) (broker can enforce arbitration agreement in investment agreement because broker was a third party beneficiary of agreement).

### 2.    Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC Can Compel Arbitration as Third-Party Beneficiaries.

Under California law, a non-party to an arbitration agreement may compel arbitration as a third-party beneficiary of the agreement. *See Ronay Family Ltd. P'ship v. Tweed,* 216 Cal.App.4th 830, 838 (2013); *see also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *see also Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal.App.4th 1705, 1713 (2003) ("In the arbitration context, a party who has *not* signed a contract containing an arbitration clause may nonetheless be compelled to arbitrate when he seeks enforcement of other provisions of the same contract that benefit him.") Here, Branca and McClain are specifically identified in the Agreement as a released party (the Cascio Parties' release includes both the Estate and its Co-Executors) and are included in the confidentiality and non-disparagement provisions as well. (Singer Decl., ¶2, Ex. 1, ¶¶ 4(a), 6(b).) MJJ Ventures, LLC and MJJ Productions, LLC also fall within the scope of the releases as all companies owned by the Estate are also expressly released. Both

10386-00420/940275.2

28

MOTION FOR AN ORDER COMPELLING ARBITRATION

MJJ Ventures, LLC and MJJ Productions, LLC are wholly owned by the Estate of Michael Jackson.

Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC were obviously intended to be third-party beneficiaries of the Agreement, including the arbitration clause. As such, they can all compel arbitration on this basis as well.

### 3.     The Non-MJC Parties Can Also Compel Arbitration Under Equitable Estoppel.

Finally, Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC can also compel arbitration of Plaintiffs' alleged claims under the doctrine of equitable estoppel. Equitable estoppel applies when a party has signed an agreement to arbitrate but attempts to avoid arbitration by suing non-party defendants for claims that are based on the same facts and that are inherently inseparable from obligations under the agreement. *Metalclad Corp.*, 109 Cal.App.4th at 1713; *see also Reddam v. KPMG LLP,* No. 04-CV-1227, 2004 WL 3761875, at *5 (holding that a non-party defendant could compel arbitration "when the signatory to the contract containing an arbitration clause raise[d] allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract") (quoting *Boston Telecommunications Group, Inc. v. Deloitte Touche Tohmatsu*, 278 F.Supp.2d 1041, 1048 (N.D. Cal. 2003)). That is exactly what Plaintiffs have done here. In addition to MJC, the release provision in the Agreement expressly identifies the Co-Executors of the Estate of Michael Jackson, i.e., Branca and McClain, as released parties, as well as including releases of all companies owned in whole or in party by MJC or by Michael Jackson at the time of his death, which includes by MJJ Ventures, LLC and MJJ Productions, LLC. Therefore, although Branca, McClain, MJJ Ventures, LLC and MJJ Productions, LLC are not direct parties to the Agreement, they are clearly third party beneficiaries who have the right to enforce the arbitration provision in the Agreement.

**G.** **Plaintiffs' Forum Shopping and Parallel Litigation Cannot Defeat Arbitration**

Plaintiffs' attempt to litigate in federal court while arbitration is pending is improper and provides further support for compelling arbitration.  The Ninth Circuit has made clear that the FAA prohibits parties from avoiding arbitration through strategic forum selection or artful pleading. Courts must enforce arbitration agreements notwithstanding a party's attempt to pursue parallel litigation. Allowing such tactics would undermine the FAA's core purpose of ensuring that arbitration agreements are honored according to their terms.  That is exactly what Plaintiffs are attempting here.

After agreeing to arbitrate all disputes, accepting substantial benefits under that agreement, and facing arbitration proceedings initiated in accordance with its terms, Plaintiffs filed this action in an effort to bypass arbitration. As reflected in the Singer Declaration, this conduct follows earlier efforts to extract additional payments by threatening to disregard the agreement's provisions. (Singer Decl. ¶ 13.)

This Court should not permit Plaintiffs to circumvent their contractual obligations through forum shopping. The FAA requires enforcement of the arbitration agreement—not accommodation of efforts to evade it.

**H.** **The Court Should Stay This Action Pending Arbitration**

Where claims are subject to a valid arbitration agreement, the Court must compel arbitration and either stay the action. 9 U.S.C. § 3. A stay is mandatory once the Court determines that the claims are arbitrable.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

10386-00420/940275.2

## IV.

## CONCLUSION

For all of these reasons, the Court should enforce the parties' agreement, compel arbitration, and stay this action in its entirety pending arbitration.

DATE: April 17, 2026

SINGER WEINSTEN WOLF & JONELIS LLP

By: _____
MARTIN D. SINGER
Attorneys for Defendants THE MICHAEL Jackson COMPANY, a limited liability company; JOHN BRANCA, as Co- Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF Michael JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

10386-00420/940275.2

31

MOTION TO FOR AN ORDER STAYING ACTION AND COMPELLING ARBITRATION