**MARTIN D. SINGER (BAR NO. 78166)**
**ALLISON S. HART (BAR NO. 190409)**
**SINGER WEINSTEN WOLF & JONELIS LLP**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:   (310) 556-3615
Email:  mdsinger@singerlaw.com
        ahart@singerlaw.com

**JONATHAN P. STEINSAPIR (SBN 226281)**
**KATHERINE T. KLEINDIENST (SBN 274423)**
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone: (310) 566-9834
Facsimile: (310) 556-3615
Email:  jsteinsapir@khiks.com
        kkleindienst@khiks.com

Attorneys for Defendants THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF | CASE NO. 2:26-cv-02129-HDV-AGR<br><br>Hon. Hernan D. Vera<br><br>**DECLARATION OF ALLISON S. HART REGARDING L.R. 7-3 CONFERENCE OF COUNSEL PRIOR TO FILING MOTION FOR AN ORDER COMPELLING ARBITRATION**<br><br>Date:        June 4, 2026<br>Time:        10:00 a.m.<br>Courtroom:  5B<br><br>Complaint filed:  February 27, 2026 |

1

MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,

Defendants.

## DECLARATION OF ALISON S. HART

I, Allison S. Hart, hereby declare:

1.    I am an attorney at law licensed to practice before all of the Courts of the State of California and the Central District of California.  I am a partner of Singer Weinsten Wolf & Jonelis LLP, counsel of record for Defendants The Michael Jackson Company, John Branca, individually and as Co-Administrator of The Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, John McClain, individually and as Co-Administrator of The Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, MJJ Productions, LLC, and MJJ Ventures, LLC (collectively "Defendants" or the "MJC Parties").  I make this Declaration in support of Defendants' Motion for an Order Compelling Arbitration. I have personal and first-hand knowledge of the matters set forth in this declaration and, if called upon to testify thereto, I could and would competently do so under oath.

2.    On April 7, 2026, I sent an email to counsel for Plaintiffs in this action, Howard King, Stephen Rothschild, Jackson Trugman and Heather Pickerell, requesting an opportunity to meet and confer regarding the MJC Parties' contemplated Motion for an Compelling Arbitration Pursuant to Local Rule 7-3 of

2

this Court.

3.    I had a telephone conference with Howard King and Heather Pickerell on April 10, 2026, in which I informed them that, on behalf of the MJC Parties, we intended to move for an Order Compelling Arbitration on grounds that Plaintiffs entered into a binding written agreement with Defendant The Michael Jackson Company, LLC, of which each of the Defendants herein is either a specifically named or intended third-party beneficiary, containing a binding arbitration provision providing for arbitration of disputes between the parties, including questions of arbitrability.  I further informed Mr. King and Ms. Pickerell that the grounds for the MJC Parties' Motion would be similar to those brought on behalf of certain of the MJC Parties in a Petition to Compel Arbitration previously filed in the Los Angeles Superior Court against Plaintiff's sibling, Frank Cascio, which was granted on March 4, 2026.  A true and correct copy of the Los Angeles Superior Court's ruling granting my clients' Petition to Compel Arbitration is attached hereto as Exhibit 1.

4.    During our conference on April 10, 2026, counsel for Plaintiffs informed me that Plaintiffs intended to oppose the MJC Parties' Motion for an Order Compelling Arbitration on the same or similar grounds previously rejected by the Los Angeles Superior Court in connection with Frank Cascio's opposition to the Petition to Compel Arbitration.

5.    Counsel for Plaintiffs and I were unable to reach a resolution during our conference on April 10, 2026 eliminating the necessity for a hearing on the MJC Parties' Motion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 17th day of April, 2026, at Los Angeles, California.

_____
ALLISON S. HART

3

DECLARATION OF ALLISON S. HART REGARDING L.R. 7-3 CONFERENCE OF COUNSEL PRIOR TO FILING MOTION FOR AN ORDER COMPELLING ARBITRATION

# EXHIBIT 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

| | |
|---|---|
| **25SMCP00385** | March 4, 2026 |
| **THE MICHAEL JACKSON COMPANY, LLC, et al. vs** | 12:19 PM |
| **FRANK CASCIO** | |

| | |
|---|---|
| Judge: Honorable Michael E. Whitaker | CSR: None |
| Judicial Assistant: J. Young | ERM: None |
| Courtroom Assistant: P. Booker | Deputy Sheriff: None |

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re: Ruling on Submitted Matter

The Court, having taken the matter under submission on 01/14/2026 for Hearing on Motion to Compel Arbitration submitted by Petitioner, now rules as follows:

## MOTION

This case arises from a dispute concerning the obligations owed pursuant to a written agreement.

