KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
JACKSON S. TRUGMAN, ESQ., STATE BAR NO. 295145
JTRUGMAN@KHPSLAW.COM
HEATHER L. PICKERELL, ESQ., STATE BAR NO. 346211
HPICKERELL@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiffs EDWARD
JOSEPH CASCIO, DOMINIC SAVINI
CASCIO, MARIE-NICOLE PORTE and
ALDO CASCIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 2:26-cv-02129 HDV (AGRx)<br><br>**DECLARATION OF HOWARD E. KING ISO PLAINTIFFS' OPPOSITION TO JACKSON PARTIES' MOTION FOR AN ORDER COMPELLING ARBITRATION AND REQUEST FOR STAY OF ARBITRATION PROCEEDINGS**<br><br>*Filed Concurrently with Plaintiffs' Opposition to Jackson Parties' Motion for an Order Compelling Arbitration and Request for Stay of Arbitration Proceedings; Declarations of Frank Cascio, Edward Joseph Cascio, Dominic Savini Cascio, Marie-Nicole Porte, and Aldo Cascio; and Plaintiffs' Memorandum of Evidentiary Objections*<br><br>Date:    June 4, 2026<br>Time:    10:00 a.m.<br>Crtrm.:  5B<br><br>Action Commenced:  February 27, 2026 |

I, Howard E. King, declare as follows:

1.     I am an attorney duly admitted to practice before this Court.  I am a partner with King, Holmes, Paterno & Soriano, LLP, attorneys of record for Plaintiffs EDWARD JOSEPH CASCIO, DOMINIC SAVINI CASCIO, MARIE-NICOLE PORTE, and ALDO CASCIO.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.  I make this declaration in support of Plaintiffs' Opposition to Jackson Parties' Motion for an Order Compelling Arbitration and Request for Stay of Arbitration Proceedings ("Motion").

2.     In early 2024, Plaintiffs and their brother Frank Cascio (together, "Cascios") retained me as their counsel.

3.     In June and July 2024, I had several conversations with Martin Singer, counsel for the Estate of Michael Jackson ("Estate") on the phone and in person. During these conversations, I told him that the "Acquisition and Consulting Agreement" ("Agreement"), which is attached to Martin Singer's declaration as Exhibit 1, was void and unconscionable. I told him that I intended to challenge the validity of the Agreement on the Cascios' behalf.

4.     Mr. Singer now attests in paragraph 13 of his declaration that I "communicated a series of extortionate threats and demands" during our conversations in 2024. This is categorically false.

5.     **Exhibit A** is a true and correct copy of the Petition for Order Compelling Arbitration that Defendants John Branca, John McClain, and The Michael Jackson Company filed in the Superior Court for the County of Los Angeles on July 9, 2025.

6.     On May 11, 2026, Michael Farina, who is counsel to Herman Weisberg, emailed me that he intends to file a joinder to the Motion on behalf of Mr. Weisberg by May 15, 2026.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Executed on this 14th day of May, 2026, at Los Angeles, California.


                                        /s/ Howard E. King
                                        Howard E. King

# EXHIBIT A

MARTIN D. SINGER (BAR NO. 78166)
ALLISON S. HART (BAR NO. 190409)
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615
Email: mdsinger@lavelysinger.com
       ahart@lavelysinger.com

JONATHAN P. STEINSAPIR (SBN 226281)
KATHERINE T. KLEINDIENST (SBN 274423)
KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone: (310) 566-9834
Facsimile: (310) 556-3615
Email: jsteinsapir@khiks.com

Attorneys for Petitioners **THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON**

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/09/2025 10:57 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By L. Kulkin, Deputy Clerk

### SUPERIOR COURT FOR THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES

| THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON,<br><br>Petitioners,<br><br>v.<br><br>FRANK CASCIO and DOES 1-10, inclusive,<br><br>Respondents. | CASE NO. 25SMCP00385<br><br>**PETITION FOR ORDER COMPELLING ARBITRATION** |
| --- | --- |

PETITION FOR ORDER COMPELLING ARBITRATION

Petitioners Attorneys for Petitioners THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON (hereinafter collectively "Petitioners") allege:

## INTRODUCTION

1.      Even after death, Michael Jackson's unparalleled musical and financial success continues to make his legacy a target for devious opportunists. This Petition arises from a *$213 Million civil extortion scheme* orchestrated by such opportunists, Respondents FRANK CASCIO ("Frank") and DOES 1-10 ("Does") (collectively "Respondents").  For over 30 years, Respondents have held themselves out as Michael Jackson's "second family," and they have been among Michael Jackson's most passionate defenders. Few people outside of Michael Jackson's own family were as vocal as Respondents in defending him against false child molestation allegations in the media. During that time, Frank volunteered countless first-hand accounts detailing Michael Jackson's kindness toward children along with unequivocal statements that he never abused any of them, especially Frank himself.  Indeed, while the jury in Michael's 2005 criminal trial was deliberating – ultimately acquitting Michael on all charges – Frank, using the name Frank Tyson, unequivocally told CourtTV: "I wouldn't be here if I thought that man was a pedophile."[1] However, after Michael's death and the financial success of The Estate of Michael Jackson, Frank and his cohorts threatened that unless they were paid substantial sums of money, they would repudiate their ardent defense of Michael and would instead go public with accusations that were completely contrary to their steadfast proclamations of his innocence. It was a shakedown.

