**MARTIN D. SINGER (BAR NO. 78166)**
**ALLISON S. HART (BAR NO. 190409)**
**SINGER WEINSTEN WOLF & JONELIS LLP**
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906
Telephone:  (310) 556-3501
Facsimile:   (310) 556-3615
Email:  mdsinger@singerlaw.com
            ahart@singerlaw.com

**JONATHAN P. STEINSAPIR (BAR NO. 226281)**
**KATHERINE T. KLEINDIENST (BAR NO. 274423)**
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone:  (310) 566-9834
Facsimile:   (310) 556-3615
Email:  jsteinsapir@khiks.com
            kkleindienst@khiks.com

Attorneys for Defendants THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of | CASE NO. 2:26-cv-02129-HDV-AGR <br><br> Hon. Hernan D. Vera <br><br> **REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION** <br><br> Date:          June 4, 2026 <br> Time:          10:00 a.m. <br> Courtroom:  5B <br><br> Complaint filed:  February 27, 2026 |

1

the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,

Defendants.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

## I.      **<u>INTRODUCTION</u>**

This is a shakedown, not a sexual assault dispute.  The dispute in this case involves the validity of the Agreement -- a negotiated settlement, release, confidentiality, non-disparagement, and arbitration agreement. Plaintiffs'[1] own Opposition to Defendants'[2] Motion to Compel Arbitration confirms that this is a contractual dispute as to whether the Agreement is valid, enforceable, void, unconscionable, fraudulently induced, and binding on the parties and related defendants. Those are classic arbitrable issues. In their attempt to obfuscate the issues and avoid arbitration, Plaintiffs are trying to transform this contract-enforcement dispute into an Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") case notwithstanding that the EFAA is not applicable.

An arbitration is already pending against Plaintiffs claiming that the Plaintiffs engaged in civil extortion and breach of contract. In their effort to evade arbitration, Plaintiffs have concocted Opposition papers that are totally inconsistent with prior judicial admissions made by Plaintiffs and their attorneys.  Contrary to Plaintiffs' arguments in their Opposition, this is not a sexual assault dispute being forced into arbitration.  This is a post-settlement contractual dispute governed by an arbitration agreement executed after the alleged claims had already been asserted and resolved.

The sole issue to be determined by the Court is whether the parties' agreement to arbitrate pursuant to the Confidential Acquisition and Consulting Agreement dated January 10, 2020 (the "Agreement")[3] is binding and enforceable against Plaintiffs such that Plaintiffs should be ordered to arbitrate the claims alleged in this action.  The answer to that question is unequivocally *yes*.  In 2019, Plaintiffs, along with their brother Frank Cascio ("Frank"), asserted the exact same sexual

---

[1] Edward Cascio ("Edward"), Dominic Savini Cascio ("Dominic"), Marie-Nicole Porte ("Marie-Nicole") and Aldo Cascio ("Aldo") (collectively "Plaintiffs").

[2] The Michael Jackson Company, LLC ("MJC"), John Branca, individually and as Co-Administrator of the Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, John McClain, individually and as Co-Administrator of the Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, MJJ Productions, LLC, and MJJ Ventures, LLC (collectively the "MJC Defendants')

[3] A true and correct copy of the Agreement is attached to the Declaration of Martin D. Singer filed in support of the MJC Defendants' Motion for an Order Compelling Arbitration (Dkt. 22-1),¶ 2,  Ex. 1.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

misconduct claims that are the subject of the Complaint on file in this action.[4]  Those alleged claims were released pursuant to the Agreement, and Plaintiffs agreed to arbitrate future disputes with Defendants.  Dkt. 22-1, Ex. 1.

