**MARTIN D. SINGER (BAR NO. 78166)**
**ALLISON S. HART (BAR NO. 190409)**
**SINGER WEINSTEN WOLF & JONELIS LLP**
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615
Email:  mdsinger@singerlaw.com
          ahart@singerlaw.com

**JONATHAN P. STEINSAPIR (BAR NO. 226281)**
**KATHERINE T. KLEINDIENST (BAR NO. 274423)**
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone:  (310) 566-9834
Facsimile:  (310) 556-3615
Email:  jsteinsapir@khiks.com
          kkleindienst@khiks.com

Attorneys for Defendants THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; and MJJ VENTURES, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF | CASE NO. 2:26-cv-02129-HDV-AGR<br><br>Hon. Hernan D. Vera<br><br>**SUPPLEMENTAL DECLARATION OF MARTIN D. SINGER IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION**<br><br>Date:       June 4, 2026<br>Time:       10:00 a.m.<br>Courtroom:  5B<br><br>Complaint filed:  February 27, 2026 |

1

MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,

Defendants.

## SUPPLEMENTAL DECLARATION OF MARTIN D. SINGER

I, Martin D. Singer, hereby declare:

1. I am an attorney at law licensed to practice before all of the Courts of the State of California and the Central District of California. I am a partner of Singer Weinsten Wolf & Jonelis LLP, counsel of record for Defendants The Michael Jackson Company, John Branca, individually and as Co-Administrator of The Estate of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, John McClain, individually and as Co-Administrator of The Estate Of Michael Jackson and Co-Trustee of the Michael Jackson Family Trust, MJJ Productions, LLC, and MJJ Ventures, LLC (collectively "Defendants" or the "MJC Parties"). I make this Declaration in support of Defendants' Motion for an Order Compelling Arbitration. I have personal and first-hand knowledge of the matters set forth in this declaration and, if called upon to testify, could and would provide testimony thereto under oath.

2. On or about September 23, 2024, the Cascio Parties' attorney, Howard King, sent a letter to the Estate of Michael Jackson and The Michael Jackson Company, which he labeled a Notice of Default of the Confidential Acquisition and

SUPP. DECL. OF MARTIN D. SINGER IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

Consulting Agreement ("Agreement") that had been entered into by The Michael Jackson Company, LLC with Plaintiffs and others, including Plaintiffs' brother, Frank Cascio. In that letter, Mr. King stated that his clients, the Cascios, had "**revealed in 2019 that they had been molested by Michael Jackson for decades**." A true and correct copy of that September 23, 2024 letter is attached hereto as Exhibit 7.

3. On or about October 6, 2025, Frank Cascio's then attorney, Mark Geragos, filed in the Los Angeles Superior Court a Memorandum of Points and Authorities in Opposition to Petition to Compel Arbitration and Request for Stay Pending Arbitration ("LASC Opp. to Petition to Compel"), a true and correct copy of which is attached hereto as Exhibit 8. In those opposition papers, attorney Geragos argued against compelling Arbitration. The Los Angeles Superior Court ultimately granted the Petition to Compel Arbitration. In the opposition papers, attorney Geragos made the judicial admission that *the Agreement had been entered into in 2019 to resolve the Cascios' sexual abuse claims*, stating as follows:

> "The specific object driving this provision (and the Agreement generally) was Petitioners' desire to prevent Respondents from disclosing **their sexual abuse** as minors by Michael Jackson. **The Agreement was executed solely to resolve all such claims.** The plain text of its confidentiality provision broadly prevents Respondents form disclosing 'anything relating' to the Agreement's 'existence, terms, [and] subject matter'—**namely, the abuse**." (Emph. added.) (LASC Opp. to Petition to Compel, 7:9-13.)

4. In addition, in the Complaint that the Cascios (other than Frank) filed in this USDC action on February 27, 2026 (after the Los Angeles Superior Court issued

SUPP. DECL. OF MARTIN D. SINGER IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

its January 14, 2026 tentative ruling to grant the Petition to Compel Arbitration), the Cascio Plaintiffs *specifically allege that they told attorneys for MJC and the Estate of their alleged abuse claims in 2019*. The USDC Complaint in this action alleges at Paragraph 50:

> "50.   In or about June 2019, Plaintiffs told Freedman and Weitzman explicit details about Jackson's abuse." (Emph. added.) (USDC Complaint, ¶50, 11:4-5.)

5.      The Cascios further allege in their USDC Complaint in this action that after they informed the Estate's attorneys Messrs. Freedman and Weitzman the alleged "explicit details about Jackson's abuse," the attorneys responded by promising to send a settlement agreement to compensate them for the "pain and suffering" they had claimed. It alleges at Paragraph 51:

> "51.   Freedman and Weitzman promised to send the family a settlement agreement that would properly **compensate them for their 'pain and suffering**.'" (Emph. added.) (USDC Complaint, ¶51, 11:10-11.)

6.      In addition to the foregoing judicial admissions to the effect that the Cascios had communicated their claims of alleged abuse to the Estate prior to entering into the Agreement, the Cascios further allege in their USDC Complaint in this action that when the film *Leaving Neverland* was released in 2019, the Cascios allegedly "became conscious" that they had been abused and that it "had severely damaged them." The USDC Complaint alleges at Paragraph 42:

SUPP. DECL. OF MARTIN D. SINGER IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

"42. *Leaving Neverland* deprogrammed Plaintiffs and forced them, for the first time, to become conscious of the reality: Jackson's abuse was wrong and had severely damaged them." (Emph. added.) (USDC Complaint, ¶42, 9:21-23.)

7.      Thus, even if hypothetically the Cascios' claims had not accrued at the time of the alleged molestation (which they did), their claims had certainly accrued at the latest by 2019 when they contend they were allegedly "deprogrammed" by *Leaving Neverland* and allegedly realized they had been "severely damaged," and communicated alleged "explicit details about" it to the Estate's attorneys to obtain compensation for their "pain and suffering."

8.      Additionally, the Cascios admit in their Complaint in this action that the Agreement had been *negotiated* rather than being presented to them on a "take it or leave it basis," as they specifically allege in Paragraph 54 that although the Estate had initially "offered Plaintiffs $100,000 each," they further allege in Paragraph 60 that the Agreement they signed provided for each of the Cascios to be paid "five annual payments of approximately $690,000," as follows:

"54.   The Jackson Estate eventually **offered Plaintiffs only $100,000 each** for the many years of abuse Jackson inflicted on them." (Emph. added.) (USDC Complaint, ¶54, 11:23-24.)

"60.   The Document **provided for the Estate to pay** each Plaintiff the wholly inadequate sum of **five annual payments of approximately $690,000** as compensation for the many years that Jackson abused each of them and the Jackson Organization enabled

and covered up the abuse." (Emph. added.) (USDC Complaint, ¶60, 13:3-6.)

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this __20__ day of May, 2026, at Los Angeles, California.

