KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
JACKSON S. TRUGMAN, ESQ., STATE BAR NO. 295145
JTRUGMAN@KHPSLAW.COM
HEATHER L. PICKERELL, ESQ., STATE BAR NO. 346211
HPICKERELL@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiffs EDWARD JOSEPH CASCIO,
DOMINIC SAVINI CASCIO, MARIE-NICOLE PORTE
and ALDO CASCIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>        Plaintiffs,<br><br>    vs.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,<br><br>        Defendants. | CASE NO. 2:26-cv-02129 HDV (AGRx)<br><br>**SUPPLEMENTAL DECLARATION OF DOMINIC SAVINI CASCIO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO JACKSON PARTIES' MOTION FOR ORDER COMPELLING ARBITRATION AND REQUEST FOR STAY OF ARBITRATION PROCEEDINGS AND PLAINTIFFS' OPPOSITION TO HERMAN WEISBERG'S JOINDER**<br><br>Action Commenced:  February 27, 2026 |

6187.061/3254658.1                                        1                    Case No. 2:26-cv-02129 HDV (AGRx)
SUPPLEMENTAL DECLARATION OF DOMINIC SAVINI CASCIO

## SUPPLEMENTAL DECLARATION OF DOMINIC SAVINI CASCIO

I, DOMINIC SAVINI CASCIO, declare as follows:

1.    I am a party in the above-entitled action.  I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.  This declaration is submitted in support of Supplemental Declaration of Dominic Savini Cascio ISO Plaintiffs' Opposition to Jackson Parties' Motion Order Compelling Arbitration and Request for Stay of Arbitration Proceedings and Herman Weisberg's Joinder.

2.    Much of Bryan Freedman's testimony in his declaration is false.

3.    James and Eddie were represented by Mr. Freedman between 2014 to 2022 in a lawsuit involving Michael Jackson songs. The Estate was involved in that lawsuit and paid for James' and Eddie's attorney fees and costs. So, when Mr. Freedman spoke with my family in 2019 about Jackson's sexual abuse, we all believed he represented our interests. Mr. Freedman and the Estate were not adverse to us, and we had no reason to think otherwise.

4.    In 2019, Mr. Weitzman, Mr. Freedman, and Mr. Weisberg met with me in Mr. Weitzman's office. I was alone during the interview. I did not "indicate[] during those interviews that [I] had alleged sexual abuse claims [I] intended to assert." I described to Mr. Freedman and Mr. Weitzman how Jackson had sexually assaulted me when I was a child. That was it.

5.    We were never represented by Ken Katz or by any tax attorney.

6.    Mr. Freedman testifies that "[at] no time did [he] ever state that the Cascios should not hire an attorney." This is not true.

7.    In 2024, I was happy when Mr. Freedman asked to represent us. He had represented our whole family's interests (or so he led us to believe) and demonstrated great compassion to us in 2019. Also, he had represented James and Eddie for eight years.

8.    In April 2026, the Jackson Parties served an arbitration demand on me.

KING, HOLMES,
PATERNO &
SORIANO, LLP

6187.061/3254658.1                              2                  Case No. 2:26-cv-02129 HDV (AGRx)

SUPPLEMENTAL DECLARATION OF DOMINIC SAVINI CASCIO

The Jackson Parties attached as an exhibit to the arbitration demand a document that they purport to be the Agreement. **Exhibit 1** is a true and correct copy of the document. The document is not the same  document that Martin Singer attached as Exhibit 1 to his initial declaration in support of the Motion, which the Jackson Parties purport to be the Agreement in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___6/2/2026___, at ___Greer___, ___south carolina___.

DocuSigned by:

EE2A591486574F1...

Dominic Savini Cascio

# EXHIBIT 1

Confidential

## ACQUISITION AND CONSULTING AGREEMENT

This Agreement (the "Agreement") is made and entered into as of the date this Agreement is fully executed by the Parties (as defined below) (the "Effective Date") by and between The Michael Jackson Company, LLC ("MJC"), on the other hand, and Frank Cascio, Edward Cascio, Valeria Lissette Cascio (née Valeria Lissette Manchego), Dominic Cascio, Jr., Cindy Cascio (née Cindy Betancur), Aldo Cascio, Marie-Nicole Porte, James Porte, Dominic Cascio, Sr., and Connie Cascio (individually and collectively, the "Cascio Parties"), on the other hand. MJC and the Cascio Parties are sometimes referred to collectively herein as the "Parties" and individually as a "Party."

