Docusign Envelope ID: 7C4131BD-46B3-83D8-81CD-8502GEEF15CF

KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
JACKSON S. TRUGMAN, ESQ., STATE BAR NO. 295145
JTRUGMAN@KHPSLAW.COM
HEATHER L. PICKERELL, ESQ., STATE BAR NO. 346211
HPICKERELL@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiffs EDWARD JOSEPH CASCIO,
DOMINIC SAVINI CASCIO, MARIE-NICOLE PORTE
and ALDO CASCIO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, an individual; DOMINIC SAVINI CASCIO, an individual; MARIE-NICOLE PORTE, an individual; and ALDO CASCIO, an individual,<br><br>              Plaintiffs,<br><br>       vs.<br><br>THE MICHAEL JACKSON COMPANY, a limited liability company; JOHN BRANCA, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; JOHN MCCLAIN, as Co-Administrator of THE ESTATE OF MICHAEL JACKSON, Co-Trustee of the MICHAEL JACKSON FAMILY TRUST, and individually; MJJ PRODUCTIONS, LLC, a limited liability company; MJJ VENTURES, LLC, a limited liability company; HERMAN WEISBERG, an individual; and DOES 1 through 20, inclusive,<br><br>              Defendants. | CASE NO. 2:26-cv-02129 HDV (AGRx)<br><br>**SUPPLEMENTAL DECLARATION OF EDWARD JOSEPH CASCIO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO JACKSON PARTIES' MOTION FOR ORDER COMPELLING ARBITRATION AND REQUEST FOR STAY OF ARBITRATION PROCEEDINGS AND PLAINTIFFS' OPPOSITION TO HERMAN WEISBERG'S JOINDER**<br><br>Action Commenced:  February 27, 2026 |

KING, HOLMES,
PATERNO &
SORIANO, LLP

6187.061/3254653.1

1

Case No. 2:26-cv-02129 HDV (AGRx)

SUPPLEMENTAL DECLARATION OF EDWARD JOSEPH CASCIO

### DECLARATION OF EDWARD JOSEPH CASCIO

I, EDWARD JOSEPH CASCIO, declare as follows:

1. I am a party in the above-entitled action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto. This declaration is submitted in support of Plaintiffs' Opposition to the Motion for an Order Compelling Arbitration and Request for Stay of Arbitration Proceedings ("Motion") filed by Defendants, The Michael Jackson Company, MJJ Productions, LLC, MJJ Ventures, LLC, John Branca, and John McClain (together, "Jackson Parties") and Plaintiffs' Opposition to the Joinder filed by Herman Weisberg.

2. Bryan Freedman has supplied false testimony in his declaration.

3. In 2014, a Michael Jackson fan filed a class action lawsuit against me, Marie-Nicole's husband, James Porte, Mr. Branca, MJJ Productions Inc., and others. (LASC No. BC548468) ("Records Matter"). **Exhibit 1** is a true and correct copy of the complaint. The fan's claims were related to records that James and I had worked on that were released on a posthumous Michael Jackson album. The Estate agreed to pay for all our attorney fees and costs, and it recommended that we retain Mr. Freedman.

4. **Exhibit 2** is a true and correct copy of the retainer agreement that James and I entered into with Mr. Freedman in 2014. The retainer agreement confirms that the Estate agreed to pay all of our attorney fees and costs in connection with Mr. Freedman's representation of us in the Records Matter. I signed a conflict waiver as to James. I never signed a conflict waiver as to any of Defendants.

5. Mr. Freedman represented James and me in the Records Matter until 2022, when the parties jointly stipulated to dismiss the complaint. James and I were not adverse to any of Defendants or the Estate in the Records Matter. Mr. Weitzman also advocated for James' and my interests between 2014 and 2022 in connection

Docusign Envelope ID: 7C4131BD-46B3-83D8-81CD-8502GEEF15CF

with the Records Matter.

6. To be clear: I had an attorney-client relationship with Mr. Freedman from 2014 to 2022. So, when Mr. Freedman spoke with my family in 2019 about Jackson's sexual abuse, we all believed he represented our interests. We also had a long relationship with the Estate, including in the Records Matter. We had no reason to believe that Mr. Freedman or the Estate was adverse to us in 2019.

7. We were never represented by Ken Katz or by any tax attorney.

8. In 2019, Mr. Weitzman, Mr. Freedman, and Mr. Weisberg met with me in Mr. Weitzman's office. I was alone during the interview. I did not "indicate[] during those interviews that [I] had alleged sexual abuse claims [I] intended to assert." I described to Mr. Freedman and Mr. Weitzman how Jackson had sexually assaulted me. That was it.

9. Mr. Freedman testifies that "[at] no time did [he] ever state that the Cascios should not hire an attorney." This is not true.

10. In March 2024, Mr. Weisberg and Mr. Katz contacted me on behalf of Mr. Freedman. They relayed Mr. Freedman's message that the Estate would be willing to continue paying us. When Mr. Freedman asked to represent us, I was happy to work with him. He had been my attorney in the Records Matter for eight years. He had represented our whole family's interests (or so he led us to believe) and demonstrated great compassion to us in 2019.

11. In April 2026, the Jackson Parties served an arbitration demand on me. The Jackson Parties attached as an exhibit to the arbitration demand a document that they purport to be the Agreement. **Exhibit 3** is a true and correct copy of the document. The document is not the same document that Martin Singer attached as Exhibit 1 to his initial declaration in support of the Motion, which the Jackson Parties purport to be the Agreement in this case.

/ / /

/ / /

KING, HOLMES, PATERNO & SORIANO, LLP

6187.061/3254653.1

3

Case No. 2:26-cv-02129 HDV (AGRx)

SUPPLEMENTAL DECLARATION OF EDWARD JOSEPH CASCIO

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____6/2/2026_____, at ____Greenville____, ____SC____.

DocuSigned by:

_____
6D98BBEA071544A...

EDWARD JOSEPH CASCIO

# EXHIBIT 1

ORIGINAL
FILED
Superior Court Of California
County Of Los Angeles

JUN 12 2014

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Kristina Vargas

Ray E. Gallo (State Bar No. 158903)
Dominic R. Valerian (State Bar No. 240001)
GALLO LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901
Phone: 415-257-8800
Fax: 415-257-8844
rgallo@gallo-law.com
dvalerian@gallo-law.com

Attorneys for Plaintiff
VERA SEROVA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| VERA SEROVA, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>SONY MUSIC ENTERTAINMENT, a Delaware general partnership; JOHN BRANCA, as Co-Executor of the Estate of Michael J. Jackson; EDWARD JOSEPH CASCIO, an individual; JAMES VICTOR PORTE, an individual; MJJ PRODUCTIONS, INC., a California Corporation; ANGELIKSON PRODUCTIONS LLC, a New Jersey Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.  **BC548468**<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**<br>2. **VIOLATION OF THE UNFAIR COMPETITION LAW**<br>3. **FRAUD**<br><br>**DEMAND FOR JURY TRIAL**<br><br>D-310 Kenneth Freeman |

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

CIT/CASE: BC548468
LEA/DEF#:
RECEIPT #: CCHS174B6036
DATE PAID: 06/12/14 11:30 AM
PAYMENT: $435.00
RECEIVED:
CHECK:        $435.00
CASH:         $0.00
CHANGE:       $0.00
CARD:         $0.00
310

COMPLAINT

Plaintiff Vera Serova, for herself and on behalf of all others similarly situated, alleges as follows. The allegations herein that relate to Plaintiff's personal actions are made based on her personal knowledge. The balance are made on information and belief based on the investigation of counsel.

