**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
JONATHAN STEINSAPIR (SBN 226281)
  jsteinsapir@khiks.com
KATHERINE T. KLEINDIENST (SBN 274423)
  kkleindienst@khiks.com
RAY S. SEILIE (SBN 277747)
  rseilie@khiks.com
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025
Telephone: 310.566.9800
Facsimile: 310.566.9850

**SINGER WEINSTEN WOLF & JONELIS LLP**
MARTIN D. SINGER (BAR NO. 78166)
  mdsinger@singerlaw.com
ALLISON S. HART (BAR NO. 190409)
  ahart@singerlaw.com
2049 Century Park East, Suite 2400
Los Angeles, CA 90067-2906
Telephone:  (310) 556-3501
Facsimile:   (310) 556-3615

*Attorneys for All Defendants other than Herman Weisberg and Does 1 – 20 ("the Jackson Defendants").*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDWARD JOSEPH CASCIO, et al. <br><br> Plaintiffs, <br><br> vs. <br><br> THE MICHAEL JACKSON COMPANY, LLC, et al, <br><br> Defendants. | Case No. 2:26-cv-02129-HDV (AGRx) <br><br> The Hon. Hernán D. Vera <br><br> **[PROPOSED] THE JACKSON DEFENDANTS' RESPONSE TO SUR-REPLY** <br><br> Date:       June 18, 2026 <br> Time:       10:00 a.m. <br> Courtroom:  5B <br><br> Complaint filed:   February 27, 2026 <br> Trial Date:       None Set |

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

10386-00420/945186

## I.    INTRODUCTION

As has been stressed in previous filings, the Jackson Defendants categorically deny that Michael Jackson engaged in any inappropriate conduct with Plaintiffs. The best evidence of that is the Plaintiffs' countless statements for decades defending Michael Jackson *from these very allegations*. This motion, however, is not about the "substance" of Plaintiffs' allegations but about one simple issue: whether Plaintiffs must abide by their agreement to arbitrate. And Plaintiffs' sur-reply is their latest effort to complicate that simple and straightforward issue before the Court.

Plaintiffs allege that they were sexually assaulted in the 1990s and 2000s. In 2019, they negotiated and signed an agreement where they agreed to resolve their dispute and release all claims for over $16 million. The Jackson Defendants agreed to pay that amount in order to avoid costly litigation of such claims and to save the Jackson family from being further exposed to these kinds of inflammatory and hurtful allegations against a man who is not here to defend himself. As part of that 2019 Agreement, Plaintiffs agreed to arbitrate all disputes related to the Agreement. Now, they are trying to invalidate the 2019 Agreement so they can demand even more money. Clearly, their effort to invalidate the 2019 Agreement "relates to" that Agreement and is therefore arbitrable. Yet to avoid arbitration, Plaintiffs make a convoluted and confusing claim that there was no "dispute" in 2019 between Plaintiffs and the Jackson Defendants (i.e., all defendants other than Mr. Weisberg and the Does), even though everyone agrees that Plaintiffs asserted claims of abuse in detail over several months in 2019. And when Plaintiffs were initially only offered a sum of $100,000 each to resolve their claims, they *disputed* that and were able to negotiate payments of millions of dollars in exchange for an express release of all claims and other considerations.

Plaintiffs' apparent position is that because the Jackson Defendants' attorneys did not browbeat and disparage Plaintiffs in 2019—and treated Plaintiffs respectfully and acted cordially rather than inflame the situation—the Jackson

Kinsella Holley Iser Kump Steinsapir LLP
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025
Tel 310.566.9800 • Fax 310.566.9850

10386-00420/945186

1

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Defendants must not have "disputed" Plaintiffs' claims, and instead simply volunteered to pay millions of dollars for no reason and in exchange for nothing.