On July 9, 2025, Petitioners The Michael Jackson Company, LLC ("MJC"); John G. Branca and John McClain, individually and as Officers of The Michael Jackson Company, LLC and Co-Executors of the Estate of Michael Jackson ("Petitioners") filed a petition to compel Respondent Frank Cascio ("Respondent") to arbitration.

Respondent opposes the petition and requests the Court issue an order staying the currently-pending arbitration proceedings.  Petitioners oppose Respondent's request for a stay and reply in support of the petition to compel arbitration.

## EVIDENTIARY OBJECTIONS

The Court rules as follows with respect to Respondent's objections to the Declaration of Martin D. Singer:

1. Overruled
2. Overruled
3. Overruled
4. Overruled
5. Overruled

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

West District, Beverly Hills Courthouse, Department 207

**25SMCP00385**
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**
**FRANK CASCIO**

March 4, 2026
12:19 PM

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                          ERM: None
Courtroom Assistant: P. Booker                   Deputy Sheriff: None

6.    Sustained
7.    Sustained
8.    Overruled
9.    Overruled
10.   Overruled
11.   Overruled
12.   Overruled
13.   Overruled
14.   Overruled
15.   Overruled
16.   Overruled
17.   Overruled
18.   Overruled
19.   Overruled
20.   Overruled
21.   Overruled
22.   Overruled
23.   Overruled
24.   Overruled
25.   Overruled
26.   Overruled
27.   Overruled
28.   Overruled
29.   Overruled
30.   Overruled
31.   Overruled
32.   Overruled
33.   Sustained
34.   Sustained
35.   Overruled
36.   Overruled
37.   Overruled

The Court rules as follows with respect to Petitioners' Evidentiary Objections:

1.    Sustained
2.    Sustained

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                         March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                     12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

3.   Sustained
4.   Overruled
5.   Overruled
6.   Overruled
7.   Overruled
8.   Overruled
9.   Sustained
10.  Sustained
11.  Overruled
12.  Overruled
13.  Overruled
14.  Overruled
15.  Sustained
16.  Overruled
17.  Sustained
18.  Sustained

## ANALYSIS

### 1.   MOTION TO COMPEL ARBITRATION – LEGAL STANDARDS

"[T]he advantages of arbitration include a presumptively less costly, more expeditious manner of resolving disputes.  It follows a party to a valid arbitration agreement has a contractual right to have its dispute with another party to the contract resolved quickly and inexpensively." (*Henry v. Alcove Investment, Inc*. (1991) 233 Cal.App.3d 94, 99–100 [cleaned up].)  Thus, "on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2; see also *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320 [the language in section 1281.2 compelling arbitration is mandatory].) The right to compel arbitration exists unless the court finds that the right has been waived by a party's conduct, other grounds exist for revocation of the agreement, or where a pending court action arising out of the same transaction creates the possibility of conflicting rulings on a common issue of law or fact.  (Code Civ. Proc., § 1281.2, subds. (a)-(c).)

"On a petition to compel arbitration, the trial court must first determine whether an

---

Minute Order                                                       Page 3 of 15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                              March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                          12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

---

agreement to arbitrate the controversy exists.  Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence.  The party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature." (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543-544 [cleaned up].)  The party seeking to compel arbitration must also "plead and prove a prior demand for arbitration and a refusal to arbitrate under the agreement." (*Mansouri v. Superior Court* (2010) 181 Cal.App.4th 633, 640-641.)

And while the moving party on a motion to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, [a] party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 [cleaned up]; see also *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["The party seeking arbitration bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense, such as unconscionability"].)