2.      Frank and the Does have recently retained attorney Mark Geragos, who himself has a history as a zealous advocate for Michael Jackson's innocence. Significantly, Geragos previously represented Michael Jackson and in court testimony, television interviews and in a book he co-

---

[1] June 11, 2005, https://www.youtube.com/watch?v=T7CD_HNfbQA (13:15)

283-428\PLE

PETITION FOR ORDER COMPELLING ARBITRATION

authored has consistently defended Michael Jackson and denounced any accusations that have been made against Michael Jackson acting inappropriately, even going so far as to declare to a national television audience watching ABC's *Good Morning America* that "there's nothing sexual going on" between Michael Jackson and children and that Michael did nothing illegal. In his book *Mistrial: An Inside Look at How the Criminal Justice System Works...and Sometimes Doesn't* ("Geragos Book"),[2] Geragos wrote, "*Whenever people ask about Michael Jackson, they want to know if we believe he was a child molester. We represented Michael for about eighteen months, and we did not see or hear any evidence at all that he ever hurt children.*"[3] Geragos reiterated, **"What we do know is this: Michael was absolutely 100 percent innocent** *of the charges brought against him in Santa Maria. What we believe is this: the prosecution was nothing more than a vendetta by Sneddon, a bitter, angry man at the end of his career, who was going to try to get Michael before he quit.*"[4]

3.    Even more recently, Geragos criticized the so-called documentary *Leaving Neverland,* saying on *The Megyn Kelly Show*[5] "*That documentary maker should be ashamed of himself,*" calling the one-sided film "*A complete rewrite of history.*"[6] In fact, Geragos pointedly defended Michael against molestation accusations by emphatically noting that "***People would say would you take your son to Neverland? Actually, I did on several occasions***"[7] Geragos's son was around 10 years old at the time.

4.    Following the 2019 release of the so-called documentary hit piece about Michael Jackson containing numerous false allegations concerning Michael, Respondents saw an opportunity

---

[2] Co-authored by Mark Geragos and Pat Harris, initially published April 11, 2013.

[3] Geragos Book, Kindle edition, pp. 90-91.

[4] Geragos Book, Kindle edition, pp. 90-91.

[5] December 9, 2021, *The Megyn Kelly Show* on SiriusXM
https://www.youtube.com/watch?v=3ccpSppNuEE

[6] December 9, 2021, *The Megyn Kelly Show* on SiriusXM
https://www.youtube.com/watch?v=3ccpSppNuEE

[7] December 9, 2021, *The Megyn Kelly Show* on SiriusXM
https://www.youtube.com/watch?v=3ccpSppNuEE

283-428\PLE

3

to enrich themselves. Despite having a decades-long friendship with Michael Jackson, and after years of passionately defending Michael against false and scurrilous allegations made by third parties, Respondents decided to exploit the negative publicity following the release of the film in 2019 in order to try to profit from making their own specious allegations against Michael.  To do so, Respondents' representative insisted on meeting with MJC's representatives at the Sunset Marquis Hotel swimming pool wearing only bathing suits so that MJC's representatives could not wear a "wire" to record the conversation.  Only someone engaging in extortion or other unlawful conduct would be worried about their conversation being recorded. A truthful person asserting legitimate legal claims should have no objection to being recorded.

5.     After the bizarre swimming pool meeting, MJC tried to negotiate a life rights and consulting deal with Respondents pursuant to which Respondents would be compensated in exchange for providing MJC with personal content such as home movies and other memorabilia depicting Michael's close bond and joyful interactions with Respondents and their family over the years.  However, the negotiation with Respondents morphed into a shakedown in which Frank and his cohorts each demanded substantial amounts of money, otherwise they threatened to concoct false allegations against Michael which were the opposite of their prior glowing statements about Michael they had made in his defense over the prior decades. And they were free to do this because there is no protection against defamation for a deceased person.

6.     On the recommendation of counsel with respect to their obligation as fiduciaries, in 2020 MJC reluctantly entered into a Confidential Acquisition and Consulting Agreement dated on or about January 10, 2020 with Respondents and others (herein the "Agreement"). Because the Agreement contains strict confidentiality provisions, Petitioners have redacted portions of the Agreement that are not relevant to this proceeding.  A true and correct copy of the Agreement, from which certain provisions not relevant to this Petition have been redacted, is attached hereto as Exhibit 1.

7.     Thereafter, the Agreement was modified by a Letter of Direction dated January 28, 2020, which adjusted the timing of certain payments to be made to the parties under the Agreement

283-428\PLE

4

PETITION FOR ORDER COMPELLING ARBITRATION

and directed where certain payments should be sent, but the Agreement remained the same in all other respects.

8.     Pursuant to the Agreement, Respondents and the other parties to the Agreement were paid over a period of five (5) years in order to prevent Michael's family, particularly his children, from having to be subjected to any further false allegations against Michael, and to protect future projects important to Michael's legacy.  The Agreement contains comprehensive releases of any claims against MJC, the Estate of Michael Jackson, and their officers, executors, attorneys and other representatives, strict confidentiality and non-disparagement provisions, and provides that any disputes among the parties arising from or relating to the Agreement must be arbitrated.

9.     After receiving monies paid to them pursuant to the Agreement, Frank, through Respondents' then-lawyer, demanded that Respondents be paid hundreds of millions of dollars more, otherwise, Respondents would file a bogus public lawsuit containing outlandish accusations against Michael that are completely contrary to their prior statements supporting and defending Michael.  Respondents' lawyer also warned that they *expect a substantive response by end of day tomorrow. Otherwise, we will be forced to expand the 'circle of knowledge'* " and alluded to their claims being revealed *"to the buyer of the catalogue"* [8] if their demands went unsatisfied.