Despite this, Plaintiffs' Opposition asks the Court to do exactly what the parties' Agreement forbids: litigate in public the very dispute they agreed must be resolved in confidential arbitration.  Plaintiffs do not dispute that they signed the Agreement.  They do not dispute that the Agreement contains a broad arbitration clause covering disputes "arising out of or relating to" the Agreement, including disputes about its "validity," "enforceability," and "applicability."  They do not dispute that this lawsuit seeks to invalidate, avoid, and litigate around that Agreement.

Instead, Plaintiffs in bad faith invoke the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") as a litigation escape hatch.  However, ***the EFAA has no application to this case because the arbitration provision in the Agreement is not a predispute arbitration agreement***.  The EFAA applies only to sexual assault dispute claims involving pre-dispute arbitration agreements arising after the statute was enacted on March 3, 2022.[5]  Here, Plaintiffs' claims were first asserted in 2019, and the parties entered into the Agreement mandating arbitration years before the EFAA was enacted.  The fact that Plaintiffs have gratuitously included lurid allegations in their Complaint regarding the claims that were previously released in 2020 under the Agreement does not transform this case into a sexual assault dispute.

The allegations in the Complaint make perfectly clear what this dispute is about.  In June 2019, Plaintiffs asserted their alleged claims to attorneys representing the Estate of Michael Jackson (the "Estate").  Dkt. 1, ¶ 50.  Although representatives of the Estate did not believe that the claims had merit, they reluctantly agreed to enter into the Agreement to resolve Plaintiffs' alleged claims to save Jackson family members from further false allegations and protect projects important to Michael Jackson's legacy.  Dkt. 1, ¶ 51; Freedman Decl., ¶ 10.

---

[4] See accompanying Declaration of Bryan Freedman ("Freedman Decl."), ¶¶ 4-8.

[5] As such, the conduct giving rise to the alleged claims would have had to occur after March 3, 2022.  In this case, the conduct giving rise to Plaintiffs alleged claims occurred before Michael Jackson died in 2009.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

Initially Plaintiffs were offered $100,000 to resolve their alleged claims (Dkt. 1, ¶ 54), which they rejected.  After intense negotiations, the parties agreed that each of the Plaintiffs would receive five annual payments of $690,000 each (or $3,450,000 per Plaintiff).  Dkt. 1, ¶60; Freedman Decl., ¶¶ 12-15. The reason that Plaintiffs filed this action is because they now believe that they ought to have been paid more since they believe another individual allegedly received the equivalent of $55,000,000 (Dkt. 1, ¶ 62).  Plaintiffs believe that the millions of dollars previously paid to them was not enough.  Indeed, ***Plaintiffs do not even believe that $55 Million would be enough money to satisfy them, since they demanded the incredible sum of $213 Million in 2024***, otherwise they would repudiate their obligations under the Agreement.  Dkt. 22-1, ¶ 13. Plaintiffs are therefore seeking rescission of the Agreement (Ninth Claim for Relief) and Declaratory Relief that the Agreement is invalid and unenforceable  (Tenth Claim for Relief) so that they may pursue their specious claims asserted in the First through Fourth Claims for Relief (which claims were released under the Agreement) in an attempt to extract more money from the MJC Defendants.

The Court should reject Plaintiffs' attempt to transform a contract-enforcement dispute into an EFAA case. The MJC Defendants' Motion should be granted, this action ordered to arbitration, and the case stayed pending arbitration.

**II.     THE ALLEGED DISPUTE AROSE IN 2019.**

Plaintiffs' assertions that there was no dispute, sexual assault claim or demand for money by Plaintiffs in 2019 when the parties negotiated the Agreement are completely false.  This claim was manufactured for the sole purpose of evading Plaintiffs' obligation to arbitrate their dispute with the Defendants and has no basis in fact or reality.  The $3,450,000 paid to each of the Plaintiffs under the Agreement was not a gift; this was consideration for Plaintiffs' release of their alleged sexual misconduct claims, confidentiality and agreement to arbitrate future disputes arising between the parties.  The notion that representatives of the Estate sought out the Cascios in 2019 and gratuitously offered to pay them millions of dollars for no reason is patently absurd, and not at all what happened.