_____

MARTIN D. SINGER

SUPP. DECL. OF MARTIN D. SINGER IN SUPPORT OF MOTION FOR AN ORDER COMPELLING ARBITRATION

# EXHIBIT 7

# KING, HOLMES, PATERNO & SORIANO, LLP

ATTORNEYS AT LAW

HOWARD E. KING
KEITH T. HOLMES
PETER T. PATERNO
LAURIE L. SORIANO
STEPHEN D. ROTHSCHILD
LESLIE E. FRANK
SCOTT MCDOWELL
JOSEPH M. CARLONE
JACQUELINE SABEC
MICHAEL REXFORD
MARJORIE GARCIA
SAMUEL G. ROSEME
JACKSON S. TRUGMAN
JESSICA S. KIM
BRIGITTE L. ALANIS
TYLER G. GARBER
HAROLD C. PAPINEAU
CHRISTOPHER CHIANG
HEATHER L. PICKERELL
SAMUEL L. HIRSCH

OF COUNSEL
HENRY GRADSTEIN
TOR BRAHAM
JEFFREY P. SILBERMAN

1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE (310) 282-8989
FACSIMILE (310) 282-8903

SAN FRANCISCO OFFICE:
5 Ross Common
Ross, CA  94957
TELEPHONE: (415) 497-6364

WRITER'S DIRECT DIAL:
(310) 282-8999
hking@khpslaw.com

September 23, 2024

Howard Weitzman, Esq.
Kinsella Weitzman Iser Kump & Aldisert LLP
808 Wilshire Blvd, Third Floor
Santa Monica, CA 90401
Email: hweitzman@kwikalaw.com

[Addressee per terms of purported contract]

> ### *Re:    Notice of Default*

To the Estate of Michael Jackson and The Michael Jackson Company:

This shall constitute notice of default under a purported Acquisition and Consulting Agreement partially executed by members of the Cascio family on December 22, 2019 and January 10, 2020 (the "Hush Money Agreement"). Whether or not the Hush Money Agreement was ever signed by The Michael Jackson Company is an unanswered question, so this letter is not intended to be an acknowledgement that the Hush Money Agreement was ever fully executed or delivered or is even effective.

You have violated paragraph 6 of the agreement entitled Confidentiality and Non-Disparagement. Estate representative John Branca has revealed to multiple press outlets the existence of the Hush Money Agreement as well as the monetary terms of the Hush Money Agreement. Shockingly, Mr. Branca has been quoted in the press acknowledging the confidentiality restrictions before he blithely proceeded to violate them. He has also disparaged our clients by claiming our clients were lying when they revealed in 2019 that they had been molested by Michael Jackson for decades. Mr. Branca's statements are extremely damaging.

You are also in default under the terms of paragraph 3 for failure to make the required payments, including the final payment which was due on January 1, 2024.

8

Howard Weitzman, Esq.
September 23, 2024
Page 2

       Your material violation of the Hush Money Agreement relieves our clients of any further obligations thereunder, including, without limitation, any obligation to refrain from responding to your false statements.

       Nothing contained herein shall be deemed an admission of any fact or a waiver of any rights.

                          Very truly yours,

                          */s/ Howard E. King*

                          Howard E. King
                          of King, Holmes, Paterno & Soriano, LLP

HEK:dw

cc:    Marty Singer, Esq. (via email)

# EXHIBIT 8

# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK GERAGOS, SBN 108325
TINA GLANDIAN, SBN 251614
Attorneys for Respondent Frank Cascio

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| THE MICHAEL JACKSON COMPANY, LLC; JOHN G. BRANCA and JOHN MCCLAIN, individually and as Officers of THE MICHAEL JACKSON COMPANY, LLC and Co-Executors of the ESTATE OF MICHAEL JACKSON,<br><br>Petitioners,<br><br>v.<br><br>FRANK CASCIO and DOES 1-10, inclusive,<br><br>Respondents. | Case No: 25SMCP00385<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION**<br>[*Filed concurrently with Declaration of Mark Geragos and [Proposed] Order*]<br><br>Hearing: November 6, 2025<br>Time: 8:30 a.m.<br>Place: Dept. J |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Respondent Frank Cascio hereby submits the following memorandum of points and authorities in opposition to Petitioners' petition to compel arbitration and his request for a stay of the pending arbitration until the Court resolves the enforceability of the arbitration agreement.

Dated: October 6, 2025

Respectfully submitted,

GERAGOS & GERAGOS, APC

 /s/ *Mark Geragos*_____
MARK GERAGOS
*Attorneys for Respondent Frank Cascio*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

11

**TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………………..1

II.     FACTUAL BACKGROUND…………………………………………………………2

III.    LEGAL STANDARD…………………………………………………………5

IV.     ARGUMENT……………………………………………………………………5

    A.      The Petition to Compel Arbitration Is Procedurally Deficient…………………5

    B.      Petitioners Cannot Meet Their Burden to Prove a Valid Arbitration Agreement Exists………………………………………………………………..6

        1.      The Agreement's confidentiality provision is void because it is unlawful……………………………………………………………6

        2.      The Agreement's confidentiality provision is void because it is against public policy…………………………………………………………9

        3.      The confidentiality provision cannot be severed………………………12

        4.      The Agreement's confidentiality provision is void because it is unconscionable…………………………………………………………14

            a.      *The Agreement's confidentiality provision is procedurally unconscionable…………………………………………………..14*

            b.      *The Agreement's confidentiality provision is substantively unconscionable……………………………………………………16*

        5.      Respondents may rescind the Agreement………………………………17

    C.      Petitioners Have Materially Breached the Agreement's Confidentiality and Arbitration Provisions by Filing This Petition in Court………………………18

    D.      Petitioners Have Waived Their Right to Compel Arbitration by Acting Inconsistently with That Right and Invoking the Judicial System in Bad Faith.19

    E.      The Petition Violates Mediation Confidentiality Under Evidence Code §§ 1115-1129, Rendering Petitioners' Factual Allegations Inadmissible…………20

    F.      The Court Should Stay the Pending Arbitration…………………………………22

V.      CONCLUSION………………………………………………………………22

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

i

## <u>TABLE OF AUTHORITIES</u>

<u>State Cases</u>

*A & M Produce Co. v. FMC Corp.*
        (1982) 135 Cal.App.3d 473............................................................................ …21

*Ajamian v. CantorCO2e, L.P.*
        (2012) 203 Cal.App.4th 771………………………………………………………..20

*Armendariz v. Foundation Health Psychcare Servs., Inc.*
        (2000) 24 Cal.4th 83…………………………………….…………18-19

*Baltazar v. Forever 21, Inc.*
        (2016) 62 Cal.4th 1237……………………………………..………19-20

*Cariveau v. Halferty*
        (2000) 83 Cal.App.4th 126……………………………………………15-17

*Carmona v. Lincoln Millennium Car Wash, Inc.*
        (2014) 226 Cal.App.4th 74…………………………………………………………22

*Cassel v. Superior Court*
        (2011) 51 Cal.4th 113…………………………………………………………25

*Fair v. Bakhtiari*
        (2006) 40 Cal.4th 189…………………………………………………………10

*Farrar v. Direct Commerce, Inc.*
        (2017) 9 Cal.App.5th 1257…………………………………………………19

*Foxgate Homeowners' Assn. v. Bramalea California, Inc.*
        (2001) 26 Cal.4th 1…………………………………………………………26

*Homami v. Iranzadi*
        (1989) 211 Cal.App.3d 1104……………………………………………18

*In re Marriage of Goddard*
        (2004) 33 Cal.4th 49…………………………………………………………11

*Junho Hyon v. Selten* (2007)
        152 Cal.App.4th 463…………………………………………..……19

*Kallen v. Delug*
        (1984) 157 Cal.App.3d 940…………………………………..……11, 14

*Lee On v. Long*
        (1951) 37 Cal.2d 499………………………………………………………11

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*Mary R. v. B. & R. Corp.*
(1983) 149 Cal.App.3d 308…………………………………………..…14-15, 17

*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*
(1980) 105 Cal. App. 3d 946……………………………………………………24

*Mendez v. Sup. Ct.*
(1988) 206 Cal.App.3d 557………………………………………………….16

*OTO, L.L.C. v. Kho*
(2019) 8 Cal.5th 111……………………………………………………21

*People v. Jordan*
(1983) 142 Cal.App.3d 628……………………………………………...…16

*Pry Corp. of Am. v. Leach*
(1960) 177 Cal.App.2d 632………………………………………………..24

*Ramos v. Sup. Ct.*
(2018) 28 Cal.App.5th 1042…………………………………..……19-20, 21

*Robinson v. Woods*
(2008) 168 Cal.App.4th 1258……………………………………………11

*Rosenthal v. Great Western Fin. Securities Corp.*
(1996) 14 Cal.4th 394…………………………………………………10