In consideration of the mutual promises and covenants contained in this Agreement, the Parties agree as follows:

1.      Life Story Rights. The Cascio Parties and MJC recognize that the Cascio family had a unique and close relationship to Michael Jackson such that Michael Jackson referred to them as a second family. As a result of this unique and close relationship, the Cascio Parties have unique knowledge about Michael Jackson that is not publicly known and that could be of great value if exploited. As consideration in addition to their other obligations under this Agreement, the Cascio Parties, and each of them, agree to grant to MJC, in perpetuity, the exclusive and irrevocable rights to the life story of each of the Cascio Parties as that life story relates to Michael Jackson in any way, and their interactions and relationships with Michael Jackson, or their knowledge of other Cascio Parties' interactions and relationships with Michael Jackson, from birth to the present (the "Cascio Life Story Rights"). The Cascio Life Story Rights include, but are not in any way limited to, all pictures, videos, audio recordings, or any other audio, visual or audiovisual works of the Cascios with Michael Jackson, Michael Jackson's family (including Michael Jackson's three children), and of the Cascios, along with all stories about the Cascio Parties' interactions with Michael Jackson that are not publicly known at the time of execution of this Agreement. The Cascio Life Story Rights include, but are not in any way limited to, all interactions with Michael Jackson relating to his use of prescription or other drugs, his use of alcohol, his mental and physical health, and any other private matters. The Cascio Parties agree not to disclose anything relating to the Cascio Life Story Rights to any other person or entity without the prior written and signed authorization of MJC, except for specific matters already publicly known by virtue of their public and widespread disclosure, prior to the Effective Date, by the press, by Michael Jackson, or by the Co-Executors of the Estate of Michael Jackson or those acting under their express, actual authority. Without limiting the foregoing, the Cascio Parties agree not to disparage Michael Jackson by portraying him in a negative light to any other person or entity regardless of whether such portrayal is based on matters that the Cascio Parties may believe to be true. The Cascio Parties recognize that the Cascio Life Story Rights are valuable, and their disclosure in violation of this Agreement, would constitute irreparable harm to MJC. For the avoidance of doubt, the Cascio Parties agree not to sell, license, or authorize anyone else to use or exploit the Cascio Life Story Rights and agree to use or exploit the Cascio Life Story Rights to anyone else.

2.      Consulting Obligations. As consideration in addition to their other obligations, promises, and services that the Cascio Parties agree to undertake incident to the terms and conditions of this Agreement, the Cascio Parties agree to consult with MJC at reasonable times

Confidential

upon MJC's request in order to cooperate in efforts to exploit the Cascio Life Story Rights and also to help MJC exploit other unique information the Cascio Parties have about Michael Jackson. The Cascio Parties, and each of them agree to make themselves available, so long as they are given reasonable advance notice, to consult with MJC when MJC needs such consulting services.

3.    Payment. As financial consideration for all of the obligations, promises, and services that the Cascio Parties agree to undertake incident to the terms and conditions of this Agreement, MJC shall cause the following payments to certain of the Cascio Parties as follows (the "Payments").

a.    On January 31, 2020, eight-hundred thousand dollars ($800,000) to Frank Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid to Frank Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

b.    On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Edward Cascio and Valeria Lissette Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid jointly to Edward Cascio and Valeria Lissette Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

c.    On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Dominic Cascio, Jr. and Cindy Cascio; and on January 1, 2021, and continuing for five additional calendar years every calendar year ending on January 1, 2025, MJC shall cause to be paid jointly to Dominic Cascio, Jr. and Cindy Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

d.    On January 31, 2020, eight-hundred thousand dollars ($800,000) to Aldo Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid to Aldo Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

e.    On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Marie-Nicole Porte and James Porte; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid jointly Marie-Nicole Porte and James Porte the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

f.    On January 31, 2020, MJC shall cause to be paid jointly to Dominic Cascio, Sr. and Connie Cascio the sum of Ten Thousand Dollars (USD $10,000).

g.    MJC shall cause the Payments to be paid to the Cascio Parties via wire transfer or check as directed by the Cascio Parties (the "Payment Direction"). The Cascio Parties shall provide MJC with executed W-9 forms prior to payments being made. The Cascio Parties shall notify MJC in writing if there is any change to the Payment Direction.

h.    If the date by which any of the Payments are to be delivered falls on a Saturday, Sunday or legal holiday in the State of California or the United States, then the date

10386-00001/675087.4                    Page **2** of **10**

Confidential

said payment shall be delivered shall be the next following day which is not a Saturday, Sunday or legal holiday in the State of California or the United States.