## THE PARTIES

1.      Plaintiff Vera Serova is an individual residing within the State of California, County of Santa Clara.

2.      On information and belief, Defendant Sony Music Entertainment ("Sony") is a Delaware general partnership with its principal place of business in the State of New York.

3.      On information and belief, Defendant John Branca, who is sued in his capacity as co-executor of the Estate of Michael J. Jackson, is an individual residing in the County of Los Angeles.

4.      On information and belief, Defendant Edward Joseph Cascio is an individual residing in the State of New Jersey.

5.      On information and belief, Defendant James Victor Porte is an individual residing in the State of Tennessee.

6.      On information and belief, Defendant MJJ Productions, Inc. is a California Corporation with its principal place of business in the County of Los Angeles.

7.      On information and belief, Defendant Angelikson Productions LLC ("Angelikson") is a New Jersey limited liability corporation with its principal place of business in New Jersey. On information and belief, Angelikson is Defendant Edward Cascio's production company.

8.      Plaintiff is unaware of the true identities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues such Defendants by these fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the injuries and damages alleged by Plaintiff. Plaintiff will seek leave of Court to amend this Complaint to show the true

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

1

COMPLAINT

names and capacities of the fictitiously named Defendants if and when they have been ascertained.

9.      On information and belief, each of the Defendants, including the DOE defendants, are the agents, servants, employees, partners, joint venturers, alter egos, aiders and abettors, and/or co-conspirators of one or more of the remaining Defendants, and in doing the acts alleged herein, were acting within the course and scope of said agency, employment, partnership, joint venture, and/or conspiracy, or otherwise aided and abetted the others in committing the wrongs alleged here.

## FACTUAL BACKGROUND

10.      *Michael* is the first posthumous compilation album of previously unreleased tracks by recording artist Michael Jackson. It was released in the United States on or about December 14, 2010, approximately eighteen months after Jackson's death on or about June 25, 2009. *Michael* was released by Sony through its Epic Records division in conjunction with the Estate of Michael J. Jackson. On information and belief, Defendant MJJ Productions, Inc. holds the copyright to *Michael*.

11.      Since *Michael's* inception, controversy has surrounded three of the album's ten songs: "Breaking News," "Monster," and "Keep Your Head Up." According to Defendants, Jackson recorded these songs in the basement recording studio of his friends, the Cascio family. These three songs are known as the Cascio tracks. Sony attributes authorship of the Cascio tracks to Jackson, Edward Cascio and James Porte. Defendants contend the lead vocals on the Cascio tracks were all performed by Jackson. On information and belief, Defendant MJJ Productions, Inc. co-produced "Keep Your Head Up" and Defendant Angelikson co-produced each of the Cascio tracks.

12.      Before *Michael's* release, several members of Jackson's family disputed the authenticity of the Cascio tracks, claiming that the lead vocals were not actually Jackson's.

13.      On November 5, 2010, Sony responded to the questions regarding the authenticity of the Cascio tracks by stating "We have complete confidence in the results

2

COMPLAINT

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

of our extensive research as well as the accounts of those who were in the studio with Michael that the vocals on the new album are his own."

14.    On November 11, 2010, attorney Howard Weitzman released a statement on behalf of Jackson's Estate addressing the questions that had arisen regarding the authenticity of the Cascio tracks. The statement identified the following people as having concluded that Jackson performed the lead vocals on the Cascio tracks:

a.    Jackson's former producers and engineers Bruce Swedien, Matt Forger, Stewart Brawley, Michael Prince, Dr. Freeze and Teddy Riley, who listened to raw a cappella version of the Cascio tracks together.

b.    Jackson's former musical director and piano player Greg Phillinganes.

c.    Jackson's former vocal director Dorian Holley.

d.    An unidentified forensic musicologist retained by Jackson's estate who listened to the Cascio tracks a capella and performed wave form analysis.

e.    An unidentified forensic musicologist retained by Sony.

f.    Two unidentified persons in the music industry who played crucial roles in Jackson's career.

15.    Following Weitzman's statement, record producer Cory Rooney and Jackson's nephew Taryll Jackson claimed they attended the listening session with the six former Jackson producers and engineers and that the majority of those mentioned did not agree that Jackson performed the lead vocals on the Cascio tracks.

16.    On December 6, 2014, Defendant Edward Joseph Cascio claimed that Jackson performed the lead vocals on the Cascio tracks on the Oprah Winfrey Show.

17.    On December 14, 2010, Sony released *Michael* in the United States through its label Epic Records. In marketing and defending *Michael*, Defendants expressly and implicitly represented that the lead vocals on all of the tracks on the album were performed by Michael Jackson. In addition to the statements referenced above, *Michael's* back cover states "This album contains 9 previously unreleased vocal tracks performed by Michael Jackson." (Plaintiff is informed and believes this statement refers

3

COMPLAINT

to nine previously unreleased vocal tracks instead of ten previously unreleased vocal tracks because one of the ten songs on the album—"The Way You Love Me"—was previously released in 2004.)

18.     In reliance on Defendants' claims that Jackson performed the lead vocals on the Cascio tracks, Plaintiff Vera Serova purchased *Michael* on compact disk in California between June 18 and 28, 2011.

19.     Ms. Serova later learned several facts suggesting that Michael Jackson did not perform the lead vocals on the Cascio tracks. When it became apparent that Defendants would not offer further explanation or evidence regarding the authenticity of the Cascio tracks, Serova engaged independent audio expert Doctor George Papcun to assess whether Jackson had actually performed the lead vocals on the Cascio tracks. After a comprehensive assessment, Dr. Papcun prepared a report and concluded that it was very likely that Michael Jackson did not sing the lead vocals on the Cascio tracks. Counsel subsequently had Dr. Papcun's expert report peer reviewed by another well-credentialed independent audio expert who concluded that Dr. Papcun's methodologies and conclusions were reasonable.