Plaintiffs' arguments cynically exploit the EFAA in an attempt to twist it to apply to a situation where it is plainly inapplicable, i.e., to arbitration provisions in agreements *resolving* claims which, by definition, are not "predispute" agreements. Nothing in the sur-reply contradicts the facts that are material here: (1) Plaintiffs made detailed allegations of sexual abuse in 2019; and (2) those allegations resulted in negotiations between the parties where the Plaintiffs were able to negotiate from an initial offer of $100,000 to each sibling to a payment of over 16 million dollars in exchange for clearly written releases of all claims by the Plaintiffs. In other words, and at the very least, the parties clearly and materially disputed whether and how much Plaintiffs should be compensated for their allegations and negotiated extensively over that. Since the EFAA's arbitration bar applies *only* to "predispute" arbitration agreements and not "postdispute" ones like the one contained in 2019 Agreement, it does not apply here, and the Court should compel arbitration.[1]

## II.  ARGUMENT

### A.  The Sur-Reply's New Arguments and Evidence Confirm That the Relevant "Dispute" Here Arose in 2019.

In their opposition, Plaintiffs spent less than a page arguing that the 2019 Agreement was a "predispute arbitration agreement," 9 U.S.C. § 402(a), and therefore unenforceable by the EFAA. (ECF 29 at 18–19.) Essentially, Plaintiffs' opposition brief argued that because the text of the 2019 Agreement itself does not

---

[1] This motion is solely about whether arbitration should be ordered. It is not about whether the 2019 Agreement is valid and enforceable. Plaintiffs will have every opportunity to argue before the arbitrator that the 2019 Agreement's substantive terms are void or otherwise unenforceable. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) (claim that contract as a whole, or non-arbitration provisions therein, are illegal or otherwise unenforceable is for arbitrator, not court).

*specifically* reference a *particular and named dispute*, the agreement could not have postdated a dispute. (*But compare* ECF 22-1 Ex. 1 (the 2019 Agreement) at 17 § 4 ("The Parties recognize that they have had potential disputes in the past and, as part of this Agreement and in order to start on a 'clean slate,' the Parties agree it is in their mutual best interests to fully release each other from any and all claims . . .").) Plaintiffs were aware, of course, that the 2019 Agreement resolved their sexual assault claims. The Court need not take our word for it—Plaintiffs say as much in their opposition brief: "All five claims arise from the Agreement, the purpose of which was to compensate Plaintiffs for Jackson's sexual assaults." (ECF 29 at 18.)

The Jackson Defendants' Reply Brief responded by pointing out the obvious fact that the 2019 Agreement *postdated* discussions about Plaintiffs' sexual assault allegations and the resolution of *the dispute* over whether and how much Plaintiffs should be compensated for those allegations. The declaration of Bryan Freedman—who was involved in the months of negotiations leading to the Agreement—confirms that the 2019 Agreement was negotiated following Plaintiffs' *demand for compensation* for the alleged sexual abuse. (*See* ECF 35 at 5–7.) The purpose of Mr. Freedman's declaration was to reinforce the link between the 2019 Agreement and Plaintiffs' allegations of sexual assault—a link that had already been established by Plaintiffs' many admissions regarding the same—and therefore confirm that a "dispute" over the Jackson Defendants' liability to Plaintiffs for those allegations *predated* the 2019 Agreement that resolved them.

Plaintiffs argue that they needed a sur-reply because Mr. Freedman's declaration "created material factual disputes concerning when the dispute arose between the Parties." (ECF 40 at 5.) But nothing in the proposed sur-reply or accompanying declarations—even if assumed to be true—contradict the material aspects of Mr. Freedman's declaration.

Each declaration confirms that in 2019, each Plaintiff was aware that Mr. Freedman represented the Jackson Defendants and discussed their claims of sexual

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

10386-00420/945186

3

assault with him. (*See* ECF 40-3 (D. Cascio Sur-reply Decl.) ¶¶ 3–4; ECF 40-4 (M. Porte Sur-reply Decl.) ¶ 5; ECF 40-5 (A. Cascio Sur-reply Decl. ¶ 3); ECF 40-6 (F. Cascio Sur-reply Decl.) ¶ 7, 9, 10; ECF 40-8 (C. Cascio Sur-reply Decl.) ¶ 3.) Frank Cascio's declaration confirms that these discussions were accompanied by an initial offer by the Jackson Defendants to pay each Plaintiff $100,000. Plaintiffs, however, disputed that that was all they should be paid, and they were eventually able to negotiate a payment of over $16 million between them, i.e., *over thirty times* that. (ECF 40-6 ¶ 12–13.) At the very least, there was *a multi-million dollar dispute* over whether and how much money the Plaintiffs should be paid for their allegations.