## 2.    ENFORCEABLE ARBITRATION AGREEMENTS

In 2020, MJC and Respondent entered into an Acquisition and Consulting Agreement ("Agreement"), which provides in pertinent part as follows:

> 20. Governing Law, Mandatory Arbitration, Venue, And Jurisdiction.
> This Agreement shall be governed under the laws of the State of
> California without reference to choice of law rules. **Any dispute, claim
> or controversy arising out of or relating to this Agreement or the
> breach, termination, enforcement, interpretation or validity thereof,
> including any allegations that either Party has violated any state or
> federal statutory or common law right, along with the determination
> of the scope, enforceability, or applicability of this agreement to
> arbitrate, shall be determined by binding arbitration in Los Angeles
> County, California, before a retired judge or justice of a California
> or federal court.** Without limiting the foregoing, the question of
> arbitrability is itself a question to be resolved finally by the arbitrator and

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                              March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                           12:19 PM
**FRANK CASCIO**


Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

---

not by a court. Any such arbitration shall be filed with and administered by JAMS or Signature Resolution, at the claimant's choice, pursuant to their then current general arbitration rules. With respect to conflicts between the California Arbitration Act and the Federal Arbitration Act, the Federal Arbitration Act shall govern. If neither JAMS nor Signature Resolution (or successor entities) shall exist at the time of a demand for arbitration, the arbitration shall be filed with and administered by ADR Services pursuant to its applicable arbitration rules at the time of filing. If ADR Services does not exist at the time of the demand for arbitration, the arbitration shall be filed with AAA or any other arbitration service. The filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement, and the confidentiality provisions thereof, and shall entitle the non-breaching Party to all damages, including attorneys' fees expended in compelling arbitration, resulting therefrom. Each Party irrevocably submits to the exclusive jurisdiction and exclusive venue of the state and federal courts for the County of Los Angeles, State of California for any necessary court proceedings, such as petitions to confirm or vacate an arbitral award.

(Singer Decl. ¶ 6 and Ex. A, emphasis added; see also Petition at ¶¶ 31-32.)  The Agreement also contains a non-disparagement clause and a release of all claims.  (Ex. A at ¶¶ 4, 6.)

A dispute has now arisen over the payments owed under the Agreement and whether the non-disparagement clause has been breached.  (Singer Decl. ¶ 12.)

On  September 17, 2024, MJC initiated arbitration proceedings to resolve the dispute, followed by a supplemental demand for arbitration on September 24, 2024.  (Singer Decl. ¶¶ 13, 15.)

In opposition, Respondent argues (1) that the Agreement is void because its purpose is to silence victims of sexual assault, in violation of Code of Civil Procedure sections 1001 and 1002; (2) the Agreement is unconscionable; (3) the Agreement is rescindable because it was signed under duress; and (4) Petitioners waived the right to compel arbitration.  The Court analyzes each issue in turn.

### a.    DELEGATION

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                      March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                  12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

Petitioners argue that because the arbitration agreement, by its own terms is governed by the Federal Arbitration Act ("FAA") and contains a delegation clause, all of the above challenges to the validity of the contract as a whole are for the arbitrator, and not the Court to decide.  In support, Petitioners cite to  *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 (hereafter *Buckeye*), which held:  "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  (*Id.* at p. 449.)

In *Buckeye*, the U.S. Supreme Court explained that as a matter of substantive federal arbitration law, arbitration provisions are generally severable from the remainder of the contract, and unless the challenge is to the arbitration clause itself, the issue of the contract's validity is a question for the arbitrator, not the court, to decide.  (*Buckeye*, *supra*, 546 U.S. at pp. 445-446.)  Specifically at issue in *Buckeye* was whether the overarching contract containing the arbitration provision was void for illegality as usurious.  Because the agreement to arbitrate was severable from the issue of whether the other provisions were void as usurious, whether the contract was usurious was a question for the arbitrator to decide, not the court.  (*Id.* at p. 449.)

Similarly, in *Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1107-1108, the California Court of Appeal explained:

> It has long been settled that when parties have agreed to arbitration, challenges to the validity of the underlying contract, including contract defenses such as fraud in the inducement or illegality, are for the arbitrator to decide.  This is because the arbitration clause is viewed as separate from the underlying contract. Thus, allegations that the main contract is unlawful or unconscionable does not affect the enforceability of the arbitration clause.
>
> However, challenges to the validity of the arbitration clause itself are generally resolved by the court in the first instance.   An exception to this rule applies when the parties have clearly and unmistakably agreed to delegate questions regarding the validity of the arbitration clause to the arbitrator.  Such delegation clauses are generally enforceable according to their terms.