10.     As a result of Frank's threats to breach the Agreement's binding and mandatory confidential arbitration provisions by threatening a public lawsuit, on September 17, 2024, MJC filed a Demand for Arbitration against Frank asserting claims for civil extortion, anticipatory breach of contract, and declaratory relief, which proceeding is currently pending before Signature Resolution, Case ID: NLKXB.

11.     Shortly after MJC's initial Demand for Arbitration was filed against Frank, Respondents' then-attorney ominously delivered a draft lawsuit to MJC's attorneys which named one of the Officers of MJC and Co-Executors of the Estate of Michael Jackson, as a defendant in a

---

[8] The deal for a third party's investment in the Michael Jackson music catalogue had closed in November 2023, and the demand for $213 Million came in July 2024.

283-428\PLE

bogus defamation claim manufactured by Respondents in a transparent attempt to circumvent the arbitration provision in the Agreement.

12.    Accordingly, on September 24, 2024, a Supplemental Demand for Arbitration was filed, adding an additional claim for declaratory relief against Frank with respect to his alleged defamation claim against against one of the Officers of MJC and Co-Executors of the Estate of Michael Jackson.

13.    Thereafter, on January 3, 2025, Respondents' then-counsel, Howard King, notified Signature Resolution that Frank and other Respondents intended to assert counterclaims against MJC, Branca and other individuals and entities related to Michael Jackson, including presumably for defamation. Thus, the Respondents have clearly acknowledged through their then-attorney that any affirmative claims they may have against MJC and the released parties under the Agreement must be resolved pursuant to arbitration.

14.    No doubt frustrated that their extortionate demands had not been satisfied, Respondents recently switched lawyers to attorney Mark Geragos. Geragos's representation of Respondents is ironic given his own steadfast defense of Michael Jackson over the years, including proclaiming Michael's innocence in a book that Geragos co-authored. Through Attorney Geragos, Respondents renewed their threats to file in the public domain a specious lawsuit against Petitioners and others, refusing to arbitrate. Despite the pending Arbitration, Geragos threatened that Respondents were poised to imminently file a public lawsuit against Petitioners and others (including other agents of MJC and third-party beneficiaries of the Agreement). In a transparent attempt to try to evade their contractual obligation to arbitrate, Respondents threatened to file a public lawsuit against Petitioners and others for declaratory relief, defamation, and for a "cover-up" – not a real cause of action – styled as claims for negligent and intentional infliction of emotional distress.

15.    The ominous threats to sue rather than arbitrate unless they were paid tens of millions of dollars persisted despite the MJC Parties' counsel repeatedly cautioning the Respondents' counsel

283-428\PLE

PETITION FOR ORDER COMPELLING ARBITRATION

that all disputes against MJC, its representatives, and any third-party beneficiaries of the Agreement, however characterized, must be *arbitrated* and not filed in court.

16.    In order to enforce their rights under the Agreement, Petitioners hereby seek an order compelling Respondents to resolve any and all of their specious alleged claims against Petitioners and any attorneys who represented Petitioners in the pending arbitration before Signature Resolution in accordance with the express provisions of the Agreement.

## FACTUAL BACKGROUND

17.    For more than three decades, Frank and his cohorts proudly described themselves as musical icon Michael Jackson's "second family," and they were among Michael Jackson's staunchest defenders when he faced accusations made by opportunists seeking fame and fortune. Indeed, few people outside of Michael Jackson's own family were as vocal as Frank and the other Respondents in defending Michael against false child molestation allegations in the media.

18.    In a 2005 interview on *ABC Primetime Live*, Frank (under the name "Frank Tyson") emphatically stated, *"I want to tell you something. If Michael ever laid a finger on me, I would not be in this chair right now."*[9] In a 2011 interview on the *Wendy Williams Show,* when Frank was asked, "was there ever anything sexual?" with Michael, he responded with absolute certainty, *"Nothing at all. And that's what makes me so upset."*[10]

19.    For years Frank has made it his primary vocation to publicly defend Michael Jackson.  Frank's 2011 Book, *"My Friend Michael: An Ordinary Friendship with an Extraordinary Man"* (the "Book") is a 300+ page tribute to Michael Jackson that both honors and defends him over the 25 years that Frank knew him. Frank dedicated the Book *"To Michael, my teacher—thank you for being a father, a brother, a mentor, and a friend, and for the greatest adventure I could ever have imagined. I love you, and I miss you every day. With all my love, Frank."*  Dozens of

[9] https://www.youtube.com/watch?v=Zma1mTfXJis&list=PPSV (12:45-48).

[10] https://www.youtube.com/watch?v=WvKebWmfbP4&t=12s.

283-428\PLE

times, Frank's Book declared that Michael never did anything to harm Frank himself, the other Respondents, or any children, and it adamantly declared that Michael had been wrongfully accused by liars.