The true facts are that in 2019, it was Plaintiffs' brother Frank[6] who reached out to

---

[6] Frank was the named Respondent in the Petition to Compel Arbitration filed by MJC in the Los Angeles Superior Court which was granted by the Court in March 2026. Frank is also a Respondent

5

representatives of the Estate, not the other way around.  Freedman Decl., ¶ 5. Frank demanded a meeting with representatives of the Estate wearing a bathing suit to take place in the swimming pool area at the Sunset Marquis Hotel because he wanted to make sure he would not be recorded. *Id*. at ¶ 7. Frank informed the Estate's representatives that each of his siblings, *i.e*., the Plaintiffs, had been sexually abused by Michael Jackson.  Frank demanded that the Estate pay him and his siblings a large amount of money, otherwise, they threatened to "go public" with their alleged claims.  *Id*. at ¶ 8.  Representatives of the Estate met individually with each of the Plaintiffs, and each of the Plaintiffs separately confirmed that they had sexual abuse claims against the Estate that they intended to assert.  *Id*. at ¶ 10.

Although the representatives of the Estate did not believe that Plaintiffs' alleged claims had merit, they agreed to enter into the Agreement.  During the course of the negotiations, Frank and the Plaintiffs were offered $100,000 each to resolve their claims, but Plaintiffs negotiated to receive substantially more money, and eventually received $3,450,000 each paid in installments. Dkt. 22-1, Ex. 1; Freedman Decl., ¶ 13.  Plaintiffs freely admit these facts.  Dkt. 1, ¶¶ 54, 60; Dkts. 29-2 through 29-5 at ¶ 4.  Plaintiffs' statements that there was no claim, dispute or demand for money made by them in 2019 are absolutely untrue.

Plaintiffs' assertion that representatives of the Estate reached out to Plaintiffs unsolicited in April 2024, purportedly to offer them more money, is also completely false and fabricated.  It was Frank who contacted representatives of the Estate in April 2024, claiming that he and his family members did not receive enough money under the Agreement.  Freedman Decl., ¶ 18.

Thereafter, on September 23, 2024, Plaintiffs' current attorney, Howard King, sent a "Notice of Default" letter to the MJC Defendants in which he explicitly acknowledged that Plaintiffs had previously asserted sexual misconduct claims in 2019, stating that Plaintiffs had "revealed in 2019 that they had been molested by Michael Jackson for decades."  Supplemental Declaration of Martin D. Singer ("Supp. Singer Decl.), ¶ 2, Ex. 7.

---

in the pending arbitration filed by MJC.  Dkt. 22-1, ¶¶ 14, 16, 25,  and 29, Ex. 6.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

In his opposition to the Petition to Compel Arbitration, Frank admitted that the purpose of the Agreement was to resolve the alleged sexual assault claims:

> The specific object driving this provision (and the Agreement generally) was Petitioners' desire to prevent Respondents from disclosing their **sexual abuse as minors by Michael Jackson. The Agreement was executed solely to resolve all such claims**.

Supp. Singer Decl., ¶ 3, Ex. 8 at 7:9-13 (emphasis added).

Plaintiffs' own admissions in this case belie their assertions that no sexual abuse claim was asserted in 2019. Plaintiffs allege that they first discovered that they had claims arising from Michael Jackson's alleged abuse in 2019: "*Leaving Neverland* deprogramed Plaintiffs and forced them, for the first time, to become conscious of the reality: Jackson's abuse was wrong and had severely damaged them." Dkt. 1, ¶ 42. Plaintiffs admit that "**In or about June 2019, Plaintiffs told Freedman and Weitzman explicit details about Jackson's abuse**." *Id*. at ¶ 50 (emphasis added). Plaintiffs further allege that "Freedman and Weitzman promised to send the family a **settlement agreement** that would properly **compensate them for their 'pain and suffering'**" *Id*. at ¶ 51 (emphasis added).