*Severance v. Knight-Counihan Co.*
(1947) 29 Cal.2d 561…………………………………………………18

*Severson & Werson, P.C. v. Sepehry-Fard*
(2019) 37 Cal.App.5th 938………………………………………………11

*Sobremonte v. Sup. Ct.*
(1998) 61 Cal.App.4th 980………………………………………………24

*Stirlen v. Supercuts, Inc.*
(1997) 51 Cal.App.4th 1519……………………………………………….20

*Strauch v. Eyring*
(1994) 30 Cal.App.4th 181………………………………………………11

*Tiedje v. Aluminum Taper Milling Co.*
(1956) 46 Cal.2d 450…………………………………………………14

*West Contra Costa Unified School District v. Sup. Ct.*
(2024) 103 Cal.App.5th 1243…………………………….…………15-16

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

iii

**Federal Cases**

*Brown v. Dillard's, Inc.*
(9th Cir. 2005) 430 F.3d 1004…………………………………………………………...10

*Davis v. O'Melveny & Myers*
(9th Cir. 2007) 485 F.3d 1066…………………………………………………..…17

**Statutes**

Civ. Code, § 1441………………………………………………………….…11, 12, 14

Civ. Code, § 1550(3)…………………………………………………….…11, 12, 14

Civ. Code, § 1596……………………………………………………..……11, 12, 14

Civ. Code, § 1598…………………………………………………….…..………….17

Civ. Code, § 1607…………………………………………………….….…………11

Civ. Code, § 1608………………………………………………….…………14, 17, 19

Civ. Code, § 1667……………………………………….……11, 14, 16, 18

Civ. Code, § 1689(b)…………………………………………………..……22

Code Civ. Proc., § 1001……………………………………………………6, 12, 15

Code Civ. Proc., § 1002………………………………………………..…6, 12, 13, 15

Code Civ. Proc., § 1281.2………………………………………………….…10, 23

Code Civ. Proc., § 1290.2……………………………………………..………10-11

Code Civ. Proc., § 1290.4……………………………………………...…10-11

Code Civ. Proc., § 2017.220(a)……………………………………………..13, 16, 19

Evid. Code, § 1119(a)…………………………………………………….………25

Evid. Code, § 1125(a) …………………………………………………..………25-26

Pen. Code, § 288…………………………………………………….………15

**Miscellaneous**

Stacy M. Brown, *EXCLUSIVE: Michael Jackson's Thriving Estate Targeted in $213 Million 'Shakedown' Effort: Representatives on Latest Attempt: 'Enough is Enough,'* THE WASHINGTON INFORMER (Sept. 20, 2024)…………………………………..…13, 23

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Petition is not a good-faith effort to compel arbitration pursuant to a valid contract, but rather an attempt by Petitioners to shield themselves and the Estate of Michael Jackson from accountability and public scrutiny.  In doing so, Petitioners seek to weaponize an unlawful agreement to silence victims of childhood sexual abuse, smear and discredit Respondents, and preserve Michael Jackson's carefully protected legacy and the Estate's reputational and financial interests.

The purported settlement agreement Petitioners invoke is procedurally defective and substantively void and unenforceable as a matter of law and California public policy.  California has made clear that confidentiality and nondisclosure provisions designed to conceal sexual abuse are illegal and against public policy.  (*See* Code Civ. Proc., §§ 1001, 1002.)  The central purpose of the purported settlement agreement (the "Agreement") was to prevent Respondents from ever speaking publicly about their experiences with Michael Jackson—precisely the type of restriction the Legislature has deemed unlawful.  Because the object and consideration of the Agreement are illegal, the contract is void and unenforceable as a matter of law.

Even if the Agreement were otherwise valid (which it is not), Respondents are entitled to rescind it based on duress, undue influence, and the Estate's failure to afford them the opportunity to retain counsel or meaningfully consent. Petitioners have also materially breached the purported Agreement by filing this Petition in open court, disclosing confidential information in violation of its terms and mediation confidentiality, and disparaging Respondents.  Such conduct constitutes both breach and waiver of any alleged right to arbitrate.

Petitioners' accusation that Respondents are engaging in "civil extortion" is both baseless and revealing.  It is a transparent attempt to deflect attention from Petitioners' own misconduct and to recast legitimate efforts to seek accountability as wrongful.  Respondents have at all times acted responsibly and in good faith, endeavoring to address deeply serious matters through lawful and appropriate means.  Petitioners' decision to mischaracterize those efforts, and to weaponize inflammatory rhetoric in a public filing, demonstrates the very abuse of process that this

1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

16

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Court should not condone.

This proceeding is not about enforcing an arbitration agreement. It is about silencing victims, preserving commercial interests, and shielding the Estate from scrutiny. In fact, Petitioners openly acknowledge that there is already a pending arbitration involving the same parties and the same subject matter. The only plausible explanation for filing a duplicative petition while arbitration is already pending is to publicly defame Frank Cascio and his family using the litigation privilege as a sword rather than a shield,[1] while circumventing the contractual confidentiality provisions they claim to want to enforce. This Court should reject Petitioners' misuse of the judicial process as a stage for reputational attacks while they simultaneously demand the protections of a private arbitration clause contained in an unlawful agreement they themselves have disregarded and breached. The Petition must be denied, and this Court should declare the Agreement void and unenforceable in its entirety as contrary to California law and public policy.

## II.    FACTUAL BACKGROUND

From the early 1980s until at least 2009, Michael Jackson had intimate contact with the Cascio children— ██████████████████████. This abusive contact occurred over a span of decades and involved hundreds of instances. Each of the Cascio children were groomed, brainwashed, and severely manipulated to believe that each was uniquely "special" to Michael and that their relationship with him was exclusive. This deliberate emotional manipulation was designed to secure each family member's loyalty and ensure their silence, making them feel indebted to Michael and isolated from any source of protection or perspective. Through years of psychological conditioning, Michael cultivated dependence and fear in the young Cascios, making Respondents believe they had no choice but to comply and no safe way to break free. The effects of this conditioning persisted into adulthood, leaving Respondents with a deeply ingrained belief that speaking out would constitute betrayal—a dynamic the Estate has continued to exploit in its dealings with them.

---

[1] Numerous media outlets reported on the filing of the instant Petition before it even appeared on the public docket, suggesting that Petitioners and/or their attorneys or other representatives had leaked the Petition prior to or shortly after it was filed.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

2

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

17

In 2019, following the release of the documentary *Leaving Neverland* and the Cascios' subsequent disclosure of their shared experiences with each other for the first time, the Estate orchestrated a secret settlement process in an effort to silence them.  The psychological control and dependency instilled in the Cascios during their youth made them particularly vulnerable during their contact with the Estate's representatives.  Exploiting the same patterns of trust, fear, and conditioned loyalty that Michael Jackson had cultivated for decades, the Estate manipulated Respondents' emotional state to extract their silence through coercive and deceptive means.

The rushed process was intended to, and did, in fact, take advantage of the Cascio siblings' shock and trauma upon realizing this had happened to all of them, unbeknownst to each other and contrary to what they had been told.  During this vulnerable time and before the Cascios could fully process what had happened to them, the Estate exploited their confusion and vulnerability by pressuring them into an unfavorable agreement, misrepresenting both the nature of their rights and the consequences of refusal.  For instance, the Estate disguised the settlement as a "life rights" agreement.  This sham characterization was a last-minute device calculated to mislead Respondents, the probate court, and the Estate's beneficiaries, and constituted a bad faith misrepresentation designed to conceal the true nature of the deal and deprive them of knowledge of the settlement.  To further this scheme, the Estate caused the creation of various new corporations through which payments would be funneled to the five Cascio children.