4.    Releases. The Parties recognize that they have had actual and potential disputes in the past and, as part of this Agreement and in order to start on a "clean slate," the Parties agree it is in their mutual best interests to fully release each other from any and all claims that they may have against the other relating to any subject matter, known or unknown, from the beginning of time until the date of execution of this Agreement. Accordingly, the Parties hereby exchange the following releases:

a.    Except with respect to the obligations created by or arising out of this Agreement, the Cascio Parties, on behalf of themselves, and any of their companies, and each of the Cascio Parties' respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the Cascio Releasing Parties"), hereby fully and forever release and discharge MJC, Michael Jackson, the Estate of Michael J. Jackson, its Co-Executors, its individual beneficiaries (Michael Jackson's three children and Michael Jackson's mother), all companies owned in-whole or in-part by the Estate of Michael Jackson (including but not limited to all companies owned in-whole or in-part by Michael Jackson at the time of his death), personal representatives, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Estate Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

b.    Except with respect to the obligations created by or arising out of this Agreement, MJC and the Estate of Michael J. Jackson, on behalf of themselves, and any of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the MJC Releasing Parties"), hereby fully and forever release and discharge the Cascio Parties, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Cascio Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

c.    Excluded from this Release are any claims and causes of action on behalf of or against either the Estate Released Parties and the Cascio Released Parties relating to the tracks *Breaking News*, *Monster*, *Keep Your Head Up*, and the other tracks the Estate of Michael Jackson acquired from certain of the Cascio Parties or entities under their control ("the Cascio Tracks"). The Cascio Tracks are the subject of litigation in Los Angeles Superior Court, Case

Confidential

No. BC 548468. This exclusion from the Releases shall be narrowly construed to apply *only* to claims and causes of action directly relating to the Cascio Tracks and shall not be construed to extend to any other claims, causes of action, damages and other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date of this Agreement.

      d.      Nothing herein shall be construed to release any claims for breach of this Agreement. Nothing herein shall be construed as an admission of liability by any Party, and each Party expressly acknowledges and agrees that the other Party hereto has not admitted, and by execution or performance of this Agreement does not admit, any liability or obligation to the other Party, except for the obligations created by this Agreement.

      5.      <u>Waiver of Civil Code Section 1542 and Similar Laws</u>. The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those now known or believed to be true relating to the Action. Notwithstanding the existence of any such different or additional facts, the Parties hereby agree that this Agreement shall remain in full force and effect. The Parties hereby waive any and all rights which they have or may have under the provisions of Section 1542 of the California Civil Code as now worded and as thereafter amended, along with any other similar principles of law in other jurisdictions. Section 1542 of the California Civil Code reads as follows:

> SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties hereby waive and relinquish any right and benefit which either Party or any other party may have under Section 1542 to the extent that such party may lawfully do so in connection with the subject matter hereof.

      6.      <u>Confidentiality and Non-Disparagement</u>.

      a.      Each Party shall forever maintain the confidentiality of and shall not disclose this Agreement or anything relating thereto, including but not limited to the Agreement's existence, terms, subject matter, etc., along with the Cascio Life Story Rights, information relating to the Cascio Life Story Rights, other than information relating thereto that is already publicly known at the time of execution of this Agreement (the "Confidential Information") to any third-party except insofar as disclosure is necessary to be made to the Party's respective accountants and attorneys (who will similarly keep the terms and conditions of this Agreement confidential and shall sign appropriate non-disclosure agreements). Should any Party be served with legal process that may be interpreted to require disclosure of this Agreement, that Party shall advise the other Parties immediately upon receipt of such process and in advance of any such disclosure in order to allow any of the other Parties to bring an appropriate motion for a protective order or other motion or action. Any action to enforce this

Confidential

Agreement must be brought pursuant to Paragraph 20 below. Nothing herein shall be construed to prevent disclosure required by law.

b. The Parties agree to refrain from making any statement or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties, including the Cascio Releasing Parties and the Estate Released Parties, except as required by law or in connection with a legal or administrative proceeding.