20.     Plaintiff is informed and believes that Michael Jackson did not actually perform the lead vocals on the songs "Breaking News," "Monster," and "Keep Your Head Up."

21.     In addition to selling "Breaking News," "Monster," and "Keep Your Head Up" as part of *Michael*, Sony also sold these songs individually through channels such as iTunes and as part of *The Ultimate Fan Extras Collection* released in 2013.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action under Code of Civil Procedure 382 and/or Civil Code Section 1781, on behalf of herself and a class of similarly-situated persons defined as:

> All persons who purchased "Breaking News," "Monster," and/or "Keep Your Head Up" (individually or as part of a

4

COMPLAINT

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

compilation) in California

23. Plaintiff also seeks certification of the following subclass (the "Three Year Subclass"):

> All persons who purchased "Breaking News," "Monster," and/or "Keep Your Head Up" (individually or as part of a compilation) in California within the three years immediately preceding the filing of this action

24. Upon information and belief, there are thousands of class and subclass members. Individual joinder of all members of the class and/or subclass would be impracticable.

25. Common questions of law or fact exist as to all members of the class and subclass. These questions predominate over the questions affecting only individual class members. These common legal and factual questions include, among others:

   a. Whether Michael Jackson performed the lead vocals on the songs "BreakingNews," "Monster," and "Keep Your Head Up";

   b. Whether Defendants' conduct violates the Consumers Legal Remedies Act;

   c. Whether Defendants' conduct violates the Unfair Competition Law;

   d. Whether class members lost money or property as a result of Defendants' unfair conduct;

   e. Whether class members are entitled to a refund, in whole or in part, of the purchase price of the album *Michael* and/or the songs "Breaking News," "Monster," and "Keep Your Head Up."

26. Plaintiff's claims are typical of the claims of the class and subclass. All members of the class and subclass, including Plaintiff, purchased one or more of the three songs, each of which was marketed with a material misrepresentation.

27. Plaintiff is an adequate class and subclass representative because her interests do not conflict with the interests of the other class or subclass members she seeks to represent. She has retained counsel competent and experienced in conducting

Gallo LLP<br>1299 Fourth St., Suite 505<br>San Rafael, CA 94901

5

COMPLAINT

consumer fraud class actions. Plaintiff and her counsel will adequately protect the interests of the class.

28.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts in that: the per class-member costs of prosecuting the action individually will vastly exceed the costs for prosecuting the case as a class action; class certification will obviate the necessity of a multiplicity of claims; it is desirable to concentrate the litigation of these claims in this forum; and unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions. Moreover, members of the class lack an adequate economic incentive to pay attorneys to prosecute their claims individually and individual claims are not sufficiently sizable to attract the interest of highly able and dedicated attorneys to prosecute such claims on a contingency basis.

29.    A class action presents far fewer management difficulties than litigating this case as hundreds or thousands of individual actions and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

30.    The class and subclass are ascertainable because they describe a set of common characteristics sufficient to allow members of that group to identify themselves as having a right to recover based on the descriptions.

### FIRST CAUSE OF ACTION—VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

**(On Behalf of the Three Year Subclass Only)**

**(Against Sony, John Branca, Edward Joseph Cascio, James Victor Porte, and MJJ Productions, Inc. Only)**

31.    Plaintiff incorporates paragraphs 1 through 30 above as though repeated here.

32.    The Defendants Sony, John Branca, Edward Joseph Cascio, James Victor

6

COMPLAINT

Porte, and MJJ Productions, Inc.have violated subsections 1, 2, 3, 5, 7, and 9 of Cal. Civ. Code § 1770 (a), the Consumers Legal Remedies Act (the "CLRA"), by falsely representing that Michael Jackson performed the songs "Breaking News," "Monster," and "Keep Your Head Up" in transactions that were intended to result in and that in fact resulted in the sale of goods or services to consumers.

33.    As a result of the Defendants' deceptive business practices, Plaintiff and other subclass members have suffered damage and lost money in that they paid for goods that were not as represented.

34.    Defendants' CLRA violations are ongoing and present a continuing threat that members of the public will be misled into purchasing the songs "Breaking News," "Monster," and/or "Keep Your Head Up."

### SECOND CAUSE OF ACTION—UNFAIR COMPETITION UNDER BUS. & PROF. CODE § 17200, *et seq.*

### (On Behalf of the Class)

35.    Plaintiff incorporates paragraphs 1 through 34 above as though repeated here.

36.    California Business and Professions Code § 17200, et seq., (the "Unfair Competition Law" or "UCL") prohibits unlawful, unfair, and fraudulent business practices.

37.    Defendants' above alleged actions violate the UCL's fraudulent prong because the actions were likely to, and did, deceive Plaintiff and the public and likely will mislead the public in the future.

38.    Defendants' above alleged actions violate the UCL's unlawful prong because the actions violate, without limitation California Civil Code § 1770, et seq. as alleged above;

39.    The Defendants' misrepresentations have caused Plaintiff and class members to lose money by causing them to purchase goods they would not have

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

7

COMPLAINT

otherwise purchased.

40.    Defendants' UCL violations are ongoing and present a continuing threat that members of the public will be misled into purchasing the songs "Breaking News," "Monster," and/or "Keep Your Head Up."

### THIRD CAUSE OF ACTION—FRAUD

**(On Behalf of the Three Year Subclass Only)**

**(Against Edward Cascio, James Porte, and Angelikson Only)**

41.    Plaintiff incorporates paragraphs 1 through 40 above as though repeated here.

42.    Defendants Cascio, Porte, and Angelikson knowingly and intentionally made numerous false and/or misleading representations of material fact with the intent to deceive and/or induce reliance by Plaintiff. Cascio, Porte, and Angelikson further failed to disclose and concealed facts that they were required to disclose to prevent other statements that they had made from being false and misleading. Plaintiff actually and reasonably relied on these misrepresentations, omissions, and concealments resulting in damages to Plaintiff.