Frank Cascio admits that he actively negotiated the terms of the agreement, *see id.* ¶ 13 ("I asked the Estate to increase the first installment and to reduce the subsequent payments accordingly."). Negotiations like this do not happen unless there is something to resolve, i.e., a "dispute" between the parties. The plain terms of the 2019 Agreement confirm the same: the Agreement contains broad releases of all disputes and claims between the parties. (ECF 22-1 Ex. 1 (the 2019 Agreement) at 18-19 §§ 4-5.)

In other words, Plaintiffs do not, and cannot, challenge the key material facts establishing that the arbitration provision in the 2019 Agreement is *not* a "predispute arbitration agreement": (1) in 2019, Plaintiffs made allegations of sexual assault to the Jackson Defendants' lawyers; (2) after those allegations were made, the Jackson Defendants offered them $100,000 each to resolve the allegations; (3) Plaintiffs disputed that that sum was sufficient; (4) Plaintiffs were then able to negotiate payment $690,000 per year for five years (the timing of which was adjusted in a signed Letter of Direction after signing the 2021 Agreement as Frank Cascio explains); and (5) the Jackson Defendants and Plaintiffs memorialized that arrangement in the 2019 Agreement. Plaintiffs do not dispute that the 2019 Agreement *does* release and settle all claims between them—in fact, their Complaint seeks rescission of the releases—and otherwise has all the hallmarks of a settlement

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

10386-00420/945186

4

agreement, including specific payment terms, broad releases, and a Civil Code section 1542 waiver. (ECF No. 22-1, Ex. 1 at 18-19.) The only reasonable inference from these undisputed facts is that a "dispute" arose in 2019 and it was resolved by the 2019 Agreement, after months of negotiation.

Because Plaintiffs cannot meaningfully contest these material facts, they ask the Court to draw completely implausible inferences from them. They ask the Court to conclude that the Jackson Defendants presented an initial offer of $100,000 per Plaintiff but then somehow withdrew that offer unilaterally and came back with an offer of $690,000 per year for five years. Plaintiffs ask the Court to conclude that neither they nor the Jackson Defendants contemplated potential liability for alleged sexual assault when they negotiated and drafted the 2019 Agreement despite the broad releases contained in the 2019 Agreement. And they ask the Court to infer that the *first time* the Jackson Defendants and Plaintiffs were in an adverse position was in 2024, when Plaintiffs repudiated the 2019 Agreement.

These inferences border on the nonsensical, and none of the arguments or facts introduced in the sur-reply or accompanying declarations support them. At most, Plaintiffs' new evidence simply establishes that the Jackson Defendants' attorneys handled the negotiations of the 2019 Agreement with civility, without inflaming the situation by calling the Plaintiffs liars.

Plaintiffs also suggest that Mr. Freedman deceived them into believing that he "represented their interests." ECF No. 40-2 (E. Cascio Surreply Decl.) ¶ 6; ECF No. 40-3 (D. Cascio Surreply Decl.) ¶ 3; ECF No. 40-4 (M. Porte Surreply Decl. ¶ 3); ECF No. 40-5 (A. Cascio Surreply Decl.) ¶ 3. But tellingly, these declarations stop short of saying that Mr. Freedman assumed a formal representation of them in connection with the 2019 Agreement. That is because Plaintiffs have acknowledged that they understood that Mr. Freedman was acting as an "agent[] of the Estate of Michael Jackson" in connection with the 2019 discussions. *See, e.g.*, ECF No. 29-3 (D. Cascio Opp. Decl.) ¶ 4; ECF No. 29-3 (D. Cascio Opp. Decl.) ¶ 4; ECF No. 29-4