By contrast, here, when reading the entire agreement in context, the primary purpose of the arbitration provision contained within the agreement is clearly to maintain the confidentiality

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                                      March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                                   12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker            CSR: None
Judicial Assistant: J. Young                    ERM: None
Courtroom Assistant: P. Booker                  Deputy Sheriff: None

of Respondent's childhood sexual assault claims.  Thus, if the contract's confidentiality requirements run afoul of the law, they would void both the agreement to arbitrate and the overall contract.  Thus, unlike *Buckeye*, where the usurious nature of the overarching contract had no bearing on whether the agreement to arbitrate contained within it was valid, here, the same purportedly illegal confidentiality provisions infecting the overall contract would also specifically affect the arbitration clause.

Thus, because the contentions impact whether the *arbitration agreement* contained within the overall contract is valid or void, they are generally issues for the Court to adjudicate. Further, the delegation clause does not pass on the question of whether the arbitration agreement is void to the arbitrator, as the delegation clause only delegates to the arbitrator "the scope, enforceability, or applicability" of the agreement to arbitrate and "the question of arbitrability," not the arbitration agreement's validity or voidness.  (Ex. A to Singer Decl. at ¶ 20.)

Thus, the Court analyzes each contention in turn.

### b.    CODE OF CIVIL PROCEDURE SECTIONS 1001 AND 1002

Code of Civil Procedure section 1001 provides:  "a provision within a settlement agreement that prevents or restricts the disclosure of factual information **related to a claim filed in a civil action** or a complaint filed in an administrative action, regarding any of the following is prohibited: (1) An act of sexual assault that is **not** governed by subdivision (a) of Section 1002."  Section 1002 provides:

> a provision within a settlement agreement that prevents the disclosure of factual information **related to the action** is prohibited **in any civil action** the factual foundation for which establishes a cause of action for civil damages in any of the following:
>
> (1) An act that may be prosecuted as a felony sex offense.
>
> (2) **An act of childhood sexual assault**, as defined in Section 340.1.
>
> (3) An act of sexual exploitation of a minor, as defined in Section 11165.1 of the Penal Code, or conduct prohibited with respect to a minor pursuant to Section 311.1, 311.5, or 311.6 of the Penal Code.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                              March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                          12:19 PM
**FRANK CASCIO**


Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

---

(4) An act of sexual assault, as defined in paragraphs (1) to (8), inclusive, of subdivision (e) of Section 15610.63 of the Welfare and Institutions Code, against an elder or dependent adult, as defined in Sections 15610.23 and 15610.27 of the Welfare and Institutions Code.

"A **provision** within a settlement agreement that prevents the disclosure of factual information **related to the action** described in subdivision (a) that is entered into on or after January 1, 2017 is void as a matter of law and against public policy." (Code Civ. Proc., § 1002, subd. (d), emphasis added; see also Code Civ. Proc., § 1001, subd. (d) [re: agreements entered into on or after January 1, 2019].)  Here, the provision at issue is a confidentiality clause within the Acquisition and Consulting Agreement.

Because the underlying allegations at issue involve alleged childhood sexual assault, the confidentiality provisions are governed by Section 1002, not Section 1001.

There are two primary reasons why the confidentiality clause at issue does not void the agreement under Section 1002.  As a threshold matter, there was no action pending when the Agreement was executed.  (Singer Decl. ¶ 4.)  Nor is there any civil action pending now concerning the underlying allegations.  As such, there is no factual information "related to the action," nor is there a "civil action" in which Respondent is being prevented from disclosing such factual information.  Moreover, the "confidentiality" clause provides:

> The Parties agree to refrain from making any statement or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties, including the Cascio Releasing Parties and the Estate Released Parties, **except as required by law or in connection with a legal or administrative proceeding.**

(Ex. A at ¶ 6.b., emphasis added.)  Thus, on its face, the Court finds that the "confidentiality clause" is actually a general non-disparagement clause specifically designed to carve out disclosures required by Code of Civil Procedure sections 1001 and 1002.

In supplemental briefing, Respondent requests the Court to take judicial notice of Assembly Bill No. 250, as evidence of the legislature's intent to wholly void agreements containing such non-disparagement clauses.  Assembly Bill No. 250 amends Code of Civil

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                                        March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                                     12:19 PM
**FRANK CASCIO**


Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

---

Procedure section 340.16 (pertaining to the statute of limitations for sexual assault committed against a person **on or after** their 18th birthday) to revive claims that would otherwise be time barred where an entity was involved in a "cover up" of a previous instance or allegations of sexual assault.