20.    Frank's Book adamantly confirmed that he could state *"with the absolute conviction of a man who saw Michael interact with thousands of kids"* that *"[i]n all the years that I was close to him, I saw nothing that raised any red flags, not as a child and not as an adult. Michael may have been eccentric, but that didn't make him criminal."*[11] Frank stated unequivocally, *"I want to be precise and clear, on the record, so that everyone can read and understand: Michael's love for children was innocent, and it was profoundly misunderstood.* People seemed to have trouble accepting all the good qualities of this incredible man."[12]

21.    Frank also wrote that Michael *"was being attacked by liars"* and that *"The allegations were all bullshit. There was nothing ambiguous about the whole thing. These people were after Michael's money. But he was innocent, and we were going to destroy them in court. I felt confident of that."*[13]

22.    Even now, Frank is still trying to profit from Michael's legacy by presently peddling memorabilia he claims he was given by his friend Michael, and he has continued to describe himself as "a close friend and personal assistant to Michael …."

23.    After Michael Jackson's death, Frank and other of the Respondents were interviewed by Oprah Winfrey, where one of them told a national television audience that he had asked the children if there had been any inappropriate conduct by Michael, and that they told him that *never happened.* The interview was reported on the Oprah.com website, stating, they "… *say they never believed the charges against Michael, but … [he] … says he had to ask [the] children if any improprieties had occurred. When he did, he says they insisted nothing had happened.* **Today,**

---

[11] Book, Kindle edition, pp. 262-263.

[12] Book, Kindle edition, p. 49.

[13] Book, Kindle edition, pp. 276-277.

283-428\PLE

PETITION FOR ORDER COMPELLING ARBITRATION

*Frank [and the others] still say no improprieties ever occurred between them and Michael.*"[14] They *"decided to speak out because they wanted to show the world who Michael really was."*[15]

24.     Significantly, Frank and two of the Respondents directly told Oprah and her national TV audience that Michael Jackson had *never engaged in any improprieties with them.* When Oprah asked Respondents, "were there ever any improprieties with you and Michael Jackson?" they resoundingly responded in unison, "*Never.*" One of the Respondents also explained to Oprah and her audience that "*Michael was a target. And, unfortunately, he was targeted.*" [16]

25.     Notably and reeking of irony, in his Book, Frank expressed outrage that Michael Jackson paid money to an accuser in 1994, stating: "*He was innocent and saw no reason to pay people to stop spreading lies about him…I don't think he should have settled that case. Michael was never the same after it. Not fighting for the truth took a heavy toll on him. He was the biggest star in the whole world. The unresolved accusations cast a shadow on his character. They threatened his legacy. And they wounded his soul. From then on, people wouldn't know what to believe about Michael Jackson. Above all, they challenged his love for children – something that was central to his being – and that hurt far more than the media circus that had been stirred up by the accusations.*"

26.     Like his clients, over the years Attorney Geragos made innumerable statements defending Michael Jackson and denouncing accusations that had been made against him. Geragos stridently defended Michael in a book of his own, as well as in court and in statements to the media.

27.     In fact, Geragos wrote in his book about testifying on Michael's behalf in court, writing: "*I actually ended up testifying for Michael twice during the trial. It was apparent to me that the jurors were not buying what the prosecution was selling. We were not surprised when the jury came back with what was the obvious not guilty verdict—the only thing that surprised us was that*

---

[14] https://www.oprah.com/oprahshow/michael-jacksons-second-family/all.

[15] *Id.*

[16] *Id.*

283-428\PLE

PETITION FOR ORDER COMPELLING ARBITRATION

*it took them longer than fifteen minutes to reach that decision."*[17] Geragos wrote regarding the trial, *"the evidence was overwhelming that he never touched this kid, and the entire thing was a huge shakedown* by a family that had been involved in frauds before."*[18]

## THE 2019 SHAKEDOWN PLOT

28. In 2019, after two multinational media companies, HBO and the U.K.'s Channel 4, teamed up to release *Leaving Neverland*, a one-sided hit job about accusations against Michael Jackson, a vicious media frenzy ensued, with calls to "cancel" and boycott Michael's artistry. Following the bizarre meeting between MJC's representatives and Respondents' representatives in which MJC's representatives were told that Respondents intended to repudiate their prior support of Michael and manufacture false and specious allegations against him unless they were paid money, as well as to counter the negative press surrounding the film, MJC sought to make a life rights and consulting deal to acquire content that the Respondents and other parties to the Agreement had accumulated during their decades-long close friendship with Michael, including home movies showing Michael's warm and happy interactions over the years with his "second family" during Christmas, holidays, and other occasions. However, Respondents used the negative media frenzy as an opportunity to enrich themselves.

29. After years of enmeshing themselves in Michael's life and repeatedly debunking scandalous accusations that had been made against him by third parties, Respondents decided it was their turn to profit from making specious accusations against their dear friend, Michael, who had died a decade earlier. They angled for substantial shakedown payments from MJC, absent which they would go public with scurrilous accusations that were completely contradicted by their own words and conduct for decades.

---

[17] Geragos Book, Kindle edition, pp. 90-91.

[18] Geragos Book, Kindle edition, p. 86.

283-428\PLE

PETITION FOR ORDER COMPELLING ARBITRATION

30.    Notably, Respondents never made their accusations while Michael Jackson was alive, or even in the first years after his passing when they were basking in the afterglow of their friendship with the musical legend, enabling Frank and others to generate financial opportunities and publicity. It was only after Michael Jackson had been dead for more than a decade, when those opportunities had dried up, and Frank and others could make outrageous claims without fear of being sued for defamation because laws do not protect the deceased, that they betrayed their friend by threatening to go public with lies they would not have to defend in court.