## III.    THE EFAA HAS NO APPLICATION TO THIS CASE.

The EFAA, which went into effect on March 2, 2022 provides in pertinent part that "at the election of the person alleging conduct constituting a … sexual assault dispute, no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to ... the sexual harassment dispute." 9 U.S.C. § 402(a). Plaintiffs have wholly failed to meet their burden of establishing that the EFAA applies to this case. *Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, 564 (the party opposing arbitration bears burden of proving any defense). The EFAA does not apply to settlement agreements containing arbitration provisions, like the Agreement here, entered into after alleged sexual assault claims are made. Nor does it apply to claims arising before the EFAA was enacted in 2022.

Plaintiffs' argument that the EFAA precludes the Court from ordering arbitration in this case is wholly misplaced. This case is not a sexual assault dispute, nor does it involve a predispute

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

arbitration agreement.  The arbitration provision in the Agreement was entered into by the parties after Plaintiffs asserted their alleged sexual assault claims in 2019, and those alleged claims were released under the Agreement.

### A.    Plaintiffs Improperly Conflate Allegations of Sexual Assault With the Actual Dispute Before the Court.

The relevant dispute before this Court is not whether Michael Jackson committed sexual assault decades ago.  The dispute is whether Plaintiffs may avoid a broad arbitration agreement governing disputes arising from the 2019 Agreement, including disputes concerning its "enforcement, interpretation or validity" and the "scope, enforceability, or applicability" of the arbitration clause itself.  The EFAA does not eliminate arbitration whenever a complaint contains allegations of sexual misconduct somewhere in the factual background. Rather, the statute applies only to a "case" that "relates to the sexual assault dispute."  9 U.S.C. § 402(a). Plaintiffs improperly read the phrase "involving sexual assault" in isolation while ignoring the FAA's foundational requirement that arbitration agreements be enforced according to their terms.

The Ninth Circuit has repeatedly held that the FAA embodies a liberal federal policy favoring arbitration agreements.  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.* (2000) 207 F.3d 1126, 1131.  Courts must rigorously enforce arbitration agreements and resolve ambiguities in favor of arbitration.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25, 103 S.Ct. 927.

Nothing in the EFAA repeals those principles. Indeed, repeals by implication are strongly disfavored.  *Morton v. Mancari* (1974) 417 U.S. 535, 549, 94 S.Ct. 2474.  Plaintiffs' interpretation of the EFAA would effectively nullify arbitration clauses in any dispute tangentially connected to alleged sexual misconduct, no matter how remote or attenuated. That is not what Congress enacted.

### B.    Plaintiffs' Authorities Are Distinguishable Because Those Cases Involved Disputes Arising After The Parties Agreed to Arbitrate.

The cases relied upon by Plaintiffs are materially distinguishable because they involved disputes directly arising from sexual assault occurring after the parties agreed to arbitrate future disputes, not post-dispute contractual enforcement litigation concerning a negotiated settlement

8

agreement.

For example, in *Doe (J.K.) v. Celebrity Cruises, Inc.* (S.D. Fla. 2025) 792 F.Supp.3d 1371, the plaintiff's claims arose directly from an alleged onboard sexual assault during the course of her employment.  The plaintiff claimed that an arbitration agreement signed at the commencement of her employment before the alleged sexual assault occurred was barred by the EFAA. In contrast here, there is no dispute that the alleged sexual misconduct occurred decades before Plaintiffs first asserted those claims in 2019 and before the parties entered into the Agreement.  Similarly, in *Bulic v. Celebrity Cruises, Inc.* 2025 WL 1783865 (S.D. Fla. June 27, 2025), the arbitration agreement was entered into before the alleged sexual assault occurred.