The Estate also discouraged the Cascios from seeking independent legal advice, ensuring that the process was concluded swiftly and without meaningful opportunity for informed consent.  By structuring the negotiations in this manner, the Estate sought to obtain broad releases and waivers under coercive circumstances, effectively silencing the Cascios while shielding itself from accountability. These tactics were designed not to provide fair redress, but to suppress potential claims and protect the Estate's financial and reputational interests at the expense of the Cascios' rights and well-being.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

On or about December 22, 2019, a representative employed by attorneys for the Estate,[2] flew to New Jersey to meet with the Cascios, where he read a purported settlement agreement aloud to them. All of the Cascio siblings were manipulated and coerced into signing the Agreement at the time it was presented to them. Frank, who was out of town during the meeting in New Jersey, was presented with and signed the Agreement on or around January 10, 2020. At the time the Cascios entered into the Agreement, they were not provided the opportunity to consult with an attorney. When they asked about retaining their own counsel, the Estate advised them that the agreement would not get done if they did that. As a result, the Cascios did not understand much of the Agreement they signed, much less their legal rights. None of the Cascios were provided with a copy of the executed Agreement. They were later advised that the Agreement is invalid and unenforceable under state law as against public policy.[3]

Petitioners now seek to compel arbitration based on that Agreement, citing a broad arbitration clause and asserting that Respondents have threatened to file public legal claims regarding matters long known to Petitioners. However, the Agreement contains sweeping confidentiality and non-disparagement provisions which Petitioners have clearly violated. Paragraph 6 provides that "each Party shall forever maintain the confidentiality of… this Agreement or anything relating thereto," and that even the existence of the Agreement may not be disclosed publicly. (*See* Ex. 1 to Petition, at p. 4.)

Despite this, Petitioners filed this Petition in open court, making public extensive details about the purported confidential Agreement (including excerpts and summaries), the content of prior confidential negotiations and communications, alleged settlement demands, and alleged statements made during mediation or pre-litigation settlement discussions. Paragraph 20 of the Agreement provides that any "filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement," entitling the non-breaching party to damages and attorneys' fees. (*Id*., at p. 7.)

---

[2] In order to silence this representative, the RICO criminal enterprise, masquerading as the Estate, is now litigating against him as well.

[3] Non-disclosure agreements (NDAs) related to sexual assault are considered invalid in California as violative of public policy and due to laws like the "Silenced No More Act" (SB 331), which prohibit using NDAs to prevent disclosure of factual information regarding sexual assault and related matters.

4

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Moreover, the parties participated in a mediation at JAMS before the Honorable Dickran Tevrizian (Ret.) on May 15, 2025.  The matter did not resolve, but the mediation was never terminated, and settlement discussions continued through July 7, 2025—just one day before Petitioners filed this Petition.  The Petition includes references to the parties' confidential negotiations, alleged settlement demands, and statements made during the mediation process. Under California Evidence Code sections 1119 and 1125, such disclosures are absolutely inadmissible and cannot be considered by the Court. By tainting the public record with confidential mediation content, Petitioners have rendered their Petition procedurally improper and further demonstrated bad faith.

## III.    LEGAL STANDARD

Under California Code of Civil Procedure section 1281.2, arbitration can be compelled only if the court determines that a valid, enforceable agreement to arbitrate exists and that the claims at issue fall within the scope of the agreement. The petitioner bears the burden of proving the existence of a valid agreement.  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.)

Even if the petitioner proves the existence of a valid arbitration agreement, section 1281.2 provides that the court shall deny a petition to arbitrate if it determines that, *inter alia*, "(a) [t]he right to compel arbitration has been waived by the petitioner; or (b) [g]rounds exist for rescission of the agreement."  (Code Civ. Proc., § 1281.2.)  Courts have also held that a petition to compel arbitration must be denied if the petitioner has materially breached the arbitration agreement, *Brown v. Dillard's, Inc.* (9th Cir. 2005) 430 F.3d 1004, 1010 (applying California law), or the arbitration agreement is rendered unenforceable and inadmissible by public policy or statutory protections, including mediation confidentiality, *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 199-200.

## IV.    ARGUMENT

### A.    The Petition to Compel Arbitration Is Procedurally Deficient.

Section 1290.4 of the Code of Civil Procedure imposes mandatory requirements for petitions to compel arbitration: "A copy of the petition <u>and a written notice of the time and place of the hearing thereof</u> and any other papers upon which the petition is based shall be served in the manner provided in the arbitration agreement for the service of such petition and notice."  (Code Civ. Proc. § 1290.4(a)

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

(emphasis added).)  Petitioners' filing identified no hearing date or time, and the docket reflected none. Petitioners therefore failed to comply with section 1290.4.

Section 1290.2 confirms that such petitions "shall be heard in the same manner as motions," with no less than 10 days' notice of the hearing date. (Code Civ. Proc., § 1290.2; *see Strauch v. Eyring* (1994) 30 Cal.App.4th 181, 184.) Adequate notice is also a constitutional requirement: due process under both the United States and California Constitutions requires "reasonable notice of a judicial proceeding." *Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 946 (quoting *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 54).

Ordinarily, an improperly noticed petition is taken off calendar and must be re-noticed. *See Robinson v. Woods* (2008) 168 Cal.App.4th 1258, 1267-68.  However, to avoid delay and ensure the Court can resolve the issues now, Respondent took the initiative to secure a hearing date and provide proper notice.  Respondent does not seek dismissal on a technicality; rather, Petitioners' noncompliance underscores the haste and impropriety of this filing.  Because adequate notice has now been provided and there is no prejudice to Petitioners, Respondent respectfully requests that the Court reach the merits and deny the Petition for the independent substantive reasons set forth below.

**B.      Petitioners Cannot Meet Their Burden to Prove a Valid Arbitration Agreement Exists.**

**1.      The Agreement's confidentiality provision is void because it is unlawful.**

A contract must have a lawful object or it is void. (Civ. Code, §§ 1441, 1550, subd. (3), 1596.) A contract has an unlawful object if it is contrary to an express provision of law. (*Id.*, § 1667.) It is well-settled that "[a] contract may be illegal or in contravention of public policy either in its apparent substance and purpose . . . or in the consideration upon which it is based." (*Kallen v. Delug* (1984) 157 Cal.App.3d 940, 949 [internal citations omitted]; *see* Civ. Code, § 1607 [consideration for contract must be lawful].) Our courts have therefore held that "[n]o principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out[.]" (*Lee On v. Long* (1951) 37 Cal.2d 499, 502.)

Here,   the   Agreement's   confidentiality   provision   is   unlawful   because   it   violates   the   law.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

21

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

(Civ. Code, §§ 1441, 1550, subd. (3), 1596.) In relevant part, it reads:

> Each Party shall forever maintain the confidentiality of and shall not disclose this Agreement or anything relating thereto, including but not limited to the Agreement's existence, terms, subject matter, etc., along with information relating to the Cascio Life Story Rights, other than information relating thereto that is already publicly known at the time of execution of this Agreement (the "Confidential Information") to any third-party . . . . The Parties agree to refrain from making any statement or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties . . . except as required by law or in connection with a legal or administrative proceeding.

(Ex. 1 to Petition, at p. 4.)

The specific object driving this provision (and the Agreement generally) was Petitioners' desire to prevent Respondents from disclosing their sexual abuse as minors by Michael Jackson. The Agreement was executed solely to resolve all such claims. The plain text of its confidentiality provision broadly prevents Respondents from disclosing "anything relating" to the Agreement's "existence, terms, [and] subject matter"—namely, the abuse. (*Id.*) Put another way, Respondents were contractually required to conceal Michael Jackson's unlawful conduct.