7. <u>Representations And Warranties</u>. The Cascio Parties, and each of them, hereby represent and warrant that they have not defamed, disparaged, embarrassed, or in any way harmed or impaired the reputation, goodwill, business interests or financial interests of Michael Jackson, his Estate, his companies (including MJC) and/or that they have not shared the Confidential Information except to individuals and/or entities the Cascio Parties have previously expressly advised MJC and its representatives. Each of the Cascio Parties shall provide MJC with a written list of persons or entities that they have disclosed Confidential Information at the time of execution of this Agreement or within seven days thereafter and each of the Cascio Parties shall sign his or her respective list (or a joint list by more than one person). It is understood by the Parties that these representations and warranties are essential to this Agreement, and if they are breached and/or turn out to be false in any material way, MJC shall have the right to cancel all future Payments and seek the return of all Payments made to the Cascio Parties, along with interest at the legal rate against the Cascio Parties.

8. <u>Cross-Default; A Breach by One Is a Breach by All</u>.

a. If any of the Cascio Parties: (i) discloses information relating to the Cascio Life Story Rights (except for information publicly known at the time of execution of this Agreement) to any person other than MJC and the Estate Released Parties as set out in Paragraph 1 without the express written consent of MJC or the Estate Released Parties; or (ii) breaches or causes the breach of the Confidentiality or Non-Disparagement provisions in Paragraph 6, then any outstanding obligation of MJC to make the Payments shall be void, and MJC shall be entitled to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below. Each Party understands the significance of the Confidential Information remaining confidential, and that this Paragraph is a material term of this Agreement. The Cascio Parties hereby agree that if any of the Confidential Information becomes public, then MJC shall have no further financial obligation to any of the Cascio Parties, including but not limited to the Payments, and that MJC shall no longer be bound by this Paragraph 20. Without limiting the foregoing, the Cascio Parties understand that a breach by one of them is a breach by all of them and a breach by one of them shall relieve MJC of any obligation to make further Payments and shall entitle MJC to to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below.

b. If any of the Cascio Parties' Representations and Warranties, as set out above in Paragraph 7, turn out to be false then any outstanding obligation of MJC to make the Payments shall be void, and MJC shall be entitled to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a

Confidential

proceeding set forth in Paragraph 20 below. Without limiting the foregoing, the Cascio Parties understand that a breach by one of them is a breach by all of them and a breach by one of them shall relieve MJC of any obligation to make further Payments and shall entitle MJC to to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below.

9.      Indemnification. The Cascio Parties, jointly and severally, hereby agree to indemnify and hold harmless MJC from and against any and all claims, demands, causes of action, costs, expenses, losses, damages, judgments, and reasonable outside attorneys' fees ("Claims") arising out of or resulting in any way from any breach by any of the Cascio Parties of the representations and warranties set forth in Paragraph 7 above.

10.      No Fiduciary Relationship. The Parties agree that this Agreement does not create any sort of joint venture or fiduciary relationship between the Cascio Parties and MJC.

11.      Representation By Counsel. All Parties expressly acknowledge that they either have been represented by counsel of their choosing or have had the opportunity to consult with independent counsel in connection with this Agreement. Accordingly, any principle requiring that ambiguities in a writing be construed against its drafter shall have no application to this Agreement.

12.      Authority to Bind. The undersigned signors for each of the Parties represent and warrant that they are duly authorized to execute this Agreement on behalf of their respective Parties and have full authority to act for their respective Parties in making all promises, representations, releases, and covenants set forth in this Agreement.

13.      No Waiver. No waiver of any breach of a covenant, condition or promise of this Agreement shall be deemed to be a waiver of any other or subsequent breach of a covenant, condition or promise, whether of like or different nature.

14.      Integration. This Agreement expresses the entire agreement of the Parties hereto. No recitals, promises, agreements, representations or warranties of any kind whatsoever have been made or have been relied upon by any Party hereto, except as specifically set forth in this Agreement. All prior discussions and negotiations regarding the subject matter of this Agreement have been and are merged and integrated into, and are superseded by, this Agreement.

15.      Written Modifications Only. This Agreement may not be modified in any way whatsoever, except in a writing signed by all Parties.

16.      Construction of Agreement. This Agreement shall be construed as a whole according to its fair meaning. The headings used in this Agreement are for reference only and shall not affect the construction of the Agreement.