43.    Defendants Cascio's, Porte's, and Angelikson's herein-alleged wrongful acts and omissions, and each of them, were knowingly, willfully, intentionally, maliciously, oppressively, and fraudulently undertaken with the express purpose and intention of defrauding Plaintiff, and each of them, all to the substantial financial benefit of Cascio, Porte, and Angelikson, and each of them, entitling Plaintiff to punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the class, prays for judgment as follows:

**On the First Cause of Action for Violation of the Consumers Legal Remedies**

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

8

Act:

1.    For permanent injunctive relief enjoining Defendants from representing that Michael Jackson performed "Breaking News," "Monster," and "Keep Your Head Up." or any of them, in transactions intended to result in the sale of goods or services to California consumers;

2.    For attorneys' fees and expenses pursuant to all applicable laws including without limitation, Code of Civil Procedure §1021.5, and California Civil Code § 1780 (e);

3.    For costs of suit; and

4.    For such other and further relief as the Court deems just and proper.

**On the Second Cause of Action for Unfair Competition:**

1.    For restitution and disgorgement of all money or property wrongfully obtained from Plaintiff and class members by Defendants by means of their herein-alleged unfair business practices;

2.    For attorneys' fees and expenses pursuant to all applicable laws including without limitation, Code of Civil Procedure §1021.5;

3.    For costs of suit; and

4.    For such other and further relief as the Court deems just and proper.

**On the Third Cause of Action for Fraud:**

1.    For restitution and disgorgement of all money or property wrongfully obtained from Plaintiff and Three Year Subclass members by Defendants Cascio, Porte, and Angelikson by means of their herein-alleged fraud;

2.    For damages;

3.    For punitive damages;

4.    For attorneys' fees and expenses pursuant to all applicable laws including without limitation, Code of Civil Procedure §1021.5;

5.    For costs of suit; and

6.    For such other and further relief as the Court deems just and proper.

9

COMPLAINT

Date: June 12, 2014

GALLO LLP

By: _____
Ray E. Gallo
Dominic Valerian
Attorneys for Plaintiff VERA SEROVA

Gallo LLP
1299 Fourth St., Suite 505
San Rafael, CA 94901

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial of all issues, claims, and causes of action so triable.

Date: June 12, 2014

GALLO LLP

By:

Ray E. Gallo
Dominic Valerian
Attorneys for Plaintiff VERA SEROVA

**Gallo LLP**
1299 Fourth St., Suite 505
San Rafael, CA 94901

DEMAND FOR JURY TRIAL

**ORIGINAL**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ray E. Gallo (SBN 158903) GALLO LLP 1299 Fourth St., Suite 505 San Rafael, CA 94901 TELEPHONE NO.: (415) 257-8800   FAX NO.: ATTORNEY FOR *(Name):* Vera Serova | **FILED** Superior Court Of California County Of Los Angeles **JUN 12 2014** Sherri R. Carter, Executive Officer/Clerk By _Kristina Vargas_, Deputy Kristina Vargas |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: 111 N. Hill St.
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse, Central District

CASE NAME:
Vera Serova v. Sony Music Entertainment, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [✓] Unlimited   [ ] Limited (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **BC548468** JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1.  Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[✓] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive

4. Number of causes of action *(specify):*  (3) Fraud, CLRA violation, UCL violation

5. This case [✓] is  [ ] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 12, 2014

Ray E. Gallo
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std 3.10 www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties In Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2



| SHORT TITLE: SEROVA V. SONY MUSIC | CASE NUMBER: BC548468 |

# CIVIL CASE COVER SHEET ADDENDUM AND
# STATEMENT OF LOCATION
# (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES    CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 2    ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|
| Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

*Left margin labels: Auto Tort; Other Personal Injury/ Property Damage/ Wrongful Death Tort*

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: SEROVA V. SONY MUSIC | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☑ A6013  Fraud (no contract) | ①, 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04
**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**
Local Rule 2.0
Page 2 of 4

| SHORT TITLE: SEROVA V. SONY MUSIC | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

# EXHIBIT 2

**FREEDMAN & TAITELMAN, LLP**
ATTORNEYS AT LAW

**1901 AVENUE OF THE STARS, SUITE 500**
**LOS ANGELES, CALIFORNIA  90067-6007**
TEL: (310) 201-0005
FAX: (310) 201-0045
**E-MAIL: bfreedman@ftllp.com**

BRYAN J. FREEDMAN

October 20, 2014

*Via Email: dsp@gtrb.com*

Affinity-Angelikson LLC, Angelikson Productions LLC,
Edward Cascio, James Porte
c/o Donald S. Passman, Esq.
Gang Tyre Ramer & Brown
132 S. Rodeo Dr.
Beverly Hills, CA 90212

Re:  Legal Representation of Affinity-Angelikson LLC, Angelikson Productions LLC, Edward Cascio, James Porte

Dear Messrs. Cascio and Porte:

1.    IDENTIFICATION OF PARTIES:

This Fee Agreement (the "Agreement") is entered into between Freedman & Taitelman, LLP ("F&T") and Affinity-Angelikson LLC, Angelikson Productions LLC, Edward Cascio, and James Porte (collectively, the "Client").  F&T and Client are collectively referred to herein as the "Parties."

2.    SERVICES TO BE PROVIDED:

The legal services to be provided by F&T to Client under this Agreement are as follows: litigation advice and defending the Client in the lawsuit entitled *Serova v. Sony Music et al.*, Los Angeles Superior Court Case No. BC 548648 (the "Action").

F&T will do its utmost to provide vigorous and efficient representation.  I will be primarily responsible for this matter and will utilize other attorneys and paralegals in the firm, as needed, in the best exercise of my professional judgment.  If at any time you have any questions or concerns, feel free to contact me.

October 20, 2014
Page 2

3.       LEGAL SERVICES SPECIFICALLY EXCLUDED:

Legal services that are not to be provided by F&T to Client under this Agreement specifically
include, but are not limited to, representing Client in any appeal of the Action.  If the Client
wishes that F&T provide any legal services not to be provided under this Agreement, a separate
written agreement between F&T and the Client will be required.

4.       RESPONSIBILITIES OF F&T AND CLIENT:

F&T will perform the legal services called for under this Agreement, keep Client informed of
progress and developments, and respond promptly to Client's inquiries and communications.
Client will be truthful and cooperative with F&T, keep F&T reasonably informed of
developments, including receipt of any notices or documents relating to this matter from others,
supply F&T with all information requested by F&T to the extent necessary for F&T to complete
the legal services being provided for in this Agreement and of any changes of Client's address,
telephone number, facsimile number and whereabouts.

5.       FEES:

The Estate of Michael Jackson has agreed to be responsible for payment of F&T's services in
connection with the Action.  F&T agrees to look only to the Estate of Michael Jackson for
payment of its fees and costs, as set forth in this Agreement.

It is understood and agreed that the Estate of Michael Jackson will have the right to receive
invoices for time billed and costs incurred in connection with the Action.  The Client
acknowledges and agrees that the Estate of Michael Jackson will receive invoices for time billed
in connection with the Action.

6.       COSTS AND OTHER FIRM CHARGES:

The Estate of Michael Jackson has agreed to pay F&T for all costs and other firm charges
incurred in performing the legal services.  Such costs may include the costs relating to legal
services, including filing fees, mileage, messenger costs, as well as firm charges such as in-house
photocopying and computer legal research.