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

(M. Porte Opp. Decl.) ¶ 4; ECF No. 29-5 (A. Cascio Opp. Decl.) ¶ 4; *see also* ECF No. 29-6 (F. Cascio Opp. Decl.) ¶¶ 4, 5. There is no credible evidence that Mr. Freedman misrepresented his status to Plaintiffs, and even if he had, that would at best establish that he disregarded a conflict of interest. It does not mean that there was no "dispute" between the Jackson Defendants and Plaintiffs. In fact, the Cascios' testimony here only reinforces that there was a "dispute." Otherwise, why would it matter who Mr. Freedman was representing? However, these specious arguments are irrelevant to whether there was a "dispute" between the parties in 2019. There clearly was.

In short, the sur-reply and its declarations do not alter the fundamental fact that the arbitration provision in the 2019 Agreement is *not* a "predispute arbitration agreement." The motion to compel arbitration, under an agreement to which all Plaintiffs are signatories, must therefore be granted

## B.    There is No Authority for Concluding that an Agreement Releasing Claims is a "Predispute" Agreement as Related to Those Claims.

The arbitration provision here appears in an agreement that resolved a dispute in 2019. It is plainly not a "predispute arbitration agreement," and the EFAA does not apply. None of the authorities cited by Plaintiffs in either their opposition or sur-reply briefs support a contrary conclusion. In fact, Plaintiffs *fail to cite a single case* where a court has considered the application of the EFAA to an agreement with an express release of past claims, much less a case that concluded that such an agreement is a "predispute" agreement. To the contrary, *each and every case* cited in Plaintiffs opposition and sur-reply concerns an arbitration clause in an *employment* agreement,[2] which are almost always signed *before* any conduct that

___

[2] *See, e.g.*, *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 83 (2d Cir. 2024) ("Defendants … cit[ed] the arbitration clause in Olivieri's employment agreement"); *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 897 (8th Cir. 2024) ("Chipotle moved to compel arbitration based on an employment agreement

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

with Famuyide"); *Memmer v. United Wholesale Mortg.*, LLC, 135 F.4th 398, 403 (6th Cir. 2025) ("WM moved to … compel arbitration under the parties' employment agreement."); *Polen v. API Grp. Life Safety USA, LLC*, 2025 WL 3251349, at *2 (D. Or. Nov. 21, 2025) ("As part of Polen's employment, she signed an agreement to arbitrate any employment related disputes."); *Doe (J.K.) v. Celebrity Cruises, Inc.*, 792 F. Supp. 3d 1371, 1375 (S.D. Fla. 2025) ("Defendant moves to compel arbitration pursuant to the arbitration provisions in Plaintiff's employment agreement"); *Bulic v. Celebrity Cruises, Inc.*, 2025 WL 1783865, at *2 (S.D. Fla. June 27, 2025) ("Plaintiff does not contest that she signed arbitration agreements in connection with her employment aboard Defendant's cruise ship."); *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 518 (S.D.N.Y. 2024) ("Plaintiff signed a mutual arbitration agreement which was attached as an addendum to the Hermes Law employee handbook."); *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 566 (S.D.N.Y. 2023) ("As a condition of employment, … Yost entered into … agreements with Everyrealm containing broad mandatory arbitration provisions."); *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 252 (S.D.N.Y. 2024) ("As a condition of employment, Singh entered into a mandatory predispute arbitration agreement with MeetUp."); *Solis v. Prime Comms Retail*, LLC, 2025 WL 1255143, at *1 (C.D. Cal. Apr. 7, 2025) (applying EFAA to claims that would otherwise be arbitrable under employer's arbitration agreement); *Gill v. US Data Mgmt., LLC*, 2024 WL 5402494, at *2 (C.D. Cal. Dec. 2, 2024) ("Defendant argues the Court should enforce a valid, written arbitration agreement Plaintiff entered when she began her employment."); *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 921 (N.D. Cal. 2023) ("Her employment offer, which Tesla claims was executed on November 30, 2020, included an arbitration clause."); *Shumway v. Space Expl. Techs. Corp.*, 2025 WL 4035293, at *3 (C.D. Cal. Dec. 3, 2025) ("[Defendant] claims that at the start of Plaintiff's employment with SpaceX, she entered into an 'Employee Arbitration and Dispute Resolution Agreement and Class Action Waiver.'"); *Kelly v. Rosenberg & Estis, P.C.*, 804 F. Supp. 3d 461, 464 (S.D.N.Y. 2025) ("Kelly does not dispute that she signed an arbitration agreement with [her employer]."); *Bray v. Rhythm Mgmt. Grp., LLC*, 2024 WL 4278989, at *6 (D. Md. Sept. 24, 2024) (addressing motion to compel arbitration based on a clause in plaintiff's "executive employment agreement"); *Molchanoff v. SOLV Energy, LLC*, 2024 WL 899384, at *1 (S.D. Cal. Mar. 1, 2024) (addressing clause in at-will employment policy); *Mulugu v. Duke Univ. Sch. of Med.*, 2024 WL 3695220, at *19 (M.D.N.C. Aug. 7, 2024) (addressing arbitration provision contained in non-union employee policies). One case, *Bruce v. Adams & Reese, LLP*, 168 F.4th 367 (6th Cir. 2026), does not expressly describe the arbitration provision at issue, but the case, as with the others, relates to employment related claims for sexual harassment. Nothing in the opinion suggests that this provision was more specific than a general employment arbitration provision.