First, the Court notes that the Legislature specifically developed separate statutory schemes for childhood sexual assault (see Code Civ. Proc., § 340.10, as referenced in Code Civ. Proc., § 1002) and sexual assault against a person aged 18 or older (Code Civ. Proc., § 340.16).

In particular, there is no statute of limitations for a claim for childhood sexual assault, unless it occurred before January 1, 2024, in which case the statute of limitations is 22 years after plaintiff attains the age of majority or within five years of the date plaintiff discovers or should have discovered injury caused by the sexual assault, whichever is later.  (See Code Civ. Proc., §§ 340.10-340.11.)  Whereas the statute of limitations for an action for damages arising from adult sexual assault is generally 10 years from the date of the last act or three years from the date the plaintiff discovers or should have discovered an injury resulting from such act or attempted act of sexual assault, whichever is later.  (Code Civ. Proc., § 340.16.)

Moreover, a "cover up" in the context of *childhood* sexual assault is defined as "a concerted effort to hide evidence relating to childhood sexual assault" and permits any plaintiff who was sexually assaulted as the result of a cover up to recover treble damages. (See Code Civ. Proc., § 340.1, subd. (b)(1)-(2).  But "cover up" in the context of *adulthood* sexual assault is defined as "a concerted effort to hide evidence relating to a sexual assault that incentivizes individuals to remain silent or prevents information relating to a sexual assault from becoming public or being disclosed to the plaintiff, including, but not limited to, the use of nondisclosure agreements or confidentiality agreements" and permits a plaintiff to revive time-barred claims against an entity that participated in, or attempted a, cover up.  (Code Civ. Proc., § 340.16, subds. (e)(1) & (e)(5)(A).)

Thus, legislative intent behind extending the statute of limitations for a cause of action alleging *adulthood* sexual assault does not necessarily apply with equal force to claims of *childhood* sexual assault, as the two types of sexual assault have separate statutory schemes, statutes of limitations, and definitions of "cover up."

Second, the plain language of AB 250 is to revive claims against entities who covered up previous instances or allegations of sexual assault.  Thus, in context, it is clear that the rationale is to prevent the cover up of sexual assault information that enabled the perpetrator to continue to

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                    March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**               12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

commit additional, future acts of sexual assault.  It is victims of those additional, future acts of sexual assault made possible by virtue of the cover-up who may have their otherwise time-barred claims revived.  Those same concerns do not apply here, where the alleged perpetrator had been deceased for about a decade when the parties entered into the agreement containing the confidentiality/non-disparagement clause, and thus was incapable of committing any future acts of sexual assault.

Thus, the Court finds no basis to find the agreement void, either in the language of the statutory scheme or based on legislative history.

### c.    UNCONSCIONABILITY

"Unconscionability is ultimately a question of law for the court."  (*Flores v. Transamerica Homefirst, Inc.* (2001) 93 Cal.App.4th 846, 851.)  "However, numerous factual issues may bear on that question." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.)  As such, Respondent must show two elements to establish the unconscionability defense: (1) procedural unconscionability, which focuses on the manner in which the contract was negotiated, and (2) substantive unconscionability, which concerns whether the contract's terms are unreasonably one-sided. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113-115 (hereafter *Armendariz*).)

"The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree. Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  (*Armendariz, supra*, 24 Cal.4th at p. 114 [cleaned up].)

### i.    PROCEDURAL UNCONSCIONABILITY

Procedural unconscionability examines the "oppression that arises from unequal bargaining power and the surprise to the weaker party that results from hidden terms or the lack of informed choice."  (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795.)  Preprinted forms buried within a volume of documents offered on a "take or leave it basis"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

West District, Beverly Hills Courthouse, Department 207

**25SMCP00385**                                                                    March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                          12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

evidence a high degree of procedural unconscionability.  (See *Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102-104 (hereafter *Dougherty*).)  Most consumer contracts are adhesive and therefore present some procedural unconscionability. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 915 (hereafter *Sanchez*).)  "[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." (*Ibid.*)

Respondent argues that the Arbitration provision is procedurally unconscionable because it is a contract of adhesion that was presented to Respondent on a "take it or leave it" basis.