31.    Accordingly, in order to prevent Michael's family members, particularly his children from having to deal with any further false allegations against Michael, and to protect Michael's valuable legacy, in 2020 MJC reluctantly entered into the Agreement with Respondents.

## THE AGREEMENT

32.    The Agreement expressly provides that all future disputes arising out of or related to that Agreement must be resolved in arbitration, as follows:

> "20.    Governing Law, Mandatory Arbitration, Venue, And Jurisdiction. This Agreement shall be governed under the laws of the State of California without reference to choice of law rules. **Any dispute, claim or controversy arising out of or relating to this Agreement** or the breach, termination, enforcement, interpretation or validity thereof, **including any allegations that either Party has violated any state or federal statutory or common law right**, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, **shall be determined by binding arbitration in Los Angeles County, California,** before a retired judge or justice of a California or federal court. Without limiting the foregoing, **the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court**. Any such arbitration shall be filed with and administered by JAMS or Signature Resolution, at the claimant's choice, pursuant to their then current general arbitration rules. With respect to conflicts between the California Arbitration Act and the Federal Arbitration Act, the Federal Arbitration Act shall govern. If neither JAMS nor Signature Resolution (or successor entities) shall exist at the time of a demand for arbitration, the arbitration shall be filed with and administered by ADR Services pursuant to its applicable arbitration rules at the time of filing. If ADR Services does not exist at the time of the demand for arbitration, the arbitration shall be filed with AAA or any other arbitration service. *The filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement, and the confidentiality provisions thereof, and shall entitle the non-breaching*

283-428\PLE

11

PETITION FOR ORDER COMPELLING ARBITRATION

*Party to all damages, including attorneys' fees expended in compelling arbitration, resulting therefrom.* Each Party irrevocably submits to the exclusive jurisdiction and exclusive venue of the state and federal courts for the County of Los Angeles, State of California for any necessary court proceedings, such as petitions to confirm or vacate an arbitral award." (Emphasis added).

33.    Thus, the parties expressly agreed that it would be a breach of the Agreement for any party to the Agreement to file a public lawsuit relating to the Agreement.

34.    In addition, Paragraph 6.a. of the Agreement provides: "Any action to enforce this Agreement must be brought pursuant to Paragraph 20 below."

35.    The Agreement also includes strong confidentiality provisions, as follows:

"6.    Confidentiality and Non-Disparagement.

a.    Each Party shall forever maintain the confidentiality of and shall not disclose this Agreement or anything relating thereto, including but not limited to the Agreement's existence, terms, subject matter, etc., along with information relating to the Cascio Life Story Rights, other than information relating thereto that is already publicly known at the time of execution of this Agreement (the 'Confidential Information') to any third-party except insofar as disclosure is necessary to be made to the Party's respective accountants and attorneys (who will similarly keep the terms and conditions of this Agreement confidential and shall sign appropriate non-disclosure agreements). Should any Party be served with legal process that may be interpreted to require disclosure of this Agreement, that Party shall advise the other Parties reasonably in advance of any such disclosure in order to allow any of the other Parties to bring an appropriate motion for a protective order or other motion or action. Any action to enforce this Agreement must be brought pursuant to Paragraph 20 below.

b.    The Parties agree to refrain from making any statements or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties, including the Cascio Releasing Parties and the Estate Released Parties, except as required by law or in connection with a legal or administrative proceeding."

36.    John G. Branca and John McClain are Officers of MJC, and Co-Executors of the Estate of Michael Jackson.

37.    The Agreement includes comprehensive waivers and releases of any and all past claims, as follows:

283-428\PLE

12

PETITION FOR ORDER COMPELLING ARBITRATION

"4.    Releases. The Parties recognize that they have had potential disputes in the past and, as part of this Agreement and in order to start on a 'clean slate,' the Parties agree it is in their mutual best interests to fully release each other from any and all claims that they may have against the other relating to any subject matter, known or unknown, from the beginning of time until the date of execution of this Agreement. Accordingly, the Parties hereby exchange the following releases:

a.    Except with respect to the obligations created by or arising out of this Agreement, the *Cascio Parties*, on behalf of themselves, and any of their companies, and each of the Cascio Parties' respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ('the Cascio Releasing Parties'), *hereby fully and forever release and discharge MJC, Michael Jackson, the Estate of Michael J. Jackson, its Co-Executors*, its individual beneficiaries (Michael Jackson's three children and Michael Jackson's mother), all companies owned in-whole or in-part by the Estate of Michael Jackson (including but not limited to all companies owned in-whole or in-part by Michael Jackson at the time of his death), personal representatives, *and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ('the Estate Released Parties')*, from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

b.    Except with respect to the obligations created by or arising out of this Agreement, MJC and the Estate of Michael J. Jackson, on behalf of themselves, and any of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ('the MJC Releasing Parties'), hereby fully and forever release and discharge the Cascio Parties, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ('the Cascio Released Parties'), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

283-428\PLE

13

PETITION FOR ORDER COMPELLING ARBITRATION

c.    Nothing herein shall be construed to release any claims for breach of this Agreement.

d.    Nothing herein shall be construed as an admission of liability by any Party, and each Party expressly acknowledges and agrees that the other Party hereto has not admitted, and by execution or performance of this Agreement does not admit, any liability or obligation to the other Party, except for the obligations created by this Agreement."