In *Polen v. API Group Life Safety USA, LLC*, the plaintiff alleged that she was subject to adverse employment action after disclosing to her employer that she had been sexually assaulted (outside the workplace and unrelated to her employment), and her claims against her employer were for adverse employment action stemming directly from her reporting sexual assault and failure to accommodate her as a victim of domestic violence.  Again, like the plaintiffs in *Bulic* and *Doe*, the arbitration agreement was entered into by the parties before the alleged sexual assault occurred.

Here, Plaintiffs' First through Fourth Claims for Relief are all claims that were asserted in 2019, and released under the Agreement.  Plaintiffs' claims concerning breach of contract, fraud, rescission, breach of fiduciary duty, and declaratory relief arise from the negotiation, execution, enforceability, and alleged breach of that Agreement.  The alleged assaults are historical background facts. The operative dispute is contractual.  That distinction matters because courts applying the FAA consistently distinguish between disputes "arising out of" contractual obligations and disputes concerning unrelated underlying conduct.  See *Tracer Research Corp. v. National Environmental Services Co.* (9th Cir. 1994) 42 F.3d 1292, 1295 (scope of arbitration depends on nature of dispute and contractual nexus). Plaintiffs' approach would improperly erase that distinction entirely.

**C.**      **Plaintiffs' "Facts, Not Claims" Theory Impermissibly Expands the EFAA Beyond Its Text**.

Plaintiffs repeatedly argue that a "sexual assault dispute is formed by facts, not claims." That argument completely misses the mark.  Under Plaintiffs' logic, any arbitration clause in a settlement

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

agreement resolving alleged claims of sexual abuse would be unenforceable in a subsequent contractual dispute arising under the settlement agreement, exempting all such claims from arbitration.  Nothing in the EFAA supports such a sweeping result.

The Supreme Court has repeatedly cautioned against construing exceptions to the FAA expansively.  *Epic Systems Corp. v. Lewis* (2018) 584 U.S. 497, 138 S.Ct. 1612. Courts must enforce arbitration agreements according to their terms absent a clear congressional command to the contrary.  *Id*.  The EFAA contains no language indicating Congress intended to invalidate arbitration clauses governing all future contractual disputes merely because the parties once disputed allegations of sexual misconduct.

**D.      Plaintiffs' Timing Argument Fails Because the Relevant Dispute Existed Before the EFAA's Enactment**.

As discussed above, Plaintiffs' argument that no dispute existed between Plaintiffs and the MJC Defendants until 2024 is thoroughly contradicted by the evidence, including Plaintiffs' own judicial admissions.  Thus, Plaintiffs' timing argument is internally inconsistent.  Plaintiffs' claim that no dispute existed until 2024, when their counsel told counsel for the MJC Defendants that the Agreement was allegedly void and unconscionable, but the record shows the opposite.

Plaintiffs argue that no "dispute" arose until 2024 because the parties were allegedly "amicable" in 2019 and 2020. That argument is contradicted by both common sense and the record. The Agreement itself exists because the parties were resolving claims arising from Plaintiffs' alleged abuse allegations.  The evidence clearly establishes that MJC entered the Agreement to protect against anticipated claims and reputational harm arising from the allegations.  Freedman Decl., ¶ 10; Dkt. 22-1, ¶ 4.  A settlement agreement resolving threatened claims -- which is precisely what the Agreement is -- necessarily presupposes a dispute.

Here, the actual conflict existed no later than the 2019 negotiations that produced the Agreement.  Freedman Decl., ¶¶ 8-13.  Plaintiffs cannot revive a pre-EFAA dispute by repudiating the contract years later.  Courts have treated "dispute" as an actual conflict or controversy, not merely the filing date of a later complaint. *Doe v. Second Street Corp.*, *supra*, Cal.App.5th at 566.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

Under both Ninth Circuit and California law, a "dispute" exists when parties have adverse legal interests—not merely when litigation formally commences. *MedImmune, Inc. v. Genentech, Inc.* (2007) 549 U.S. 118, 126, 127 S.Ct. 764. Courts recognize that an actionable controversy arises once parties' legal rights and obligations become adverse, even if no lawsuit has yet been filed. *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80. Accordingly, Plaintiffs' contention that no "dispute" existed until formal litigation or an express threat of suit in 2024 ignores settled principles recognizing that disputes arise when parties negotiate to resolve asserted or anticipated legal claims and possess adverse legal interests.