However, Respondents have every right to publicly speak about their personal experiences with Michael Jackson and the Agreement's attempt to silence them—as they later learned when they retained independent counsel—violates Code of Civil Procedure section 1002. Section 1002 states that "a provision within a settlement agreement that prevents the disclosure of factual information related to the action is prohibited in any civil action the factual foundation for which establishes a cause of action for civil damages for . . . (1) An act that may be prosecuted as a felony[;] (2) An act of childhood sexual assault, as defined in Section 340.1[; or] (3) An act of sexual exploitation of a minor, as defined in Section 11165.1 of the Penal Code, or conduct prohibited with respect to a minor pursuant to Section 311.1, 311.5, or 311.6 of the Penal Code." (Code Civ. Proc., § 1002, subd. (a).)[4]

Subdivision (d) further provides that "a provision within a settlement agreement that prevents the disclosure of factual information related to the action described in subdivision (a) that is entered

---

[4] *See also* Code Civ. Proc., § 1001 (prohibiting confidentiality or nondisclosure provisions in the settlement of civil or administrative actions for sexual assault, sexual harassment, harassment or discrimination based on sex, and related torts).

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION
AND REQUEST FOR STAY OF PENDING ARBITRATION                                                        22

into on or after January 1, 2017, is void as a matter of law and against public policy." (Code Civ. Proc., § 1002, subd. (d).) In fact, the knowing inclusion of such a provision in a settlement agreement is grounds for disciplinary action against the attorney. (*See id.,* § 1002, subd. (e) ["An attorney's failure to comply with the requirements of this section by demanding that a provision be included in a settlement agreement that prevents the disclosure of factual information related to the action described in subdivision (a) . . . as a condition of settlement, or advising a client to sign an agreement that includes such a provision, may be grounds for professional discipline and the State Bar of California shall investigate and take appropriate action in any such case brought to its attention."].)

There is no controversy as to the relevant circumstances surrounding the Agreement, which are largely uncontested. The Agreement, which Petitioners concede was entered into after January 1, 2017, *see* Petition, ¶¶ 6, 7, 31, 39, includes a confidentiality provision as consideration which unlawful prohibits the disclosure of factual information related to repeated sexual assaults on Respondents in contravention of section 1002.[5] Furthermore, Petitioners acknowledge that silencing Respondents was the object of the Agreement. (*See* Petition, ¶ 8 ["Pursuant to the Agreement, Respondents and the other parties to the Agreement were paid over a period of five (5) years in order to prevent Michael's family, particularly his children, from having to be subjected to any further false allegations against Michael, and to protect future projects important to Michael's legacy."]; *see also* Stacy M. Brown, *EXCLUSIVE: Michael Jackson's Thriving Estate Targeted in $213 Million 'Shakedown' Effort: Representatives on Latest Attempt: 'Enough is Enough,'* THE WASHINGTON INFORMER (Sept. 20, 2024), https://www.washingtoninformer.com/michael-jackson-estate-lawsuit/ [John Branca conceding that the Agreement sought to silence Respondents to protect the Estate's commercial interests, noting "[t]here were a lot of things that would have gone south. We have a fiduciary responsibility to maximize the income of the estate, and our counsel insisted we sign the agreement. So, we did it with a mutual nondisclosure. And they didn't want it disclosed either because Michael's fans would have gone after these people."]); *id.* [Branca explaining that "[t]he estate's mutual nondisclosure agreement

---

[5] It should be noted that unlike Petitioners who were represented by counsel and presumably aware of the illegal nature of the Agreement at the time it was entered into, Respondents were not represented by counsel and were never even provided with a copy of the Agreement; thus, Respondents lacked any awareness of the illegality of the Agreement at the time it was entered.

8

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

with the associates was vital in keeping the matter private and allowing the estate to move forward with projects that that would ensure that future generations could share in Michael's musical and creative legacy and that could prove lucrative for Michael's three children, the King of Pop's heirs."].)

Since the object and consideration for the Agreement is clearly unlawful, the confidentiality provision (and the entire Agreement, as discussed in the proceeding sections of this Opposition) is void and unenforceable. (Civ. Code, §§ 1441, 1550, subd. (3), 1596; *see, e.g., Kallen, supra*, 157 Cal.App. 3d at 951 [refusing to enforce contract and explaining that "[s]ince the consideration . . . is unlawful, the entire contract is void"] [citing Civ. Code, § 1608].) Accordingly, this Court should find the confidentiality provision unenforceable as unlawful. The Petition should be denied on this basis.

### 2. The Agreement's confidentiality provision is void because it is against public policy.

In addition to being contrary to an express provision of the law, a contract is void if it is either contrary to (1) the policy of express law, even if not expressly prohibited (i.e., public policy), or (2) good morals. (Civ. Code, § 1667; *id*., at §§ 1441, 1550, subd. (3), 1596.) That is why "[a] contract made contrary to public policy . . . may not serve as the foundation of any action, either in law or in equity [citation], and the parties will be left, therefore, where they are found when they come to a court for relief." (*Tiedje v. Aluminum Taper Milling Co.* (1956) 46 Cal.2d 450, 453-54.)

Numerous courts have found confidentiality provisions that conceal unlawful conduct from regulators and the public—like the one at issue here—void as against public policy. For example, in *Mary R.*, medical authorities received a complaint that a minor was molested by her physician. (*Mary R. v. B. & R. Corp.* (1983) 149 Cal.App.3d 308, 313.) The minor told the medical authority investigator that there had been a civil lawsuit that was dismissed and sealed. (*Id*.) "In fact, the trial court, when dismissing the action by stipulation, had issued an order sealing the court records and ordered ***the parties, their agents or representatives never to discuss the case with anyone***." (*Id*. [emphasis added].) After the medical authority's motion to intervene was denied and it appealed, the Court of Appeal found the order for confidentiality "contrary to public policy" because it shielded the perpetrator from "governmental investigation designed to protect the public" and thereby "obstruct[ed] justice." (*Id*., at 316-17.)

9

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

The Court of Appeal reached a similar result in *Cariveau*. There, an investor and her insurance agent entered into a settlement agreement after the former determined the latter sold her investments in which he had a conflict of interest (thereby violating industry ethical rules). (*Cariveau v. Halferty* (2000) 83 Cal.App.4th 126, 128.) The agreement included a confidentiality clause prohibiting the investor from reporting the agent's misconduct. (*Id.*) The investor did so anyway, leading to the agent's disbarment. (*Id.*, at 129.) The agent's estate later sued the investor for breaching the confidentiality clause. (*Id.*) The Court of Appeal found the clause void as against public policy because confidentiality under the circumstances frustrated industry regulation and perpetuated improper conduct. (*Id.*, at 134-35.) Enforcing such a clause would have undermined public confidence in securities regulation and allowed wrongdoers to hide misconduct. (*Id.*)

Like the provisions at issue in *Mary R.* and *Cariveau*, the confidentiality provision here violates public policy because it shields, and thereby perpetuates, unlawful conduct. Specifically, like the confidentiality order in *Mary R.* prevented disclosure of a minor's sexual abuse by a physician, the Agreement's confidentiality provision prevents Respondents from speaking publicly about being sexually abused by Michael Jackson when they were children. Each instance of Respondents' abuse, like the *Mary R.* minor's abuse, was plainly unlawful. (*See*, *e.g.*, Pen. Code, § 288 [criminalizing lewd and lascivious acts with a child].)

Moreover, the same types of public policies that rendered the provisions at issue in *Mary R.* and *Cariveau* void apply equally here. The Legislature has long expressed the public's interest in protecting victims of childhood sexual abuse, ensuring perpetrators are accountable, and supporting the investigation of abuse. That is evident from its repeated removal of any barriers it deems prevent victims from coming forward.

The clearest articulations of those interests are Code of Civil Procedure sections 1001 and 1002, which bar settlement agreements which prevent victims from disclosing their abuse. (*See* Code Civ. Proc., §§ 1001, 1002.) Additionally, several years ago, the Legislature passed Assembly Bill 218 to extend the limitations period and eliminate Government Claims Act barriers. In *West Contra Costa*, the Court of Appeal found that AB 218 "serve[d] a public purpose" by "expand[ing] the ability of

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries," which "advance[d] the present and prospective happiness and prosperity to the people." (*West Contra Costa Unified School District v. Sup. Ct.* (2024) 103 Cal.App.5th 1243, 1265-67.)

Even before Assembly Bill 218, the Legislature recognized that the law should not suppress reporting abuse. For example, the Evidence Code section 1103 was enacted to make inadmissible reputation evidence and evidence of specific instances of the alleged victim's sexual conduct with others because "the fear of … detailed examination about a very personal aspect of an individual's life may deter victims from bringing criminal complaints" and to encourage them "to report and aid in the prosecution of rape." (*People v. Jordan* (1983) 142 Cal.App.3d 628, 632-33 [citing article on legislative history of statute].)

The same protections have more recently been extended to civil discovery. (*See* Code Civ. Proc., § 2017.220, subd. (a) [noticed motion required before discovery can be sought of plaintiff's sexual conduct with individuals other than alleged perpetrator]; *Mendez v. Sup. Ct.* (1988) 206 Cal.App.3d 557, 564-65 [quoting Legislature's express findings that discovery into "sexual aspects of complainant's lives … has the clear potential to discourage complaints and to annoy and harass litigants," creating a "Catch-22" that forces victims to choose between vindicating their rights and preserving their privacy].)

Taken together, these statutory provisions, among others, are indicative of a clear and consistent public policy in this State to remove any obstacle that might deter victims of childhood sexual abuse from seeking justice. The Legislature's systematic dismantling of any such barriers reflects a deliberate choice to prioritize victim protection and perpetrator accountability over competing interests.

Those competing interests include, as here, allowing private parties to contract away the right to disclose childhood sexual abuse (a felony offense) to anyone—including law enforcement and the public. This interest, as expressed in the confidentiality provision at issue, directly conflicts with the longstanding policy in this State discussed above. (*See* Civ. Code, § 1667 [contract unlawful if it violates public policies expressed in law, "though not expressly prohibited"].) By preventing victims

11

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

26

like Respondents from disclosing their abuse or the identities of perpetrators, this provision expressly silences victims and shields perpetrators from public accountability, allowing patterns of abuse to remain hidden and preventing other victims from coming forward with knowledge that they are not alone. In turn, confidentiality provisions like the one at issue here solely serve the perpetrator and his beneficiaries' interests in reputation management at the expense of the public's interest in transparency and protection of children.

This is precisely the type of impediment the Legislature has repeatedly rejected as against public policy. (*Mary R., supra,* 149 Cal.App.3d at 316-17 [confidentiality found void because it frustrated paramount public interests in victim protection]; *Cariveau, supra,* 83 Cal.App.4th at 134-35 [same].) Enforcing the confidentiality provision against Respondents would therefore undermine the Legislature's intent to ensure that victims can speak freely about their abuse and that perpetrators face public accountability. That intent cannot be circumvented through private agreement. Accordingly, this Court should find the confidentiality provision unenforceable as contrary to public policy. The Petition should be denied on this basis.

### 3.       The confidentiality provision cannot be severed.

"Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." (Civ. Code, § 1598.) Likewise, "a single consideration for both legal and illegal acts, making severance impossible," renders the entire contract void. (*Id*., § 1608.) Unlawfulness is considered inseparable from the bargain—so that the entire contract is void, not just the offending term—when, among other ways: (1) the unlawful object is the contract's sole or central purpose; or (2) the unlawful aspect cannot be severed without rewriting the agreement or fundamentally altering what the parties bargained for. (*Armendariz v. Foundation Health Psychcare Servs., Inc.* (2000) 24 Cal.4th 83, 124-25.) Both circumstances are present here.

As a threshold matter and as discussed above, the confidentiality provision in the Agreement is unlawful within the meaning of the Civil Code because it violates Code of Civil Procedure section 1002, which prohibits such provisions in settlement agreements, and public policy encouraging

12

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

27

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

disclosure of childhood sexual abuse. (Civ. Code, § 1667 [contract unlawful if it either violates express law, public policy expressed therein, or good morals].)

This unlawful object was the Agreement's sole or central purpose. Petitioners specifically bargained for silence about Respondent's sexual abuse in exchange for money so that they could evade accountability. (*See Homami v. Iranzadi* (1989) 211 Cal.App.3d 1104, 1111-13 [agreement requiring one party to help other conceal assets from IRS void as a whole because its central object was to evade the law].) The purported contemporaneous intellectual property transfer of Respondents' "life rights" to Petitioners is further proof of that central purpose. Apart from being cover for a sexual abuse settlement, the transfer gave Petitioners control over the narrative about the abuse. The transfer therefore exists solely to buttress the unlawful silencing of Respondents. (*See Severance v. Knight-Counihan Co.* (1947) 29 Cal.2d 561, 567 [option contract drafted solely to shield assets from creditors as part of a fraudulent scheme rendered the entire agreement void as its only object was illegal].) Put another way, the Agreement exists solely for that purpose such that it is void in its entirety. (*Armendariz, supra,* 24 Cal.4th at 124.)

Even if silencing Respondents is not the sole or central purpose of the Agreement (which it is), their unlawful silencing nonetheless cannot be severed from the remainder of the Agreement's terms without altering the parties' bargain. (*Id*.) Severance is only appropriate when the offending provision is "collateral" or incidental to the main purpose of the contract. (*Armendariz, supra,* 24 Cal.4th at 124.) The Agreement's confidentiality provision is the opposite of a collateral term—it is the essence of the transaction itself. Petitioners specifically bargained for silence about Michael Jackson's sexual abuse of Respondents in exchange for money. The confidentiality provision is not merely one term among many in a broader contractual relationship; it is the entire consideration flowing from Respondents to Petitioners. Without the promise of silence, Petitioners would have had no reason to pay anything. Removing the confidentiality provision does not leave a different contract—it leaves no contract at all. Petitioners' entire motivation for entering into the Agreement—silencing Respondents—would be eliminated altogether, leaving only a gratuitous payment with no corresponding obligation. A court cannot "rewrite" the parties' agreement by severing the very provision that constitutes the heart of their

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

13

bargain. (*See Ramos v. Sup. Ct.* (2018) 28 Cal.App.5th 1042 [severing unconscionable arbitration terms, including confidentiality provision, tainted agreement's central purpose such that striking them would fundamentally alter parties' agreement].)

Moreover, Petitioners provided a single consideration (i.e., money) for both this unlawful object and any purportedly lawful objects. "[A] single consideration" such as this one "for both legal and illegal acts, mak[es] severance impossible" and render the entire contract void. (Civ. Code, § 1608; *see Junho Hyon v. Selten* (2007) 152 Cal.App.4th 463, 468 [relying on section 1608, holding that contract for unlawful attorney referral services was void in its entirety because it provided a single consideration for both legal and illegal acts].) Accordingly, the Agreement's unlawful confidentiality provision is not severable from the remainder of the Agreement such that it is void in its entirety, including its arbitration provision. The Petition should be denied on this basis.

**4.    The Agreement's confidentiality provision is void because it is unconscionable.**

The doctrine of unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243 [internal quotations omitted].) There is both a procedural and substantive aspect of unconscionability; the former focuses on "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-sided" results. (*Armendariz, supra*, 24 Cal.4th at 114.) "Both procedural and substantive unconscionability must be present for the court to refuse to enforce a contract under the doctrine of unconscionability although they need not be present in the same degree. Essentially the court applies a sliding scale to the determination: [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1265 [internal quotations and citations omitted].)

**a.    The Agreement's confidentiality provision is procedurally unconscionable.**

"[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural

14

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." (*Baltazar*, *supra*, 62 Cal.4th at 1244 [internal quotations and citations omitted].)

The Agreement here is procedurally unconscionable because it is a contract of adhesion that Respondents executed due to "surprise [and] other sharp practices[.]" (*Id*.) The Agreement is a contract of adhesion because Petitioners were the sole authors of the Agreement and it was presented to Respondents on a "take it or leave it" basis. (*See, e.g., Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1534 [executive had no realistic ability to modify the terms of his employment contract where it was presented on a " 'take it or leave it basis' "].) Respondents had no meaningful opportunity to negotiate any terms; Petitioners drafted every provision and Respondents could either sign the document as written or receive nothing. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 796 ["The finding that the arbitration provision was part of a nonnegotiated employment agreement establishes, by itself, some degree of procedural unconscionability."].) Moreover, Respondents were required to decide whether they agreed to the terms of the Agreement on the very date it was presented to them. This artificial deadline eliminated any real opportunity for deliberation or consideration of alternatives. (*Ramos, supra,* 28 Cal.App.5th at 1064 ["Winston did not challenge Ramos's statement that she had no opportunity to negotiate or amend any term of that agreement, or her evidence that she was presented with the Partnership Agreement the day after she began work and was told to return it, signed, within 30 days. Thus, we conclude the arbitration provision is procedurally unconscionable."].)

Most critically, the surprise inherent in the Agreement renders it procedurally unconscionable. Petitioners engaged in deliberate tactics to prevent Respondents from understanding the true nature and effect of the Agreement. The Agreement is styled as a "life rights" agreement that makes no mention of Respondents' sexual abuse claims. By framing the document as concerning "life rights"—a term commonly associated with entertainment and biographical storytelling—Petitioners concealed the

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

15

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

30

true purpose and effect of the Agreement: the permanent waiver and release of Respondents' claims arising from Michael Jackson's sexual abuse. (*See A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 ["[s]urprise" for purpose of procedural unconscionability involves "the extent to which the supposedly agreed-upon terms of the bargain are hidden"].) Respondents therefore did not understand what they signed and required an attorney to make them aware that they were waiving all such rights. Yet, none of the Respondents were provided with an opportunity to consult with an attorney, and, in fact, were explicitly told that Petitioners would withdraw the Agreement if they sought legal counsel. Their lack of comprehension was consequently not the result of Respondents' failure to read the document, but rather Petitioners' deliberate obfuscation through misleading labels and the absence of clear language describing what Respondents were giving up. The Agreement is procedurally unconscionable under the circumstances.

> **b.** **The Agreement's confidentiality provision is substantively unconscionable.**

Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125, 129 [internal quotations and citations omitted].) Substantively "unconscionable terms impair the integrity of the bargaining process or otherwise contravene the public interest or public policy or attempt to impermissibly alter fundamental legal duties." (*Id.*, at 130 [internal quotations and citations omitted].)

Here, given the substantial procedural unconscionability present in the Agreement, "even a relatively low degree of substantive unconscionability may suffice to render the [A]greement unenforceable." (*Id.*) That unconscionability can be found in the Agreement's confidentiality clause, which as discussed above, "contravene[s] the public interest [and] public policy" because it prevents victims from disclosing their childhood sexual abuse to anyone, including law enforcement, and thereby perpetuates said conduct without accountability. (*Id.*; *see Ramos*, *supra*, 28 Cal.App.5th at 1065-67 [confidentiality clause in arbitration agreement requiring plaintiff to keep "all aspects of the arbitration" secret was substantively unconscionable because it prevented plaintiff from contacting or interviewing witnesses outside the formal discovery process and favored employer to detriment of

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

16

employees seeking to vindicate rights by discouraging them from filing cases]; *accord Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1078 [prohibition on disclosing content of pleadings or even existence of controversy was unconscionably one-sided because it stifled plaintiff's investigation and gave employer superior legal position].) The confidentiality provision is therefore substantive unconscionable such that the Agreement is void in its entirety.

### 5.    Respondents may rescind the Agreement.

An agreement to arbitrate, like any other contract, is subject to revocation. (*See Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74.) California Civil Code section 1689 sets forth the following grounds on which a party to a contract may rescind it:

(1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.
(3) If the consideration for the obligation of the rescinding party becomes entirely void from any cause.
(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.
(5) If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.
(6) If the public interest will be prejudiced by permitting the contract to stand.

(Civ. Code, § 1689, subd. (b).)

Here, Respondents may rescind the Agreement on a number of the foregoing enumerated grounds.  For instance, as noted above, the consent of Respondents was obtained through duress and undue influence, and without the benefit of legal counsel.  Furthermore, the consideration of confidentiality and non-disparagement has failed through no fault of Respondents.  Moreover, the Agreement is unlawful, and the parties are not equally at fault.  Finally, the public interest would be prejudiced by permitting the unlawful agreement to stand.  Therefore, to the extent the Court does not deem the Agreement void and unenforceable as a matter of law, which it should, the Agreement should be deemed rescinded.  At the very least, the Petition should be denied because Respondents

17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

32

have clearly demonstrated that "[g]rounds exist for rescission of the agreement."  (Code Civ. Proc., § 1281.2, subd. (b).)

### C.    Petitioners Have Materially Breached the Agreement's Confidentiality and Arbitration Provisions by Filing This Petition in Court.

Even if the Agreement were valid and enforceable (which it is not), Petitioners have materially breached it by filing the instant Petition.  The Agreement expressly provides that "filing of an action in a public court relating to this Agreement shall constitute a breach." (Ex. 1 to Petition, at p. 7.) The Petition is a public filing that includes references to the Agreement, quotes from it, discusses its alleged violations, and even attaches a redacted copy as an exhibit.  The Petition also discloses details of the parties' pre-litigation discussions, including the nature and content of proposed claims, communications between counsel, and internal Estate strategy—all barred from public disclosure under the Agreement's strict confidentiality and non-disparagement provisions.

This is not the first time Petitioners have breached these provisions.  Indeed, Petitioners have made repeated public statements referring to the Cascio claims in violation of the Agreement, including a September 2024 article quoting Mr. Branca characterizing the Cascios as attempting a "$213 million shakedown."  (*See, e.g.,* Stacy M. Brown, *EXCLUSIVE: Michael Jackson's Thriving Estate Targeted in $213 Million 'Shakedown' Effort: Representatives on Latest Attempt: 'Enough is Enough,'* THE WASHINGTON INFORMER (Sept. 20, 2024), https://www.washingtoninformer.com/michael-jackson-estate-lawsuit/ [quoting John Branca, the co-executor of the Estate, extensively throughout the article as the source of the allegations and blatantly breaching the Agreement by divulging, among other things, that "[t]he estate reached a private settlement with the group including $3 million for each of the five individuals.  Both sides mutually agreed to keep the agreement under wraps to where even its existence couldn't be divulged."].)

This breach by Petitioners is material: it is the very harm the Agreement sought to avoid.  Petitioners cannot simultaneously rely on the Agreement while flouting its central protective purpose.  The heart of Petitioners' argument is that Respondents have *threatened* to violate the Agreement's

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

18

confidentiality and dispute resolution provisions but it is actually Petitioners who have breached these material terms and placed them in the public record.

As the Ninth Circuit has recognized, "[a] bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" (*Brown, supra,* 430 F.3d at 1010 [quoting *Pry Corp. of Am. v. Leach* (1960) 177 Cal.App.2d 632, 639].)  In other words, a party cannot both seek to enforce an arbitration agreement and simultaneously disregard its terms. As the court held in *Brown*, "this is a contract rule of general application and is thus available to Brown as a defense against an attempted enforcement of the arbitration agreement. . . .   Under general principles of California contract law, Dillard's breach of its obligations under the arbitration agreement deprives it of the right to enforce that agreement."   (*Id*.) Similarly, here, the breach of the Agreement's confidentiality and arbitration provisions by Petitioners bars them from enforcing the arbitration clause. The Agreement expressly states that such a breach entitles the non-breaching party to full legal recourse.

### D.      Petitioners Have Waived Their Right to Compel Arbitration by Acting Inconsistently with That Right and Invoking the Judicial System in Bad Faith.

In addition to breaching the Agreement, Petitioners have also waived their right to compel arbitration by taking action inconsistent with that right and invoking the judicial system in bad faith.  It is well settled that "[a]rbitration is not a matter of absolute right" and the right to arbitration can be waived.  (*Sobremonte v. Sup. Ct.* (1998) 61 Cal.App.4th 980, 991.)  "A waiver of the right to arbitrate may properly be implied from any conduct which is inconsistent with the exercise of that right. . . Partial or piecemeal litigation of issues in dispute, through pretrial procedures, may in many instances justify a finding of waiver. . . ." (*McConnell v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.* (1980) 105 Cal. App. 3d 946, 951.)

By initiating judicial proceedings, filing this Petition in court while arbitration is pending, breaching confidentiality, and requesting that this Court, rather than the arbitrator, grant them their attorneys' fees pursuant to the Agreement, Petitioners have acted inconsistently with their claimed right to arbitrate and caused prejudice to Respondents. Their actions undermine the purpose

19

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

34

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

of arbitration—private and efficient dispute resolution—and have prejudiced Respondents by forcing them to publicly defend themselves in a forum they contractually agreed not to use.  Under the circumstances here, Petitioners' knowing conduct and their blatant violation of the confidentiality and arbitration provisions of the Agreement constitutes waiver of their right to arbitrate.

### E. The Petition Violates Mediation Confidentiality Under Evidence Code §§ 1115-1129, Rendering Petitioners' Factual Allegations Inadmissible.

California law provides strong confidentiality protections for mediation proceedings, meaning that communications and documents created during mediation are generally inadmissible in subsequent legal proceedings.  In relevant part, Evidence Code section 1119 provides that "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given."  (Evid. Code, § 1119(a).)  The statute further provides that "[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."  (*Id.*, § 1119, subd. (c).)

In *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 132-34, the California Supreme Court emphasized the absolute nature of the mediation confidentiality statutes (Evid. Code, § 1119 *et seq.*) and held that evidence of communications made during a mediation are inadmissible, even if it means that a legal malpractice plaintiff is unable to prove his or her claim.  As the Court explained in that case, the purpose of requiring mediation confidentiality is to promote a candid exchange so as to increase the likelihood of settlement.  (*Id.*, at 132-33.)

For purposes of confidentiality, a mediation terminates either when the parties enter into an agreement which fully resolves the dispute, the mediator or a party provides the mediation participants with a writing that states that the mediation is terminated, or as relevant here, "[f]or 10 calendar days, there is no communication between the mediator and any of the parties to the mediation relating to the dispute.  The mediator and the parties may shorten or extend this time by agreement."  Cal. Evid. Code § 1125(a)(5).

20

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION
AND REQUEST FOR STAY OF PENDING ARBITRATION

35

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

The parties participated in a mediation at JAMS before the Honorable Dickran Tevrizian (Ret.) on May 15, 2025.[6]  (*See* Declaration of Mark Geragos ("Geragos Decl."), ¶ 2.)  The case did not resolve at that time; however, the mediation was not terminated either by Judge Tevrizian or by any of the parties.  (*Id.*, ¶ 3.)  On the contrary, counsel for the parties continued their negotiations, both directly and through Judge Tevrizian.  (*Id.*, ¶ 4.)  In fact, on July 7, 2025—only one day before Petitioners filed the instant Petition—Mr. Singer called Respondents' counsel and, without disclosing the content of their communications, they continued settlement discussions.  (*Id.*, ¶ 5.)  Thus, at the time the Petition was filed, the mediation had not concluded for purposes of mediation confidentiality. (*See* Evid. Code, § 1125, subd. (a).)

This Petition is a transparent effort to taint the record with selective and prejudicial disclosures in violation of California Evidence Code section 1119 and the JAMS confidentiality agreement.  The Petition is replete with references to settlement discussions, including an alleged monetary demand that was specifically solicited by their attorney, Marty Singer, after he reviewed multiple victim declarations—that demand, and all related communications, are absolutely protected under the California Evidence Code.  Petitioners' reliance on these materials, and their public disclosure of such communications violates the mediation privilege and renders the Petition procedurally improper.  Not only is the Court prohibited from considering these alleged communications in ruling on the Petition, but the Court should consider this blatant violation of the sacred mediation confidentiality rules in denying the Petition.  (*See Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 17-18 [holding that the Court of Appeal erred in judicially creating a bad faith exception to confidentiality of mediation communications and of mediator's reports and findings, and if plaintiff elected to pursue the sanctions motion, no evidence of communications made during the mediation could be admitted or considered].)

[6] As a condition to participating in the mediation at JAMS, the parties executed JAMS' Mediation Confidentiality Agreement, which explains that "[t]he mediation process may continue after the date appearing below" and "[a]ccordingly, the parties waive the automatic termination provisions of section 1125(a)(5)."

21

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO., No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

### F.      The Court Should Stay the Pending Arbitration.

In addition to denying the Petition, this Court should issue an order staying the pending arbitration between the parties. The arbitration arises out of the same purported "Agreement" that Petitioners now seek to enforce and concerns the same subject matter and disputes at issue here.  (*See* Geragos Decl., ¶ 6.)  Proceeding with that arbitration while the validity and enforceability of the Agreement remain before this Court would be premature, inefficient, and contrary to principles of judicial economy.

A stay is warranted to preserve the Court's jurisdiction to determine the threshold issues of contract validity, arbitrability, and public policy. (*See* Code Civ. Proc., § 1281.2(c).)  Moreover, allowing the arbitration to proceed would risk inconsistent rulings and undermine the statutory protections afforded to Respondents under California law, including prohibitions against enforcing contracts that conceal sexual abuse or were obtained through duress, undue influence, or coercion. (*See id.*, ¶¶ 9-13.)

Accordingly, Respondents respectfully request that the Court stay the pending arbitration proceedings until the Court resolves the issues presented in this Opposition and determines the validity and enforceability of the purported Agreement.

## V.      CONCLUSION

Petitioners' public filing of this Petition—laden with confidential and inadmissible material, duplicative of a pending arbitration, and grounded in an agreement that is unlawful on its face—is a transparent effort to discredit, intimidate, and silence the Cascio family before the public in order to protect the Estate's commercial interests.

California law does not permit such misuse of private agreements to suppress survivors of childhood sexual abuse. The Agreement Petitioners invoke is void and unenforceable as a matter of law and public policy. Even if it were not, Respondents are entitled to rescission, and Petitioners' own breaches and waiver bar them from seeking to compel arbitration.

For all of these reasons, Respondent Frank Cascio respectfully requests that the Court:

1.  Deny the Petition to Compel Arbitration                in its entirety;

22

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION
AND REQUEST FOR STAY OF PENDING ARBITRATION

2. Declare the Agreement void and unenforceable as against California law and public policy; and

3. Stay the arbitration currently pending between the same parties at Signature Resolution until further order of this Court.

Dated:  October 6, 2025                                    Respectfully submitted,

GERAGOS & GERAGOS, APC


 /s/ *Mark Geragos*_____
MARK GERAGOS
TINA GLANDIAN
*Attorneys for Respondent*
*Frank Cascio*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

23

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION

38

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 644 South Figueroa Street Los Angeles, California 90017-3411.

On October 6, 2025, I served the foregoing document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITION TO COMPEL ARBITRATION AND REQUEST FOR STAY OF PENDING ARBITRATION** on the interested parties in this action addressed as follows:

MARTIN D. SINGER
ALLISON S. HART
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615
Email: mdsinger@lavelysinger.com
ahart@lavelysinger.com

JONATHAN P. STEINSAPIR
KATHERINE T. KLEINDIENST
**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Telephone: (310) 566-9834
Facsimile: (310) 556-3615
Email: jsteinsapir@khiks.com

Said service was made by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above AND,

☐    (U.S. MAIL)  Placing the envelope for collection and mailing on the date and at our business address following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

☑    (BY ELECTRONIC TRANSMISSION)  I caused the above-described document to be transmitted by electronic transmission.

Executed on October 6, 2025 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/s/ Tony Benitez
_____
TONY BENITEZ

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 1-
PROOF OF SERVICE