17.      Jointly Drafted. This Agreement shall be deemed negotiated and drafted jointly by the Parties hereto, and shall not be strictly construed for or against any of the Parties hereto, and none of the Parties shall be deemed to be the sole drafter.

Confidential

18.    Severability. The Parties agree that in the event that any provision of this Agreement should be held by a court of competent jurisdiction to be void, voidable, illegal or unenforceable in any respect, the remaining provisions shall still remain in full force and effect.

19.    Governing Law, Mandatory Arbitration, Venue, And Jurisdiction. This Agreement shall be governed and interpreted under the laws of the State of California without reference to choice of law rules. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, and any other further disputes between the Parties relating to any subject matter other than the Cascio Tracks, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Los Angeles County, California, before a retired judge or justice of a California or Federal court. Without limiting the foregoing, the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court. Any such arbitration shall be filed with and administered by JAMS or Signature Resolution, at the claimant's choice, pursuant to their then current general arbitration rules. With respect to any procedural, substantive or other conflicts between the California Arbitration Act and the Federal Arbitration Act, the Federal Arbitration Act shall govern. If neither JAMS nor Signature Resolution (or successor entities) shall exist at the time of a demand for arbitration, the arbitration shall be filed with and administered by ADR Services pursuant to its applicable arbitration rules at the time of filing. If ADR Services does not exist at the time of the demand for arbitration, the arbitration shall be filed with AAA or any other arbitration service. The filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement, and the confidentiality provisions thereof, and shall entitle the non-breaching Party to all damages, including attorneys' fees expended in compelling arbitration, resulting therefrom. Each Party irrevocably submits to the exclusive jurisdiction and exclusive venue of the state and federal courts located in the County of Los Angeles, State of California for any necessary court proceedings, such as petitions to confirm or vacate an arbitral award.

20.    Attorneys' Fees. The Parties agree that they shall bear their own costs, expenses and attorneys' fees relating to the negotiation of this Agreement. In any subsequent legal proceeding between the Parties that may arise out of or relate to this Agreement, the prevailing party shall be entitled to recover its costs, expenses, and reasonable attorneys' fees.

21.    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties, along with their respective successors and assigns.

22.    Communications. All written communications that are required or otherwise may be given under this Agreement shall be deemed delivered and given upon personal delivery, facsimile transmittal or e-mail transmission thereof to the people and addresses shown below:

As to the Cascio Parties, address to:
Frank Cascio
Tel: (917) 816-6400
Email: fdcascio@gmail.com

As to MJC, address to:
Howard Weitzman
Kinsella Weitzman et al.
808 Wilshire Blvd, Third Floor
Santa Monica, CA 90401
Tel: (310) 566-9800
Email: hweitzman@kwikalaw.com

Confidential

From time to time, either Party may substitute a different representative than the representatives or attorneys listed above to receive any notice, request, instruction, or document to be provided under this Agreement. The Party shall advise the other Party in writing of a change in that Party's representative.

23.      Counterparts. This Agreement may be executed by way of one or more counterparts, each of which shall be deemed an original, but all of which together constitute one agreement among the parties hereto. Each of the Parties hereto agrees that a fax or email transmission of a signature on this document shall constitute a valid execution of this document, and shall be sufficient to formally bind, at the time of transmission, the party whose signature was transmitted by fax or email.

IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the dates set forth opposite his, her or its respective signatures.

EXECUTED by the Parties as follows:

By the Michael Jackson Company

_____          Dated: _____

By _____, an Authorized Signatory

By Frank Cascio

_____          Dated: _____
Frank Cascio

By Edward Cascio

_____          Dated: _____
Edward Cascio

Confidential

By Valeria Lissette Cascio

_____          Dated: _____
Valeria Lissette Cascio

By Dominic Cascio, Jr.

_____          Dated: _____
Dominic Cascio, Jr.

By Cindy Cascio

_____          Dated: _____
Cindy Cascio

By Aldo Cascio

_____          Dated: _____
Aldo Cascio

By Marie-Nicole Porte

_____          Dated: _____
Marie-Nicole Porte

10386-00001/675087.4                 Page **9** of **10**

Confidential

By James Porte

_____          Dated: _____
James Porte

By Dominic Cascio, Sr.

_____          Dated: _____
Dominic Cascio, Sr.

By Connie Cascio

_____          Dated: _____
Connie Cascio