7.       BILLING:

F&T's statements for fees, costs and other firm charges generally will be prepared and mailed
promptly following the month in which the services are rendered and costs are advanced.  F&T
agrees to look only to the Estate of Michael Jackson for payment of its fees and costs, as set forth
in this Agreement.

8.       SETTLEMENT:

With respect to any legal services relating to disputed matters, F&T will not settle Client's
dispute without the approval of Client, who will have the absolute right to accept or reject any

October 20, 2014
Page 3

proposed resolution of the disputed matter.  F&T will notify Client promptly of the terms of any proposed resolution or settlement offer received by F&T relating to the disputed matter.

9.    DISCLOSURE RE: MALPRACTICE INSURANCE:

F&T advises Client that it maintains professional errors and omissions insurance coverage applicable to the services to be rendered under this Agreement.

10.    ARBITRATION OF DISPUTES:

In the event of a dispute arising out of or relating to this Agreement, the Parties hereby agree to mediate the dispute in good faith. Thereafter, if the dispute remains unresolved, the Parties hereby agree to submit such dispute to binding arbitration, together with all demands and differences arising out of the Agreement. Such arbitration shall be conducted in accordance with the rules of the Judicial Arbitration and Mediation Services, Los Angeles. The arbitrator will be selected in accordance with the procedures of the Judicial Arbitration and Mediation Services, Los Angeles for arbitrator selection.

The arbitrator shall have discretion to order the losing party in the arbitration proceedings to reimburse the prevailing party for all costs and fees incurred in connection with the arbitration, including, without limitation, attorneys' fees and arbitrator fees. The Parties understand that by submitting their dispute to arbitration, they are waiving their right to a jury trial. The arbitrator shall exercise the powers conferred by law and by this Agreement subject to the following limitations: The arbitrator shall not have the power to grant any remedy that could not be granted by a California court applying California law.

The Parties acknowledge that such binding arbitration may deprive them of various rights that they otherwise might have in a legal action, including, without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

_____    _____    _____    _____    _____
(F&T's Initials)    (Client's Initials)    (Client's Initials)    (Client's Initials)    (Client's Initials)

*CLIENT'S INITIALS BELOW SIGNIFY ACKNOWLEDGMENT OF THE FOLLOWING EXPLANATION:*

Client acknowledges that F&T has explained to Client that such binding arbitration may deprive Client of various rights that Client otherwise might have in a legal action, including, without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

_____    _____    _____    _____
(Client's initials)    (Client's initials)    (Client's initials)    (Client's initials)

October 20, 2014
Page 4

11.    <u>CONFLICT WAIVER</u>:

You have asked F&T to represent all of you in the Action.  Because F&T's representation includes all of you, the California Rules of Professional Conduct require that we make certain disclosures to you and obtain your informed written consent to our representation of both of you.

At present, it does not appear that any conflict of interest exists that would prevent F&T from representing all of you.  All of you share the same goals with respect to your business interests.  Nevertheless, we cannot rule out the possibility that a conflict could arise during the course of the representation.  Since changing counsel in the midst of a civil action can be expensive and detrimental to your interests, it is important that you are comfortable with F&T representing all of you in light of these potential conflicts of interest.  In addition, F&T will need you to work with us through the course of our representation of you to keep these potential conflicts from becoming real.

One way in which a conflict of interest could occur is if F&T receives conflicting instructions from one of you.  For example, if one of you instructs F&T to take certain actions on your behalf which another of you instructs us not to take, and those instructions are in conflict, F&T would be placed in a position where we could not follow one of the instructions without violating the other.  That situation, if unresolved, could create a conflict of interest that would require at least one of you to seek a new attorney.

Another way in which a conflict could arise is if in the course of our representation, you develop inconsistent objectives.  For example, if one of you wants F&T to pursue a claim that could adversely affect the claims of the other, or even a claim directed at the other, a conflict of interest would exist.  In such a case where an actual conflict of interest exits, you understand and agree that you would be required to consent in a separate writing before F&T could continue to represent you, or we may elect to withdraw as your attorneys.  Moreover, if a conflict arises in the course of our representation, you agree that despite such conflict, F&T would be entitled to continue representing Affinity-Angelikson LLC without the consent of the other clients.  You hereby waive the right to contest or otherwise object to such representation.

We want to be certain that you are fully informed about these important issues and that you are comfortable proceeding with our representation of both of you.  Please do not hesitate to call if you have any questions about this letter.  In addition, if you are having any trouble understanding the nature of the disclosures in this letter, you may want to consult with a separate lawyer.

By signing this Agreement, you are agreeing to F&T's representation of all of you in light of the disclosures in this section.

| _____ | _____ | _____ | _____ |
| (Client's initials) | (Client's initials) | (Client's initials) | (Client's initials) |

October 20, 2014
Page 5

12.    RETURN OF CLIENT'S PAPERS AND PROPERTY:

It is F&T's policy to retain and ultimately destroy all files, documents, records, and writings relating to each engagement for which F&T has been retained without notifying its current or former clients of the destruction of these items.  Therefore, to be certain that F&T has not retained any material that Client may need or desire, F&T will return to Client all original documents Client has made available to F&T (together with copies of any other files, documents, records, and writings relating to this engagement) if Client instructs F&T in writing within 90 days after F&T mails to Client a letter informing Client that F&T has completed the services within the terms of this Agreement.

13.    DISCHARGE OF F&T:

Client may discharge F&T at any time by written notice effective when received by F&T. Unless specifically agreed by F&T and Client, F&T will provide no further services on Client's behalf after receipt of the notice.  If F&T is Client's attorney of record in any proceeding, Client will execute and return a substitution-of-attorney form immediately on its receipt from F&T.

14.    WITHDRAWAL OF ATTORNEY:

F&T may withdraw at any time as permitted under the Rules of Professional Conduct of the State Bar of California.  The circumstances under which the Rules permit such withdrawal include, but are not limited to, the following: (a) the Client's consent, (b) the Client's conduct renders it unreasonably difficult for F&T to carry out the employment effectively, or (c) the Estate of Michael Jackson fails to pay attorneys' fees as required by its agreement with the firm.

15.    MISCELLANEOUS:

We will keep Client reasonably informed as to the status of the matter and as to the courses of action which F&T is following or that are recommended.

F&T has made no promises or guarantees to Client concerning the outcome of the matter, and nothing in this letter shall be construed as such a promise or guarantee.  Any comments F&T may make or has made regarding the eventual outcome are expressions of opinion only.

16.    EFFECTIVE DATE OF AGREEMENT:

The effective date of this Agreement will be August 14, 2014.

[SIGNATURES ON THE FOLLOWING PAGE]

October 20, 2014
Page 6


Dated: _____                    FREEDMAN & TAITELMAN, LLP

                                        By: _____
                                            Bryan J. Freedman

Dated: 11/15/14                         By: _____
                                            Edward Cascio _____

Dated: 11/13/14                         By: _____
                                            James Porte


Dated: _____                    AFFINITY-ANGELIKSON LLC

                                        By:_____

                                        Its: _____


Dated: 11/15/14                         ANGELIKSON PRODUCTIONS LLC

                                        By:_____

                                        Its: Owner _____

# EXHIBIT 3

Confidential

## ACQUISITION AND CONSULTING AGREEMENT

This Agreement (the "Agreement") is made and entered into as of the date this Agreement is fully executed by the Parties (as defined below) (the "Effective Date") by and between The Michael Jackson Company, LLC ("MJC"), on the other hand, and Frank Cascio, Edward Cascio, Valeria Lissette Cascio (née Valeria Lissette Manchego), Dominic Cascio, Jr., Cindy Cascio (née Cindy Betancur), Aldo Cascio, Marie-Nicole Porte, James Porte, Dominic Cascio, Sr., and Connie Cascio (individually and collectively, the "Cascio Parties"), on the other hand. MJC and the Cascio Parties are sometimes referred to collectively herein as the "Parties" and individually as a "Party."

In consideration of the mutual promises and covenants contained in this Agreement, the Parties agree as follows:

1.      Life Story Rights. The Cascio Parties and MJC recognize that the Cascio family had a unique and close relationship to Michael Jackson such that Michael Jackson referred to them as a second family. As a result of this unique and close relationship, the Cascio Parties have unique knowledge about Michael Jackson that is not publicly known and that could be of great value if exploited. As consideration in addition to their other obligations under this Agreement, the Cascio Parties, and each of them, agree to grant to MJC, in perpetuity, the exclusive and irrevocable rights to the life story of each of the Cascio Parties as that life story relates to Michael Jackson in any way, and their interactions and relationships with Michael Jackson, or their knowledge of other Cascio Parties' interactions and relationships with Michael Jackson, from birth to the present (the "Cascio Life Story Rights"). The Cascio Life Story Rights include, but are not in any way limited to, all pictures, videos, audio recordings, or any other audio, visual or audiovisual works of the Cascios with Michael Jackson, Michael Jackson's family (including Michael Jackson's three children), and of the Cascios, along with all stories about the Cascio Parties' interactions with Michael Jackson that are not publicly known at the time of execution of this Agreement. The Cascio Life Story Rights include, but are not in any way limited to, all interactions with Michael Jackson relating to his use of prescription or other drugs, his use of alcohol, his mental and physical health, and any other private matters. The Cascio Parties agree not to disclose anything relating to the Cascio Life Story Rights to any other person or entity without the prior written and signed authorization of MJC, except for specific matters already publicly known by virtue of their public and widespread disclosure, prior to the Effective Date, by the press, by Michael Jackson, or by the Co-Executors of the Estate of Michael Jackson or those acting under their express, actual authority. Without limiting the foregoing, the Cascio Parties agree not to disparage Michael Jackson by portraying him in a negative light to any other person or entity regardless of whether such portrayal is based on matters that the Cascio Parties may believe to be true. The Cascio Parties recognize that the Cascio Life Story Rights are valuable, and their disclosure in violation of this Agreement, would constitute irreparable harm to MJC. For the avoidance of doubt, the Cascio Parties agree not to sell, license, or authorize anyone else to use or exploit the Cascio Life Story Rights and agree to use or exploit the Cascio Life Story Rights to anyone else.

2.      Consulting Obligations. As consideration in addition to their other obligations, promises, and services that the Cascio Parties agree to undertake incident to the terms and conditions of this Agreement, the Cascio Parties agree to consult with MJC at reasonable times

10386-00001/675087.4                          Page 1 of 10

Confidential

upon MJC's request in order to cooperate in efforts to exploit the Cascio Life Story Rights and also to help MJC exploit other unique information the Cascio Parties have about Michael Jackson. The Cascio Parties, and each of them agree to make themselves available, so long as they are given reasonable advance notice, to consult with MJC when MJC needs such consulting services.

3.      Payment. As financial consideration for all of the obligations, promises, and services that the Cascio Parties agree to undertake incident to the terms and conditions of this Agreement, MJC shall cause the following payments to certain of the Cascio Parties as follows (the "Payments").

a.      On January 31, 2020, eight-hundred thousand dollars ($800,000) to Frank Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid to Frank Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

b.      On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Edward Cascio and Valeria Lissette Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid jointly to Edward Cascio and Valeria Lissette Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

c.      On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Dominic Cascio, Jr. and Cindy Cascio; and on January 1, 2021, and continuing for five additional calendar years every calendar year ending on January 1, 2025, MJC shall cause to be paid jointly to Dominic Cascio, Jr. and Cindy Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

d.      On January 31, 2020, eight-hundred thousand dollars ($800,000) to Aldo Cascio; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid to Aldo Cascio the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

e.      On January 31, 2020, eight-hundred thousand dollars ($800,000) jointly to Marie-Nicole Porte and James Porte; and on January 1, 2021, and continuing for five additional calendar years ending on January 1, 2025, MJC shall cause to be paid jointly Marie-Nicole Porte and James Porte the annual sum of Five Hundred and Thirty Thousand Dollars (USD $530,000).

f.      On January 31, 2020, MJC shall cause to be paid jointly to Dominic Cascio, Sr. and Connie Cascio the sum of Ten Thousand Dollars (USD $10,000).

g.      MJC shall cause the Payments to be paid to the Cascio Parties via wire transfer or check as directed by the Cascio Parties (the "Payment Direction"). The Cascio Parties shall provide MJC with executed W-9 forms prior to payments being made. The Cascio Parties shall notify MJC in writing if there is any change to the Payment Direction.

h.      If the date by which any of the Payments are to be delivered falls on a Saturday, Sunday or legal holiday in the State of California or the United States, then the date

10386-00001/675087.4                    Page **2** of **10**

Confidential

said payment shall be delivered shall be the next following day which is not a Saturday, Sunday or legal holiday in the State of California or the United States.

    4.    <u>Releases</u>. The Parties recognize that they have had actual and potential disputes in the past and, as part of this Agreement and in order to start on a "clean slate," the Parties agree it is in their mutual best interests to fully release each other from any and all claims that they may have against the other relating to any subject matter, known or unknown, from the beginning of time until the date of execution of this Agreement. Accordingly, the Parties hereby exchange the following releases:

    a.    Except with respect to the obligations created by or arising out of this Agreement, the Cascio Parties, on behalf of themselves, and any of their companies, and each of the Cascio Parties' respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the Cascio Releasing Parties"), hereby fully and forever release and discharge MJC, Michael Jackson, the Estate of Michael J. Jackson, its Co-Executors, its individual beneficiaries (Michael Jackson's three children and Michael Jackson's mother), all companies owned in-whole or in-part by the Estate of Michael Jackson (including but not limited to all companies owned in-whole or in-part by Michael Jackson at the time of his death), personal representatives, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Estate Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

    b.    Except with respect to the obligations created by or arising out of this Agreement, MJC and the Estate of Michael J. Jackson, on behalf of themselves, and any of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, representatives, beneficiaries, spouse, agents, employees, officers, members, managers and attorneys ("the MJC Releasing Parties"), hereby fully and forever release and discharge the Cascio Parties, and each of their respective heirs, successors, assigns, licensees, subsidiaries, affiliates, affiliated entities, representatives, beneficiaries, spouse, employees, officers, members, managers, attorneys, insurers, sureties and agents ("the Cascio Released Parties"), from any and all claims, causes of action, damages and any other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date that this Agreement is fully executed by the Parties, relating in any way to their individual and collective association with, interactions with, knowledge of, or experiences through Michael J. Jackson.

    c.    Excluded from this Release are any claims and causes of action on behalf of or against either the Estate Released Parties and the Cascio Released Parties relating to the tracks *Breaking News*, *Monster*, *Keep Your Head Up*, and the other tracks the Estate of Michael Jackson acquired from certain of the Cascio Parties or entities under their control ("the Cascio Tracks"). The Cascio Tracks are the subject of litigation in Los Angeles Superior Court, Case

Confidential

No. BC 548468. This exclusion from the Releases shall be narrowly construed to apply *only* to claims and causes of action directly relating to the Cascio Tracks and shall not be construed to extend to any other claims, causes of action, damages and other obligation of any kind and nature, at law, in equity, or otherwise, known or unknown, suspected or unsuspected, disclosed or undisclosed, arising from the beginning of time until the date of this Agreement.

d.      Nothing herein shall be construed to release any claims for breach of this Agreement. Nothing herein shall be construed as an admission of liability by any Party, and each Party expressly acknowledges and agrees that the other Party hereto has not admitted, and by execution or performance of this Agreement does not admit, any liability or obligation to the other Party, except for the obligations created by this Agreement.

5.      Waiver of Civil Code Section 1542 and Similar Laws. The Parties acknowledge that they may hereafter discover facts different from, or in addition to, those now known or believed to be true relating to the Action. Notwithstanding the existence of any such different or additional facts, the Parties hereby agree that this Agreement shall remain in full force and effect. The Parties hereby waive any and all rights which they have or may have under the provisions of Section 1542 of the California Civil Code as now worded and as thereafter amended, along with any other similar principles of law in other jurisdictions. Section 1542 of the California Civil Code reads as follows:

> SECTION 1542. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties hereby waive and relinquish any right and benefit which either Party or any other party may have under Section 1542 to the extent that such party may lawfully do so in connection with the subject matter hereof.

6.      Confidentiality and Non-Disparagement.

a.      Each Party shall forever maintain the confidentiality of and shall not disclose this Agreement or anything relating thereto, including but not limited to the Agreement's existence, terms, subject matter, etc., along with the Cascio Life Story Rights, information relating to the Cascio Life Story Rights, other than information relating thereto that is already publicly known at the time of execution of this Agreement (the "Confidential Information") to any third-party except insofar as disclosure is necessary to be made to the Party's respective accountants and attorneys (who will similarly keep the terms and conditions of this Agreement confidential and shall sign appropriate non-disclosure agreements). Should any Party be served with legal process that may be interpreted to require disclosure of this Agreement, that Party shall advise the other Parties immediately upon receipt of such process and in advance of any such disclosure in order to allow any of the other Parties to bring an appropriate motion for a protective order or other motion or action. Any action to enforce this

Confidential

Agreement must be brought pursuant to Paragraph 20 below. Nothing herein shall be construed to prevent disclosure required by law.

b. The Parties agree to refrain from making any statement or taking any action, directly or indirectly, orally or in writing, that may defame, disparage, embarrass, or in any way harm or impair the reputation, goodwill, business interests or financial interests of any of the other Parties, including the Cascio Releasing Parties and the Estate Released Parties, except as required by law or in connection with a legal or administrative proceeding.

7. Representations And Warranties. The Cascio Parties, and each of them, hereby represent and warrant that they have not defamed, disparaged, embarrassed, or in any way harmed or impaired the reputation, goodwill, business interests or financial interests of Michael Jackson, his Estate, his companies (including MJC) and/or that they have not shared the Confidential Information except to individuals and/or entities the Cascio Parties have previously expressly advised MJC and its representatives. Each of the Cascio Parties shall provide MJC with a written list of persons or entities that they have disclosed Confidential Information at the time of execution of this Agreement or within seven days thereafter and each of the Cascio Parties shall sign his or her respective list (or a joint list by more than one person). It is understood by the Parties that these representations and warranties are essential to this Agreement, and if they are breached and/or turn out to be false in any material way, MJC shall have the right to cancel all future Payments and seek the return of all Payments made to the Cascio Parties, along with interest at the legal rate against the Cascio Parties.

8. Cross-Default; A Breach by One Is a Breach by All.

a. If any of the Cascio Parties: (i) discloses information relating to the Cascio Life Story Rights (except for information publicly known at the time of execution of this Agreement) to any person other than MJC and the Estate Released Parties as set out in Paragraph 1 without the express written consent of MJC or the Estate Released Parties; or (ii) breaches or causes the breach of the Confidentiality or Non-Disparagement provisions in Paragraph 6, then any outstanding obligation of MJC to make the Payments shall be void, and MJC shall be entitled to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below. Each Party understands the significance of the Confidential Information remaining confidential, and that this Paragraph is a material term of this Agreement. The Cascio Parties hereby agree that if any of the Confidential Information becomes public, then MJC shall have no further financial obligation to any of the Cascio Parties, including but not limited to the Payments, and that MJC shall no longer be bound by this Paragraph 20. Without limiting the foregoing, the Cascio Parties understand that a breach by one of them is a breach by all of them and a breach by one of them shall relieve MJC of any obligation to make further Payments and shall entitle MJC to to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below.

b. If any of the Cascio Parties' Representations and Warranties, as set out above in Paragraph 7, turn out to be false then any outstanding obligation of MJC to make the Payments shall be void, and MJC shall be entitled to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a

Confidential

proceeding set forth in Paragraph 20 below. Without limiting the foregoing, the Cascio Parties understand that a breach by one of them is a breach by all of them and a breach by one of them shall relieve MJC of any obligation to make further Payments and shall entitle MJC to to recover any Payments already made by MJC to the Cascio Parties (with interest at the legal rate), including but not limited to in a proceeding set forth in Paragraph 20 below.

9.    Indemnification. The Cascio Parties, jointly and severally, hereby agree to indemnify and hold harmless MJC from and against any and all claims, demands, causes of action, costs, expenses, losses, damages, judgments, and reasonable outside attorneys' fees ("Claims") arising out of or resulting in any way from any breach by any of the Cascio Parties of the representations and warranties set forth in Paragraph 7 above.

10.    No Fiduciary Relationship. The Parties agree that this Agreement does not create any sort of joint venture or fiduciary relationship between the Cascio Parties and MJC.

11.    Representation By Counsel. All Parties expressly acknowledge that they either have been represented by counsel of their choosing or have had the opportunity to consult with independent counsel in connection with this Agreement. Accordingly, any principle requiring that ambiguities in a writing be construed against its drafter shall have no application to this Agreement.

12.    Authority to Bind. The undersigned signors for each of the Parties represent and warrant that they are duly authorized to execute this Agreement on behalf of their respective Parties and have full authority to act for their respective Parties in making all promises, representations, releases, and covenants set forth in this Agreement.

13.    No Waiver. No waiver of any breach of a covenant, condition or promise of this Agreement shall be deemed to be a waiver of any other or subsequent breach of a covenant, condition or promise, whether of like or different nature.

14.    Integration. This Agreement expresses the entire agreement of the Parties hereto. No recitals, promises, agreements, representations or warranties of any kind whatsoever have been made or have been relied upon by any Party hereto, except as specifically set forth in this Agreement. All prior discussions and negotiations regarding the subject matter of this Agreement have been and are merged and integrated into, and are superseded by, this Agreement.

15.    Written Modifications Only. This Agreement may not be modified in any way whatsoever, except in a writing signed by all Parties.

16.    Construction of Agreement. This Agreement shall be construed as a whole according to its fair meaning. The headings used in this Agreement are for reference only and shall not affect the construction of the Agreement.

17.    Jointly Drafted. This Agreement shall be deemed negotiated and drafted jointly by the Parties hereto, and shall not be strictly construed for or against any of the Parties hereto, and none of the Parties shall be deemed to be the sole drafter.

Confidential

18.    Severability. The Parties agree that in the event that any provision of this Agreement should be held by a court of competent jurisdiction to be void, voidable, illegal or unenforceable in any respect, the remaining provisions shall still remain in full force and effect.

19.    Governing Law, Mandatory Arbitration, Venue, And Jurisdiction. This Agreement shall be governed and interpreted under the laws of the State of California without reference to choice of law rules. Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, and any other further disputes between the Parties relating to any subject matter other than the Cascio Tracks, along with the determination of the scope, enforceability, or applicability of this agreement to arbitrate, shall be determined by binding arbitration in Los Angeles County, California, before a retired judge or justice of a California or Federal court. Without limiting the foregoing, the question of arbitrability is itself a question to be resolved finally by the arbitrator and not by a court. Any such arbitration shall be filed with and administered by JAMS or Signature Resolution, at the claimant's choice, pursuant to their then current general arbitration rules. With respect to any procedural, substantive or other conflicts between the California Arbitration Act and the Federal Arbitration Act, the Federal Arbitration Act shall govern. If neither JAMS nor Signature Resolution (or successor entities) shall exist at the time of a demand for arbitration, the arbitration shall be filed with and administered by ADR Services pursuant to its applicable arbitration rules at the time of filing. If ADR Services does not exist at the time of the demand for arbitration, the arbitration shall be filed with AAA or any other arbitration service. The filing of an action in a public court relating to this Agreement shall constitute a breach of this Agreement, and the confidentiality provisions thereof, and shall entitle the non-breaching Party to all damages, including attorneys' fees expended in compelling arbitration, resulting therefrom. Each Party irrevocably submits to the exclusive jurisdiction and exclusive venue of the state and federal courts located in the County of Los Angeles, State of California for any necessary court proceedings, such as petitions to confirm or vacate an arbitral award.

20.    Attorneys' Fees. The Parties agree that they shall bear their own costs, expenses and attorneys' fees relating to the negotiation of this Agreement. In any subsequent legal proceeding between the Parties that may arise out of or relate to this Agreement, the prevailing party shall be entitled to recover its costs, expenses, and reasonable attorneys' fees.

21.    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the Parties, along with their respective successors and assigns.

22.    Communications. All written communications that are required or otherwise may be given under this Agreement shall be deemed delivered and given upon personal delivery, facsimile transmittal or e-mail transmission thereof to the people and addresses shown below:

As to the Cascio Parties, address to:
Frank Cascio
Tel: (917) 816-6400
Email: fdcascio@gmail.com

As to MJC, address to:
Howard Weitzman
Kinsella Weitzman et al.
808 Wilshire Blvd, Third Floor
Santa Monica, CA 90401
Tel: (310) 566-9800
Email: hweitzman@kwikalaw.com

Confidential

From time to time, either Party may substitute a different representative than the representatives or attorneys listed above to receive any notice, request, instruction, or document to be provided under this Agreement. The Party shall advise the other Party in writing of a change in that Party's representative.

      23.     <u>Counterparts</u>. This Agreement may be executed by way of one or more counterparts, each of which shall be deemed an original, but all of which together constitute one agreement among the parties hereto. Each of the Parties hereto agrees that a fax or email transmission of a signature on this document shall constitute a valid execution of this document, and shall be sufficient to formally bind, at the time of transmission, the party whose signature was transmitted by fax or email.

      IN WITNESS WHEREOF, the Parties have approved and executed this Agreement on the dates set forth opposite his, her or its respective signatures.

      EXECUTED by the Parties as follows:

<u>By the Michael Jackson Company</u>

_____      Dated: _____

By _____, an Authorized Signatory

<u>By Frank Cascio</u>

_____      Dated: _____
Frank Cascio

<u>By Edward Cascio</u>

_____      Dated: _____
Edward Cascio

10386-00001/675087.4          **Page 8 of 10**

Confidential

By Valeria Lissette Cascio

_____        Dated: _____
Valeria Lissette Cascio

By Dominic Cascio, Jr.

_____        Dated: _____
Dominic Cascio, Jr.

By Cindy Cascio

_____        Dated: _____
Cindy Cascio

By Aldo Cascio

_____        Dated: _____
Aldo Cascio

By Marie-Nicole Porte

_____        Dated: _____
Marie-Nicole Porte

10386-00001/675087.4                    Page **9** of **10**

Confidential

By James Porte

_____                    Dated: _____
James Porte

By Dominic Cascio, Sr.

_____                    Dated: _____
Dominic Cascio, Sr.

By Connie Cascio

_____                    Dated: _____
Connie Cascio

10386-00001/675087.4                    **Page 10 of 10**