10386-00420/945186

7

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

would give rise to a potential arbitration. The EFAA will rarely, if ever, apply to arbitration provisions in agreements settling claims. By definition, such agreements are negotiated among parties to resolve legal disputes.

### C.    Plaintiffs' Purported 2024-Based Claims Cannot Be Separated From the 2019 Dispute and Are Not New Sexual Assault Disputes.

Plaintiffs cannot argue that their claims for breach of contract, fraud, and breach of fiduciary duty—each of which they argue accrued in 2024—should be treated as separate disputes for purposes of the "predispute arbitration agreement" analysis. Plaintiffs cite no authority to support such an approach. In fact, the Third Circuit has *rejected* the argument that "an ongoing disagreement is a series of disputes," each of which can be treated as a new one for EFAA purposes. *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 247 (3d Cir. 2025). Instead, the Court explained that a "dispute" between two parties arises when one "registers disagreement" with the other and the other "opposes that position." *Id.* at 247. Subsequent complaints are a part of the same dispute that arose previously.

As in *Cornelius*, Plaintiffs' breach of contract, fraud, and breach of fiduciary duty claims are mere continuations of the same "dispute" that arose in 2019 over Plaintiffs' sexual assault allegations. They arise directly from the agreement that resolved that dispute. The arbitration provision in the 2019 Agreement is therefore not a "predispute arbitration agreement" for those claims.

The contrary view—that an arbitration provision in an agreement releasing claims becomes a "predispute" arbitration provision relative to subsequent claims about the agreement itself—would lead to the absurd result that *any arbitration provision* in an agreement releasing claims related to a "sexual assault dispute" would be invalid so long as the party asserted claims related to the agreement. If Congress intended to effectuate that result, it could have done so. But the Court should not expand a limited restriction on arbitration provisions to an effective ban on all such provisions in settlement agreements.

10386-00420/945186

8

## III.    CONCLUSION

For these reasons, the new arguments and evidence contained in Plaintiffs' sur-reply do not alter the conclusion that the EFAA does not apply to this case, and the Court should therefore grant the motion to compel arbitration.

DATED:  June 10, 2026            KINSELLA HOLLEY ISER KUMP
                                 STEINSAPIR LLP


                                 By:  _____/s/Jonathan P. Steinsapir_____
                                      Jonathan Steinsapir
                                      Attorneys for the Jackson Defendants

**KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP**
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

JACKSON DEFENDANTS' RESPONSE TO SUR-REPLY