The Agreement itself appears to be personalized to the parties, and not a form contract. In support of Respondent's claim that it was presented on a "take it or leave it" basis, Respondent provides the Declaration of Frank Cascio, which provides as follows:

> 3. In late December 2019, I learned that nine members of my family had already signed a settlement agreement with the Estate but that the agreement would not become effective absent my signature. At the time, my family was in severe turmoil, and the agreement appeared to offer them a sense of closure. Knowing that, I felt immense pressure to sign as well, to avoid causing more conflict within the family during this unbelievably difficult chapter.

> 4. I was diagnosed with dyslexia in the fifth grade and have struggled with reading comprehension throughout my life. When I was presented with the agreement, I had difficulty understanding many of its terms, particularly the legal concepts. The Estate's attorneys and representatives assured me that the agreement was merely a technicality and that I should not attach much significance to it. They told me that nothing would get done if we had our own counsel and that the only way to reach resolution was "to do it the way we are doing it." They further explained that calling the settlement a "life rights agreement" would keep it private, avoid probate, and prevent the beneficiaries from finding out—even though we were very uncomfortable with this being hidden from them and pressed this issue with the Estate. Despite my family's persistence, the Estate would not budge and said this was non-negotiable.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Beverly Hills Courthouse, Department 207

**25SMCP00385**                                                                   March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                                   12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

---

5. The attorneys and representatives for the Estate led me to believe they had my best interests at heart. They spoke to me in a reassuring and supportive manner, which caused me to trust them completely. The Estate convinced me that my family would find peace and comfort in moving on with their lives, and that signing the agreement would mean our family's private information would not be exposed.

[…]

7. Acting under that pressure, and with misplaced trust in the Estate's representatives, I signed the agreement in January 2020 without my own lawyer and without fully understanding its implications. I signed the agreement while I was alone in attorney Howard Weitzman's office with a notary present. Mr. Weitzman had long represented Michael and the Estate, and I had known him since childhood. He did not read or explain the agreement to me. He simply pointed where I needed to sign. He then gave me a hug and said he was so sorry for what my family had been through and to please reach out if we ever needed anything. When I asked for a copy of the agreement, he identified which one of the Estate's representatives would have a copy. When we later asked this representative for a copy of the signed agreement, he said he did not have it. We never received a signed copy of the agreement from the Estate.

(Frank Cascio Decl. ¶¶ 3-7.)

Respondent's declaration does not support his characterization that he was forced to sign the Agreement on a take-it-or-leave-it basis, and only if he signed it, without counsel. Rather, the reasonable inference from paragraph 3 of Respondent's declaration, that nine members of his family had already signed the agreement, but they could not get closure absent Respondent's signature, is that the "immense pressure" to sign the Agreement came from his own family, not from Petitioners or their attorneys.

Nor does the fact that Petitioners' counsel expressed their concerns that "nothing would get done" if additional attorneys got involved demonstrate that Respondent was precluded from seeking advice from counsel. Respondent's declaration does not indicate, for example, that in the three or four weeks between "late December 2019," when he first became aware of the

---

Minute Order                                                                     Page 12 of 15

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

25SMCP00385                                                                              March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                                          12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker              CSR: None
Judicial Assistant: J. Young                      ERM: None
Courtroom Assistant: P. Booker                    Deputy Sheriff: None

agreement, and January 10, 2020 when he ultimately signed the Agreement, that he had requested additional time from Petitioners to have an attorney of his own choice to review the Agreement but Petitioners refused. Further, Respondent's declaration does not indicate that he wanted his own counsel to review the Agreement and advise him about it, and when expressed his wish to Petitioners or their attorneys, he was rebuffed.

Even further, the fact that the payments to be made under the Agreement subsequently increased as evidenced by the Letter of Direction, modifying the payments under the Agreement, suggests Respondent was able to negotiate a larger payment, calling to question Respondent's contention that the Agreement is procedurally unconscionable. (See Singer Decl. ¶ 2.)

Thus, Respondent has not demonstrated that the Agreement was a procedurally unconscionable contract of adhesion offered to Respondent on a take-it-or-leave-it basis and only if he signed it without his own counsel. In short, the Agreement is not the same as preprinted form buried within a volume of documents offered on a "take or leave it basis."

Because the Court does not find the Agreement to be procedurally unconscionable, it does not analyze substantive unconscionability.

### d. WAIVER

"[A] court should apply the same principles that apply to other contracts to determine whether the party seeking to enforce an arbitration agreement has waived its right to do so." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 569 (hereafter *Quach*).) "To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it." (*Id.* at p. 584.) "Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true." (*Ibid.*)

"The waiving party's knowledge of the right may be "actual or constructive." (*Quach*, *supra*, 16 Cal.5th at p. 584.) "Its intentional relinquishment or abandonment of the right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable factfinder to conclude that the party had abandoned it." (*Ibid.*)

"To establish waiver, there is no requirement that the party opposing enforcement of the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

| | |
|---|---|
| **25SMCP00385** | March 4, 2026 |
| **THE MICHAEL JACKSON COMPANY, LLC, et al. vs** | 12:19 PM |
| **FRANK CASCIO** | |

Judge: Honorable Michael E. Whitaker           CSR: None
Judicial Assistant: J. Young                            ERM: None
Courtroom Assistant: P. Booker                      Deputy Sheriff: None

contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct." (*Quach*, *supra*, 16 Cal.5th at p. 585.)

In the arbitration context, "[i]f a party to an arbitration agreement files a complaint in court raising a claim covered by the agreement, the defendant can file a motion asking the court to stay the lawsuit and send the dispute to arbitration. A defendant who instead litigates the case risks losing the contractual right to compel arbitration." (*Quach*, *supra*, 16 Cal.5th at p. 569.)

Participation in litigation that has been deemed to constitute a waiver includes answering the complaint, propounding discovery requests, and actively engaging in discovery for thirteen months instead of moving to compel arbitration at the outset of the case. (*Quach*, *supra*, 16 Cal.5th at pp. 586-587.)

Engaging in discovery is "markedly inconsistent with an intent to arbitrate." (*Hofer v. Boladian* (2025) 111 Cal.App.5th 1, 15.) In *Hofer*, the plaintiffs were found to have waived their right to arbitration by vigorously litigating in court for six months, including propounding comprehensive discovery requests. (*Ibid.*) In particular, raising the issue of arbitration, but doing nothing to bring it about for six months generally constitutes a waiver. (*Id.* at p. 16; *Quach*, *supra*, 16 Cal.5th at pp. 586-587.) This is because courts disfavor "blow[ing] hot and cold by pursuing a strategy of courtroom litigation only to turn towards the arbitral forum at the last minute." (*Hofer*, 111 Cal.App.5th at p. 17.) "The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration." (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 784.)

Here, Respondent argues that Petitioners have waived the right to compel arbitration by filing the instant Petition to Compel Arbitration in the Superior Court while the arbitration proceeding was pending.

Without more, the Court does not find that filing a Petition to Compel Arbitration in the Superior Court in any way constitutes a relinquishment of Petitioners' right to compel arbitration amounting to a waiver.

### e.    RESCINDABLE AGREEMENT & BREACH

Respondent argues that the Agreement is rescindable because it was procured under duress and that the Petitioners breached the Agreement's Confidentiality Provision by filing the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**Civil Division**
West District, Beverly Hills Courthouse, Department 207

**25SMCP00385**                                                         March 4, 2026
**THE MICHAEL JACKSON COMPANY, LLC, et al. vs**                         12:19 PM
**FRANK CASCIO**

Judge: Honorable Michael E. Whitaker          CSR: None
Judicial Assistant: J. Young                  ERM: None
Courtroom Assistant: P. Booker                Deputy Sheriff: None

instant action.  But having determined the parties entered into an Agreement to Arbitrate, whether and to what extent the Agreement is revocable or the parties breached the Agreement are questions for the arbitrator to decide.

To wit, "Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including any allegations that either Party has violated any state or federal statutory or common law right, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, shall be determined by binding arbitration […] Without limiting the foregoing, the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court." (Agreement at ¶ 20.)

## <u>CONCLUSION</u>

For the foregoing reasons, finding a valid and binding arbitration provision within the Acquisition and Consulting Agreement exists with respect to the dispute in question, the Court grants the Petition to Compel Arbitration and orders Petitioners to lodge a proposed Order in conformity with the Court's ruling on or before March 18, 2026.  Any objections to the proposed Order shall be lodged on or before April 1, 2026.

Upon entry of the Order, the Court will deem the action disposed of as no further action by the Court is contemplated or needed.  Notwithstanding, to ensure that the Order is entered, the Courts set a non-appearance review hearing on April 15, 2026.  If the Order is entered before April 15, 2026, the Court will vacate the review hearing.

Petitioners shall provide notice of the Court's ruling and file the notice with a proof of service forthwith.

 Certificate of Service is attached.