5.    Waiver of Civil Code Section 1542 and Similar Laws. The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those now known or believed t be true relating to the Action. Notwithstanding the existence of any such different to additional facts, the Parties hereby agree that this Agreement shall remain in full force and effect. The Parties hereby waive any and all rights which they have or may have under the provisions of Section 1542 of the California Civil Code as no worded and as thereafter amended, along with any similar principles of law in other jurisdictions. Section 1542 of the California Civil Code reads as follows:

'SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THA, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.'

The Parties hereby waive and relinquish any right and benefit which either Party of any other party may have under Section 1542 to the extent that such party may lawfully do so in connection with the subject matter hereof."

38.    Thus, the Officers of MJC, Co-Executors of the Estate of Michael Jackson and others who were involved with representing MJC under the Agreement are intended and named third-party beneficiaries of the Agreement, including without limitation its releases, confidentiality, arbitration and non-disparagement provisions.

39.    As of January 28, 2020, the Agreement was modified by a Letter of Direction solely to adjust the schedule of payments and to direct where certain payments to the parties to the Agreement should be sent.  All other terms of the Agreement remain unchanged.

283-428\PLE

14

PETITION FOR ORDER COMPELLING ARBITRATION

40.     Petitioners have performed all duties and obligations on their part required to performed by the Agreement, except to the extent such performance was waived, excused or prevented by reason of the acts and omissions of Respondents.

## THE PENDING ARBITRATION

41.     After receiving consideration from MJC pursuant to the Agreement, in July 2024, Respondents *demanded $213 Million more.*  Respondents threatened that unless they were paid *hundreds of millions* of dollars, they would go public with bogus, false accusations about musical icon Michael Jackson of the same ilk that Frank had long denounced as utterly baseless and false.

42.     Frank and the other Respondents sought to pressure MJC into submission with a menacing extortionate threat on August 29, 2024 (communicated through his lawyer), asserting, *"We expect a substantive response by end of day tomorrow. Otherwise, we will be forced to expand the 'circle of knowledge' so my team can prepare a complaint."* The email continued with an ominous rhetorical inquiry whether *"the materiality of this claim **has been revealed by the estate to the buyer of the catalogue.**"*[19] This was a transparent threat to go public with spurious damaging accusations in the guise of a sham public lawsuit and to damage the value of the Michael Jackson music catalogue, unless MJC agreed to satisfy the astronomical financial demands, notwithstanding that MJC had already paid Respondents to put an end to the 2019 shakedown in exchange for terms including confidentiality, comprehensive releases, and agreement to mandatory arbitration of all future disputes.

43.     On or about September 17, 2024, MJC initiated an Arbitration against Frank before Signature Resolution, asserting claims for civil Extortion, anticipatory breach of contract, and declaratory Relief, Signature Resolution Case ID NLKXB.

44.     There were reports in the media on September 23, 2024, that MJC had initiated an arbitration to enforce its rights under the Agreement, none of which identified Frank as a party to the dispute. Prior attorney, Howard King, counsel for Frank, sent a demand letter to one of the Officers

283-428\PLE

15

PETITION FOR ORDER COMPELLING ARBITRATION

of MJC and Co-Executors of the Estate of Michael Jackson, demanding that he issue a public statement refuting certain information published by the media.  Implicit in Frank's legal demand was the threat that unless the public statement requested by Frank was issued, Frank would file a public lawsuit against one or more of the Co-Executors of The Estate of Michael Jackson in a transparent attempt to circumvent the mandatory arbitration provision in the Agreement and as a pretext to disclose confidential information in breach of the Agreement.  Accordingly, on September 24, 2024, Petitioners filed a Supplemental Demand for Arbitration against Frank before Signature Resolution.

45.    On the afternoon of Friday, October 11, 2024, Respondents' former attorney delivered an envelope to MJC's counsel, containing a pair of draft lawsuits riddled with outlandish scurrilous allegations that were completely inconsistent with what Frank and his cohorts had insisted for years in their unyielding defense of Michael. Ominously, the envelope contained no cover letter or explanatory note. It was apparent that the delivery was a threat to file a public lawsuit in court (and not in confidential arbitration as contractually mandated) containing the incendiary accusations unless Respondents' demand for hundreds of millions of dollars was satisfied.

46.    After the appointment of the Arbitrator, on January 3, 2025, Respondents' then lawyer, Howard King, identified one of the Officers and Co-Executors of the Estate of Michael Jackson and other third parties as Cross-defendants to be included *in the Arbitration*.[20] He also identified Frank and the Doe Respondents as Cross-Complainants who would be asserting claims against those Cross-defendants *in the arbitration*. Thus, Respondents have acknowledged that any claims against MJC, its officers, and/or other third-party beneficiaries of the Agreement must be adjudicated in Arbitration, not in court.

---

[20] He also identified the Estate's co-executor, a lawyer for the Estate who was involved in negotiating and/or preparing the Agreement, a handful of Michael Jackson entities, and others.

283-428\PLE

16

## RESPONDENTS' RECENT THREATS TO BREACH

## THE ARBITRATION PROVISION IN THE AGREEMENT

47.     After their former attorney, Howard King, notified Signature Resolution of Frank's and the Does' intention to pursue counterclaims against MJC, one of its Officers and other third-party beneficiaries of the Agreement in the Arbitration, Respondents replaced King with their current attorney, Geragos.

48.     Since taking over the representation of Respondents in this dispute, Attorney Geragos has menacingly warned that his clients are poised to file a public lawsuit in court against one of the Officers of MJC and Co-Executors of the Estate of Michael Jackson and the attorneys involved in the Agreement, who are third party beneficiaries of the Agreement for declaratory relief (a claim unquestionably subject to arbitration), defamation (based on alleged statements by in the capacity as Co-Executor of the Estate), and a claim for a so-called "cover-up" against the Officer and Co-Executor of the Estate of Michael Jackson and the attorneys involved in the Agreement, the firm of Kinsella Holley and Branca's firm, Ziffren Brittenham. Since there is no such cause of action, attorney Geragos stated that the "cover-up" claim would be in the form of causes of action for negligent and intentional infliction of emotional distress. Geragos reduced Respondents' previous outlandish demand for $213 Million to $44 Million, which Geragos demanded on behalf of Respondents be paid in order to avoid a public lawsuit including Respondents' scurrilous and fabricated claims.

49.     Respondents, through their attorney, Geragos, refused to arbitrate, claiming that the threat to pursue the so-called cover up claim against the attorneys and the Officer of MJC and Co-Executor of the Estate of Michael Jackson did not have to be pursuant to the Arbitration provision in the Agreement because they are not signatories or specifically identified as parties to the Agreement and would not be covered by the arbitration clause. However, those claims were released under the Agreement and those potential parties are third party beneficiaries under the Agreement covered by the arbitration provision under the Agreement.

283-428\PLE

17

PETITION FOR ORDER COMPELLING ARBITRATION

50.     Irrespective of how they are characterized, the alleged claims threatened by Respondents through Attorney Geragos constitute a "dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including any allegations that either Party has violated any state or federal statutory or common law right, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate," and, as such, it "shall be determined by binding arbitration in Los Angeles County, California, before a retired judge or justice of a California or federal court." Ex. 1, Agreement, ¶20,

51.     The Agreement expressly provides: "Without limiting the foregoing, the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court." Ex. 1, Agreement, ¶20. Thus, even if Respondents contend that their claims are not subject to arbitration, *that is an issue to be adjudicated by the Arbitrator* pursuant to the Agreement's express terms.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for the following:

1.     For an order compelling Respondents to arbitrate their dispute with Petitioners and attorneys representing MJC, and any other existing dispute under the Agreement;

2.     For an award of costs and attorney's fees pursuant to Paragraph 21 of the Agreement; and

3.     For such other and further relief as the Court deems appropriate.

DATE: July 8, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
ALLISON S. HART


By: /s/ Martin D. Singer
      MARTIN D. SINGER
Attorneys for Petitioners THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON

283-428\PLE

DATE: July 8, 2025

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
JONATHAN P. STEINSAPIR
KATHERINE T. KLEINDIENST


By: /s/ Jonathan P. Steinsapir
    JONATHAN P. STEINSAPIR
Attorneys for Petitioners THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON

283-428\PLE

19

PETITION FOR ORDER COMPELLING ARBITRATION

# EXHIBIT 1

Confidential

## ACQUISITION AND CONSULTING AGREEMENT



This Agreement (the "Agreement") is made and entered into as of the date this Agreement is fully executed by the Parties (as defined below) (the "Effective Date") by and between The Michael Jackson Company, LLC ("MJC"), on the other hand, and Frank Cascio, ███████ , ███████████████ ████████████████████ , ████████████ , ████████ ████████████ ████████ ████████████ , ████████ , ████ ███████ , and ████████████ (individually and collectively, the "Cascio Parties"), on the other hand. MJC and the Cascio Parties are sometimes referred to collectively herein as the "Parties" and individually as a "Party."

In consideration of the mutual promises and covenants contained in this Agreement, the Parties agree as follows:

1. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Confidential



3.

Confidential

4.    <u>Releases</u>. The Parties recognize that they have had potential disputes in the past and, as part of this Agreement and in order to start on a "clean slate," the Parties agree it is in their mutual best interests to fully release each other from any and all claims that they may have against the other relating to any subject matter, known or unknown, from the beginning of time until the date of execution of this Agreement. Accordingly, the Parties hereby exchange the following releases:

a.    Except with respect to the obligations created by or arising out of this Agreement, the Cascio Parties, on behalf of themselves, and any of their companies, and each of the Cascio Parties' respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the Cascio Releasing Parties"), hereby fully and forever release and discharge MJC, Michael Jackson, the Estate of Michael J. Jackson, its Co-Executors, its individual beneficiaries (Michael Jackson's three children and Michael Jackson's mother), all companies owned in-whole or in-part by the Estate of Michael Jackson (including but not limited to all companies owned in-whole or in-part by Michael Jackson at the time of his death), personal representatives, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Estate Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

b.    Except with respect to the obligations created by or arising out of this Agreement, MJC and the Estate of Michael J. Jackson, on behalf of themselves, and any of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the MJC Releasing Parties"), hereby fully and forever release and discharge the Cascio Parties, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Cascio Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

c.    Nothing herein shall be construed to release any claims for breach of this Agreement.

d.    Nothing herein shall be construed as an admission of liability by any Party, and each Party expressly acknowledges and agrees that the other Party hereto has not admitted, and by execution or performance of this Agreement does not admit, any liability or obligation to the other Party, except for the obligations created by this Agreement.

Confidential

5.      Waiver of Civil Code Section 1542 and Similar Laws. The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those now known or believed to be true relating to the Action. Notwithstanding the existence of any such different or additional facts, the Parties hereby agree that this Agreement shall remain in full force and effect. The Parties hereby waive any and all rights which they have or may have under the provisions of Section 1542 of the California Civil Code as now worded and as thereafter amended, along with any other similar principles of law in other jurisdictions. Section 1542 of the California Civil Code reads as follows:

> "SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

The Parties hereby waive and relinquish any right and benefit which either Party or any other party may have under Section 1542 to the extent that such party may lawfully do so in connection with the subject matter hereof.

6.      Confidentiality and Non-Disparagement.

        a.      Each Party shall forever maintain the confidentiality of and shall not disclose this Agreement or anything relating thereto, including but not limited to the Agreement's existence, terms, subject matter, etc., along with information relating to the Cascio Life Story Rights, other than information relating thereto that is already publicly known at the time of execution of this Agreement (the "Confidential Information") to any third-party except insofar as disclosure is necessary to be made to the Party's respective accountants and attorneys (who will similarly keep the terms and conditions of this Agreement confidential and shall sign appropriate non-disclosure agreements). Should any Party be served with legal process that may be interpreted to require disclosure of this Agreement, that Party shall advise the other Parties reasonably in advance of any such disclosure in order to allow any of the other Parties to bring an appropriate motion for a protective order or other motion or action. Any action to enforce this Agreement must be brought pursuant to Paragraph 20 below.

        b.      The Parties agree to refrain from making any statement or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties, including the Cascio Releasing Parties and the Estate Released Parties, except as required by law or in connection with a legal or administrative proceeding.

        7.

Confidential



8.

Confidential



9.

10.

11.

12.

13.

14.

15.

16.

17.

18.

19.

Confidential

20.    <u>Governing Law, Mandatory Arbitration, Venue, And Jurisdiction</u>. This Agreement shall be governed and interpreted under the laws of the State of California without reference to choice of law rules. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including any allegations that either Party has violated any state or federal statutory or common law right, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Los Angeles County, California, before a retired judge or justice of a California or federal court. Without limiting the foregoing, the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court. Any such arbitration shall be filed with and administered by JAMS or Signature Resolution, at the claimant's choice, pursuant to their then current general arbitration rules. With respect to conflicts between the California Arbitration Act and the Federal Arbitration Act, the Federal Arbitration Act shall govern. If neither JAMS nor Signature Resolution (or successor entities) shall exist at the time of a demand for arbitration, the arbitration shall be filed with and administered by ADR Services pursuant to its applicable arbitration rules at the time of filing. If ADR Services does not exist at the time of the demand for arbitration, the arbitration shall be filed with AAA or any other arbitration service. The filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement, and the confidentiality provisions thereof, and shall entitle the non-breaching Party to all damages, including attorneys' fees expended in compelling arbitration, resulting therefrom. Each Party irrevocably submits to the exclusive jurisdiction and exclusive venue of the state and federal courts for the County of Los Angeles, State of California for any necessary court proceedings, such as petitions to confirm or vacate an arbitral award.

21.    <u>Attorneys' Fees</u>. The Parties agree that they shall bear their own costs, expenses and attorneys' fees relating to the negotiation of this Agreement. In any subsequent legal proceeding between the Parties that may arise out of or relate to this Agreement, the prevailing party shall be entitled to recover its costs, expenses, and reasonable attorneys' fees.

22.

23.

Confidential



24.

IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the dates set forth opposite his, her or its respective signatures.

EXECUTED by the Parties as follows:

By the Michael Jackson Company

_____     Dated: _____

By_____, an Authorized Signatory

By Frank Cascio

_____     Dated: _____

Frank Cascio

_____     Dated: _____

Confidential

████████████████████

———————————————————————                    Dated: _____
███████████████

███████████████

———————————————————————                    Dated: _____
███████████

██████████████

———————————————————————                    Dated: _____
███████

████████████

———————————————————————                    Dated: _____
██████

████████████████

———————————————————————                    Dated: _____
████████████

Confidential

<br>

_____    Dated: _____

<br>

<br>

_____    Dated: _____

<br>

_____    Dated: _____

Confidential



24.

IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the dates set forth opposite his, her or its respective signatures.

EXECUTED by the Parties as follows:


By the Michael Jackson Company

_____          Dated: _____

By _____, an Authorized Signatory



By Frank Cascio

_____          Dated: 01/10/2020
Frank Cascio


Dated: 12-22-19

_12/22/19_

MICHAEL McMAHON
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2457313
My Commission Expires 12/8/2022

Page 8 of 10

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los Angeles_ }

On _January 10, 2020_ before me, _Jentry Collins, Notary Public_,
    *Date*                  *Here Insert Name and Title of the Officer*

personally appeared _FRANK CASCIO_

                      *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

JENTRY COLLINS
Notary Public – California
Los Angeles County
Commission # 2215223
My Comm. Expires Sep 22, 2021

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
          *Signature of Notary Public*

*Place Notary Seal and/or Stamp Above*

——————— **OPTIONAL** ———————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee     ☑ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2018 National Notary Association

Confidential



Dated: _12/22/19_



Dated: 12/22/19



Dated: 12·22·19



Dated: _12/22/19_



Dated: 12/22/19

MICHAEL McMAHON
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2457313
My Commission Expires 12/8/2022

_12-22-19_

Page **9** of **10**

Confidential



Dated: 12/22/19



Dated: 12/22/19



Dated: 12/22/2019

MICHAEL McMAHON
NOTARY PUBLIC OF NEW JERSEY
Comm. # 2457313
My Commission Expires 12/8/2022

12/22/19

Page 10 of 10