Furthermore, under well-settled California law, Plaintiffs' alleged sexual abuse claims accrued at the time the alleged abuse occurred – decades before the enactment of EFAA. California law is crystal clear that a childhood sexual abuse claim accrues at the time of the abuse. *Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 910 ("A cause of action for childhood sexual molestation generally accrues at the time of the alleged molestation.").

For the same reason, the Agreement at issue in this case is not a "predispute arbitration agreement." All federal circuit courts considering the definition of "dispute"—as well as the vast majority of federal district courts—have concluded that a "dispute" arises under the EFAA when the parties have some sort of disagreement or adversarial relationship regarding a position the plaintiff has taken or a demand the plaintiff has made about the alleged sexual harassment conduct. *Famuyide v. Chipotle Mexican Grill, Inc.* (2024) 111 F.4th 895, 898. That is precisely what occurred when Plaintiffs and their brother Frank disclosed their alleged claims to representatives of the Estate in 2019, threatened to go public with their alleged claims and negotiated payments to Plaintiffs totaling $3,450,000 each under the Agreement. Freedman Decl., ¶¶ 8-13.

Whether "a dispute has arisen for purposes of the [EFAA] is a fact-specific inquiry in each case .... A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture. [Citation.] In other words, '[a] dispute cannot arise until both sides have expressed their disagreement, either through words or actions.' " *Kader v. Southern California Medical Center, Inc.* (2024) 99 Cal.App.5th 214, 222-223.

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

That definition matters. Plaintiffs signed the Agreement *after* the alleged claims had been raised, discussed, negotiated, released, and resolved.  The arbitration provision was part of the resolution of an existing dispute—not a clause imposed before any dispute existed. That places this case outside the EFAA.  Plaintiffs' contrary position would convert every settlement agreement containing an arbitration clause into a "predispute" arbitration agreement simply because a later dispute arises about the settlement's validity.  That reading would collapse the statutory distinction between predispute and post-dispute arbitration agreements and would undermine the enforceability of settlements.

## IV.    CONCLUSION

Plaintiffs signed a broad arbitration agreement as part of a negotiated resolution of existing claims. Years later, after receiving substantial benefits, they filed this public lawsuit to avoid the very forum they promised to use to resolve future disputes.  The EFAA does not apply because this is not a sexual assault dispute against Defendants, the relevant dispute arose before the EFAA, and the arbitration provision was agreed to after Plaintiffs asserted their alleged claims as part of the overall settlement agreement.  Accordingly, the Court should grant the motion, compel arbitration of all claims, and stay this action pending completion of arbitration.

DATE: May 21, 2026                         SINGER WEINSTEN WOLF & JONELIS LLP


                                           By:_____/s/ Martin D. Singer_____
                                              MARTIN D. SINGER
                                              ALLISON S. HART
                                              Attorneys for Defendants THE MICHAEL
                                              JACKSON COMPANY, a limited liability
                                              company; JOHN BRANCA, as Co-Administrator of
                                              THE ESTATE OF MICHAEL JACKSON, Co-
                                              Trustee of the MICHAEL JACKSON FAMILY
                                              TRUST, and individually; JOHN MCCLAIN, as
                                              Co-Administrator of THE ESTATE OF MICHAEL
                                              JACKSON, Co-Trustee of the MICHAEL
                                              JACKSON FAMILY TRUST, and individually;
                                              MJJ PRODUCTIONS, LLC, a limited liability
                                              company; and MJJ VENTURES, LLC

REPLY IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION